B. Scott Whipple, OSB #983750
scott@whipplelawoffice.com
Whipple Law Office, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
Telephone 503-222-6004

Andrew L. Paris, OSB #124157
andrew@andrewparislaw.com
Andrew Paris Law
1500 SW First Avenue, Suite 1170
Portland, OR 97201
Telephone: (971) 251-0294

Of Attorneys for Plaintiff John Dossett

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| JOHN H. DOSSETT,<br><br>        Plaintiff,<br><br>v.<br><br>HO-CHUNK, INC., a tribal corporation formed by the Winnebago Tribe of Nebraska, NOBLE SAVAGE MEDIA, L.L.C., a Limited Liability Company of unknown origin, THE NATIONAL CONGRESS OF AMERICAN INDIANS OF THE UNITED STATES AND ALASKA, an Oklahoma Not For Profit Corporation, and HIGH COUNTRY NEWS, a Colorado Nonprofit Corporation,<br><br>        Defendants. | No. 3:19-cv-01386<br><br>COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS  (28 U.S.C. §1332)<br><br>DEMAND FOR JURY TRIAL |

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

Plaintiff, John Hayden Dossett, by counsel, alleges the following against Defendants Ho-Chunk, Inc. ("Ho-Chunk"), Noble Savage Media L.L.C. ("Noble Savage Media"), The National Congress of American Indians of the United States and Alaska ("NCAI") and High Country News:

## NATURE OF THE ACTION

1.     This is an action for defamation, injunctive relief, negligence, and intentional interference with economic relations.

2.     Prior to the events giving rise to his claims of defamation, Mr. Dossett was and was considered to be an upstanding citizen, a lawyer with a strong record of accomplishments, a leader in the field of Indian law, and a staunch advocate for American Indian rights. Mr. Dossett worked for NCAI for over twenty years, serving as its general counsel since 1997. NCAI is a nonprofit that advances tribal causes and Mr. Dossett's legislative efforts included initiatives such as the Tribal Law and Order Act and the reauthorization of the Violence Against Women Act. Mr. Dossett taught at Lewis & Clark law school, served as a Distinguished Visitor in Residence at Cornell Law School, and was hoping to become a full professor. Mr. Dossett was also involved in his community and enjoyed family and friends that had no reason to second-guess his integrity. Due to the Defendants' unlawful conduct, that all started to change on August 31, 2018.

3.     On August 31, 2018, Indianz.com, a prominent internet-based news site that focuses on American Indian matters, published a defamatory news article headlined, "Prominent Indian Country Attorney Reassigned After #MeToo Allegations." The sub-headline states: "'You are a pretty young Native woman, beware.'" In the article, authors Kevin Abourzek and Acee Agoyo, relying on little but hearsay, innuendo, and gossip, wrongfully portrayed Mr.

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

Dossett as a predator in a position of power within NCAI. The article spliced quotes and provided no context, creating the most salacious story possible, devoid of truth. The effect of that article was to spread damaging false rumors and treat unsupported allegations of sexual harassment as fact, ultimately destroying the hard-earned reputation and career of Mr. Dossett.

4.      Soon after the Indianz.com published its defamatory article, NCAI's wholly-owned "Indian Country Today" news website published the same false rumors. High Country News and other publications posted similar defamatory articles across the internet. Now, a Google search for "John Dossett attorney" produces numerous articles copying the same false and defamatory allegations about Mr. Dossett. External and internal pressure caused NCAI to fire Mr. Dossett despite knowing that there was no substance to the allegations. The dozens of articles repeating the false rumors have made Mr. Dossett un-hirable, effectively ending a distinguished legal career and his hope to become a law professor. These false accusations have also severed relationships with hundreds of work colleagues and burdened Mr. Dossett's relationships with family and friends.

5.      Two things are clear: A) Mr. Dossett has never sexually harassed anyone during his decades of service to NCAI or in any other forum; and B) the false allegations and innuendo published by the Defendants in this case have caused irreparable harm to Mr. Dossett from which he may never fully recover. Mr. Dossett brings this action in an effort to clear his name and seek justice for the harm the Defendants have inflicted on him.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff is a citizen of the State of Oregon and Defendants are citizens of different States.

Page 3          COMPLAINT FOR DEFAMATION, INJUNCTIVE
                RELIEF, NEGLIGENCE, AND INTENTIONAL
                INTERFERENCE WITH ECONOMIC RELATIONS

7.      This Court has personal jurisdiction over Defendants Ho-Chunk and Noble

Savage Media because they directed their online defamatory statements about an Oregon citizen

to an Oregon audience, including but not limited to nine federally-recognized Tribal Nations in

Oregon, over 45,000 Native Americans in Oregon, and the legal and academic community in

Oregon, where Plaintiff was employed and taught law school courses on Federal Indian law until

Ho-Chunk and Noble Savage made their online defamatory statements.

8.      NCAI employed Plaintiff in the State of Oregon, has Tribal Nation and individual

Native American members in Oregon, and its then wholly-owned digital news platform Indian

Country Today directed its defamatory statements to Oregon and an Oregon audience, including

but not limited to its members and others.

9.      High Country News directed its defamatory statements to Oregon and an Oregon

audience stating its stories are "for people who care about the West," including the State of

Oregon, focusing a significant portion of its articles on "Indian Country" and Tribal Nations and

individual Native Americans in Oregon.

10.     Venue lies in the Court pursuant to 28 U.S.C. § 1391 because a substantial part of

the events giving rise to the claim occurred in this judicial district, defendants do not all reside in

the same State, and Defendants are subject to this Court's personal jurisdiction.

**PARTIES**

11.     Plaintiff John Hayden Dossett is a private citizen who is neither a politician nor a

celebrity. He began as a Staff Attorney for NCAI in 1995 and served as General Counsel from

1997 to 2018. Since 1999 Mr. Dossett has resided in the State of Oregon, working remotely for

NCAI.

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE
            RELIEF, NEGLIGENCE, AND INTENTIONAL
            INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

12.    Ho-Chunk and Noble Savage Media co-own and co-produce the news media website Indianz.com. Ho-Chunk is a tribal government corporation formed by the Winnebago Tribe of Nebraska. Noble Savage Media is a media firm whose ownership and location are unknown at this time. On its website, Indianz.com reports that it has offices in Washington, D.C. and in Nebraska. Hereinafter these related entities are referenced jointly as Indianz.com.

13.    NCAI is a 501(c)(4) social welfare organization serving as a forum for policy development and advocacy on behalf its membership of tribal governments and individual Native people. Indian Country Today is a digital news platform that was wholly owned by NCAI. At all times relevant to this complaint, Indian Country Today was not an independent organization, but merely a website and news outlet wholly owned by NCAI. NCAI is incorporated in Oklahoma with its headquarters in Washington, D.C. In April of 2019, Indian Country Today became a limited liability corporation organized in Washington, D.C., and the sole member is the NCAI Fund, the 501(c)(3) educational arm of NCAI.

14.    Defendant High Country News is a 501(c)(3) media organization located in Paonia, Colorado that covers issues and stories in the American West. It operates the website www.hcn.com.

## FACTS

15.    Up to the time of events in this matter, Mr. John Dossett had twenty-three years of service to NCAI, serving as its General Counsel for more than two decades. Mr. Dossett is a nationally recognized expert on tribal sovereignty and jurisdiction, tribal lands and natural resources, taxation, and public safety in Indian country. Mr. Dossett has worked collaboratively with tribal leaders and advocates to advance public policy. Highlights of his career include:

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

a.    organizing the opposition to a series of high-profile legislative attacks on tribal sovereignty in the late 1990's led by Senator Slade Gorton;

b.    acting as Co-Director of the Tribal Supreme Court Project for 17 years;

c.    serving as Acting Executive Director of NCAI in 2001;

d.    advancing tribal land restoration policies at the Interior Department as well as tribal self-determination in land management, leasing and rights-of-way regulations and tax policies at the Treasury Department; and

e.    organizing legislative efforts on major federal laws that affect American Indians, including:

    i.    the Tribal Law and Order Act of 2010 expanding tribal criminal jurisdiction;

    ii.    the American Recovery and Reinvestment Act of 2009 with over $5 billion invested in tribal infrastructure and economic development;

    iii.    the Cobell and Keepseagle Settlement legislation;

    iv.    the HEARTH Act of 2012 facilitating self-determination in tribal land management;

    v.    the Stafford Act amendments permitting tribal government disaster declarations;

    vi.    the Tribal General Welfare Exclusion Act of 2014; and

    vii.    the American Indian Probate Reform Act of 2004 and the Indian Trust Asset Management Reform Act of 2016.

16.    Mr. Dossett's most rewarding collaborative work was with tribal leaders, advocates, and the National Task Force to End Domestic Violence.  He was instrumental in

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

organizing NCAI's legislative efforts in support of the Violence Against Women Act Reauthorizations restoring tribal criminal jurisdiction over non-Indian perpetrators of domestic violence, and facilitating the Intertribal Technical Assistance Working Group devoted to implementing this important new law.

17.     Up until the time of events in this matter, Mr. Dossett was an Adjunct Professor at the Northwestern School of Law of Lewis & Clark College, pursuing a return as Distinguished Practitioner in Residence at Cornell Law School, and sought an expanded career in law school teaching. Mr. Dossett anticipated continuing his career in legal advocacy, working with students, and conducting legal research to benefit tribal nations.

18.     Since 1999, Mr. Dossett has resided in Portland, Oregon. He has primarily worked remotely in Portland for the Washington D.C. based NCAI on in-depth policy analysis, legal writing, and organizing collaborative policy development with tribal governments around the nation.

19.     Ms. Denise Desiderio joined NCAI in 2014 as Director of Government Affairs. Upon information and belief, Ms. Desiderio generated the baseless rumor that Mr. Dossett did not respect women and could not be trusted alone with female employees.

20.     The NCAI Executive Director, Jacqueline Pata, was aware of the false rumors and took no action to address them. Over time, Ms. Desiderio's rumors spread and negatively affected Mr. Dossett.

21.     On June 30, 2016, Mr. Dossett was at the last day of an NCAI conference in Spokane, Washington with NCAI colleagues. A female colleague had too much to drink during dinner and fell asleep at the table. She was having trouble walking, so Mr. Dossett helped guide her two blocks to the hotel lobby nearby, where hundreds of tribal participants in the conference

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

were staying. At no time did he do anything remotely inappropriate toward this colleague – his sole intent was to help her get to her hotel safely and for her to avoid embarrassment. Mr. Dossett simply brought his colleague to the lobby and allowed her to find her way to her room. He was never in a situation where he was alone with her inside the hotel. Ms. Desiderio, who was not present at the relevant times, made a vague informal complaint implying some form of misconduct against Mr. Dossett to NCAI's executive director, Ms. Pata, regarding those events, again with complete disregard for the truth of the matter.

22.    Ms. Pata investigated the matter and Mr. Dossett gave a detailed account to Ms. Pata about what had occurred. At all times, they were in public: two blocks of a busy sidewalk in front of a convention center and the lobby of a hotel filled with hundreds of NCAI meeting participants. Mr. Dossett was acting solely out of concern for his intoxicated colleague. None of the NCAI staff present expressed concern that Mr. Dossett took the responsibility to escort his colleague back to the hotel. This incident did not, by any stretch, constitute sexual harassment, no formal complaint was made, and the matter was closed after Ms. Pata decided that no action was warranted.

23.    Months later, Ms. Pata disclosed this confidential matter to new NCAI Director of Operations Nicole Hallingstad, in violation of the NCAI Employee Handbook.

24.    Later, Ms. Hallingstad sought to have Ms. Pata removed as Executive Director of NCAI. In order bolster her efforts to oust Ms. Pata, Ms. Hallingstad spread false rumors of an "unresolved" sexual harassment charge against Mr. Dossett. On April 22, 2017, Ms. Hallingstad sent a memo to the NCAI President Brian Cladoosby titled, "Damaging Human Resources Action of NCAI Executive Director Jackie Pata." The memo alleged an "unresolved sexual harassment charge" against Mr. Dossett. The memo also indicated that Ms. Hallingstad

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

disclosed the confidential employee matter to another NCAI employee Mr. Sam Owl.

25.    The NCAI Executive Committee reviewed this memo and decided to take no action.

26.    In February of 2018, upon information and belief, Ms. Hallingstad convinced a departing female colleague, Sarah Pytalski, to file a false claim alleging Mr. Dossett made a rude comment about masturbation when watching sports in a hotel lounge with a group of co-workers on June 30, 2016. Pytalski's complaint alleged retaliation by Ms. Pata against Ms. Hallingstad and re-alleged the prior matter with the intoxicated colleague. The Pytalski complaint further alleged that Mr. Dossett had engaged in "psychological harassment" of Natasha Anderson when she worked for Mr. Dossett as a staff attorney. Mr. Dossett flatly denied the false allegations.

27.    NCAI hired Ms. Sadina Montani, outside counsel, to investigate Ms. Pytalski's complaint. Mr. Dossett cooperated fully in the investigation, unequivocally denied any wrongdoing and drafted an employee complaint against Ms. Hallingstad for spreading false rumors about him and driving investigations based on false statements.

28.    In discussing the matter with Mr. Dossett, Ms. Montani stated: "Sarah P was focused at least as much on the [hotel] incident as her own allegations." Ms. Montani has also stated: "We also know that incident has been gossiped out extensively in the community, based on comments that you all shared with me when I launched my investigation."

29.    Later, Ms. Pata told Mr. Dossett that he could not file a complaint against Ms. Hallingstad after discussing the investigation with Ms. Montani because that was "not considering the best interests of the organization" and Hallingstad had to be handled with "kid gloves." Mr. Dossett asked when he would get an opportunity to respond to the false rumors about him with the NCAI staff. Ms. Pata replied "never." Mr. Dossett was surprised by the

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

Executive Director's call after his interview. He understood that his account would go into a report together with other statements, and the investigation would produce findings that weighed the various accounts.

30.    On May 2, 2018, Mr. Dossett received a disciplinary memo that falsely accused him on matters unrelated to the Pytalski complaint: "unprofessional and inappropriate behavior, including yelling, bullying, being disrespectful, speaking over colleagues, insulting and derogatory emails, and sexually-charged comments."

31.    The investigation and disciplinary memo lacked factual basis.

32.    Mr. Dossett was told that the investigation was confidential, that there would be a change in his job title, and he would no longer supervise employees. Given the assurance of confidentiality, Mr. Dossett decided it was in the best interests of the organization to move on and get back to work. Mr. Dossett has repeatedly requested a copy of the investigation pursuant to ORS 652.750(2), but NCAI has refused to provide it.

33.    On August 13, 2018, Ms. Hallingstad sent a letter of resignation to the NCAI Executive Committee, again charging Ms. Pata with mismanagement of employee matters and indicating her intention to go public with these allegations as her "last act" as Director of Operations for NCAI. Upon information and belief, Ms. Hallingstad approached Indianz.com, a website that publishes news relevant to American Indians, with a salacious and misleading story of sexual harassment and cover-up at NCAI implicating Mr. Dossett and Ms. Pata.

34.    Ms. Hallingstad provided Indianz.com with a public statement alleging Pata's mismanagement of employee matters, shared her letter of resignation, her April 2017 memo, and other internal NCAI documents with Indianz.com.

/ / /

Page 10    COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

35.    On August 30, 2018, only hours before publication, Mr. Dossett received an email request from Indianz.com for comment about the false allegations. Mr. Dossett was instructed by Ms. Pata and Ms. Montani that he could make only a general denial. Ms. Pata and Ms. Montani repeatedly told Mr. Dossett that he could not disclose information that they considered private or confidential, even though other employees had disclosed false and misleading information about Mr. Dossett to each other and to the public and even though Ms. Pata had disclosed confidential information about Mr. Dossett to Ms. Hallingstad. On the morning of August 31, 2018, as an employee of NCAI, Mr. Dossett limited his response to the Indianz.com story as instructed and drafted by Ms. Pata and Ms. Montani.

36.    On August 31, 2018, Indianz.com published its article titled, "Prominent Indian Country Attorney Reassigned After #MeToo Allegations." The title of the article itself is defamatory, falsely implying a connection between the allegations and Mr. Dossett's reassignment. The subtitle states "'You are a pretty young Native woman, beware.'" This subtitle is further defamatory, asserting that young Native American women needed to "beware" of Mr. Dossett.

37.    The article quoted Ms. Suzan Shown Harjo: "'Give him the heave-ho" and "Make the place safe for women." The article states that "… repeated attempts to resolve complaints against Dossett went nowhere, documents obtained by Indianz.Com indicate, at least until the internal review this year." The article refers to a former employee calling Mr. Dossett a "potential predator on the payroll." The article continues to refer to "… NCAI's documented inability to fully resolve complaints of sexual harassment…" The truth is that the complaints were addressed and there was no finding that Mr. Dossett made NCAI an unsafe place for women, nor that he was a potential predator.

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

38.    The article later entirely mischaracterizes the above-described incident in Spokane, Washington. It states without any context that "In the document, Dossett said he 'never harassed' the employee, though he admits he 'totally restrained' her by the arm during the incident in question. He also said he 'held' the woman's hand in what he characterized as an attempt to assist her after a long day of work at the 'end of a big meeting.'" The article again quotes Ms. Harjo: "'That's no excuse for predatory behavior.'" Nowhere does the article describe that the quotes referred to the fact that Mr. Dossett simply escorted an impaired employee two blocks from a bar to a hotel lobby. "Totally restrained" was referring to preventing this employee from falling over and entering traffic, but without context implies grossly inappropriate sexual contact, which simply never happened. Moreover, there is no basis for the article to include a quote that Mr. Dossett engaged in "predatory behavior."

39.    In addition to the many false and defamatory individual statements in the article, the article as a whole is defamatory because it strongly implies that Mr. Dossett was a "predator" and sexually harassed employees, that he was demoted because of sexual harassment complaints, and that sexual harassment complaints against Mr. Dossett were not addressed. Without context, one could only conclude from this article that Mr. Dossett was a monster, a serial sexual harasser, and that NCAI did nothing to investigate allegations against him. In reality the allegations of sexual harassment were investigated and were found to be without merit. Indianz.com's article made no reference to the actual allegations, gave no context, and actively mislead its readers to believe the worst about Mr. Dossett.

40.    NCAI's own news website, Indian Country Today, repeated the false allegations in a story published on September 2, 2018:

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

The article also cites several interviews from people who remained anonymous and commented on the behavior of Dossett.

"As a new staff, I was told by a colleague, 'You are a pretty young Native woman, beware of John Dossett. Don't be caught in a room alone with him,'" the former employee said to Indianz.com. "It's the worst kept secret in D.C.'s Indian circles."

41.     Indian Country Today did not contact Mr. Dossett or attempt to verify or discuss the allegations with him.  Upon information and belief, Indian Country Today did not interview alternative sources.  Instead, Indian Country Today published a story that repeated false, defamatory and anonymous rumors from NCAI employees.  NCAI had actual knowledge of the falsity of the Indianz.com story that defamed Mr. Dossett and knowingly republished the story on its own website. The story by Indian Country Today was particularly harmful because, as NCAI's own news website, it appeared to confirm the false and defamatory allegations in the Indianz.com story.  NCAI was both the source and prominent publisher of the false and defamatory rumors.

42.     Mr. Dossett sent a memorandum to NCAI President Jefferson Keel urging NCAI to conduct a new and independent investigation to address the allegations.

43.     The NCAI Executive Committee met on September 24, 2018.  Mr. Dossett and his spouse travelled to Washington, D.C. to meet with the Executive Committee.  After 23 years of service to NCAI, Mr. Dossett was given five minutes to defend himself.  He explained his need for a process to clear his name of the allegations in the articles.  Mr. Dossett urged that NCAI start an independent investigation rather than force him to litigate to clear his name.

/ / /

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

44.    On October 3, 2018, Mr. Dossett received a phone call from Ms. Pata who told him there would be no further investigation and he must resign immediately. Unwilling to resign under a cloud of false allegations, Mr. Dossett issued a public statement by email denying the charges and urging an independent investigation by the organization. Within two hours, Ms. Pata terminated Mr. Dossett's employment with NCAI.

45.    In the same timeframe as these events, Lewis and Clark Law School suspended Mr. Dossett's employment as an adjunct professor. Mr. Dossett was disinvited from a conference at the University of Montana Law School where he was scheduled to present his pending law review article. Mr. Dossett was also disinvited from a scheduled appearance at the Affiliated Tribes of Northwest Indians, a forum where he was a regular speaker for many years.

46.  On October 11, 2018, Indian Country Today published another story on the matter. It republished in whole a letter from NCAI President Jefferson Keel, including this statement:

> Earlier this year, NCAI hired an external investigator who investigated two specific allegations of sexual harassment against John Dossett, one of which had been the subject of an earlier internal investigation. In conducting this investigation, the external investigator spoke with many current and former employees, including some former employees who learned about the investigation and requested an opportunity to speak. The investigation concluded with recommendations that NCAI promptly implemented.

With this news article and statement, NCAI defamed Mr. Dossett by omitting key facts. NCAI had investigated both incidents and concluded that no sexual harassment had taken place. Now under public pressure, NCAI President Keel converted these non-incidents into "two specific allegations of sexual harassment against John Dossett," while omitting that both had been investigated and these investigations determined that no sexual harassment occurred. President Keel's statement leads readers to believe that the investigation included findings of

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

sexual harassment.

47.    On October 18, 2018, High Country News published an article titled "National Congress of American Indians roiled by claims of harassment and misconduct." Upon information and belief, the author, Mr. Tristan Ahtone, interviewed a small group of discontented former NCAI employees and published multiple false accusations and statements, but failed to contact or interview Mr. Dossett, or upon information and belief, any NCAI employee or other person with differing views about Dossett's reputation and conduct. With this article, the false accusations against Mr. Dossett were expanded to include accusations of racism, and were delivered to a broader general audience across the Western United States.

48.    On October 23, 2018, Indianz.com published "National Congress of American Indians opens annual convention amid controversy." The article quotes NCAI President Jefferson Keel making a public statement to the Annual Meeting of the National Congress of American Indians. "'NCAI doesn't condone harassment of any kind in the workplace, nor have we, nor will we, tolerate it anymore,' Keel said. We will take action when it occurs in the future just like we did in the situation at hand.'" This statement by NCAI President Keel, in direct reference to Mr. Dossett, falsely claims that sexual harassment occurred "in the situation at hand," and is contrary to NCAI's own internal investigations. The statement was made to the largest annual gathering of tribal leaders and advocates in the nation, causing great harm to Mr. Dossett's reputation.

49.    On December 12, 2018, February 15, 2019 and February 22, 2019 Indianz.com published follow-up articles on this matter. Each of the articles rely on President Keel's statements as false confirmation that Mr. Dossett committed sexual harassment.

/ / /

Page 15    COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

50.     On March 8, 2019, NCAI's President Jefferson Keel issued a letter to the NCAI membership with the results of a belated independent investigation by the firm Quarles & Brady LLP.  President Keel issued the statement: "While there were many rumors, this outside firm found no facts to support the rumors."

51.     The false allegations promoted by NCAI, Indianz.com and High Country News not only resulted in the loss of Mr. Dossett's employment, but also the destruction of his reputation, career, and future opportunities.  Mr. Dossett has been suspended from his position as an adjunct law professor, disinvited from speaking engagements, and shunned by the community where he has spent his entire career.

52.     The false allegations, along with several other similar articles that repeat the false and defamatory statements directed towards Mr. Dossett, continue to remain on Indianz.com and Indian Country Today, a website wholly owned by NCAI, instantly searchable on the internet, and form a barrier to any future employment for Mr. Dossett.

53.     The false allegations have inflicted continuing emotional distress for Mr. Dossett. Mr. Dossett's career has been marked by widespread collaboration with others, and the loss of relationships has been devastating.  Mr. Dossett has suffered significant embarrassment, humiliation, mental suffering and emotional distress.  He has extreme difficulty sleeping as a result of the stress and anxiety caused by the publications.  He has received sleep therapy treatment and medication.

/ / /

/ / /

/ / /

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

## FIRST CAUSE OF ACTION

### DEFAMATION

COUNT ONE: DEFAMATION PER SE FOR STATEMENTS IN THE AUGUST 31, 2018 INDIANZ.COM ARTICLE "PROMINENT INDIAN COUNTRY ATTORNEY REASSIGNED AFTER #METOO ALLEGATIONS."

(Against Defendants Ho-Chunk and Noble Savage Media)

54.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

55.     On August 31, 2018, Acee Agoyo and Kevin Abourzek published an article on Indianz.com to a national audience with the title, "Prominent Indian Country Attorney Reassigned After #MeToo Allegations." A true and correct copy of the online edition of the article is attached as Exhibit A.

56.     The article published the following statements that are defamatory per se on their face:

      a.    "The terrible secret was apparently exacerbated by NCAI's documented inability to fully resolve complaints of sexual harassment and other allegations of misconduct." This statement is false because the complaints were, in fact investigated and addressed.

      b.    "…repeated attempts to resolve complaints against Dossett went nowhere… at least until the internal review this year." This statement is false because the only complaint prior to the 2018 review was in fact investigated and addressed.

      c.    "A close examination of NCAI's annual reports shows that women are in fact the most affected by the turmoil. Between 2017 and 2018, for

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

example, 58 percent of the employees who left the organization were women." This conclusion that women were the most effected by the alleged turmoil is false because over 58% of NCAI's staff were women.

d.     "'That's no excuse," said Harjo. "That's no excuse for predatory behavior.'" This statement is false because Mr. Dossett has not engaged in predatory behavior.

57.     The following statements were defamatory per se because they lead readers to believe the Mr. Dossett has engaged in serial sexual harassment:

a.     "'You are a pretty young Native woman, beware'" is defamatory because it falsely states that "pretty young Native" women should fear being sexually harassed by Mr. Dossett.

b.     "The highest-ranking attorney at the National Congress of American Indians has been reassigned in the wake of sexual harassment allegations, an investigation by Indianz.Com has found." This statement strongly implies and would lead a reasonable reader to believe that Mr. Dossett was reassigned due to actual sexual harassment. In reality, Mr. Dossett was reassigned due to un-related workplace complaints and NCAI internal politics.

c.     "In the document, Dossett said he "never harassed" the employee, though he admits he "totally restrained" her by the arm during the incident in question. He also said he "held" the woman's hand in what he characterized as an attempt to assist her after a long day of work at the "end of a big meeting." Even as he offered an apology for his behaviors,

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

he suggested that he had justification to act in that manner. He said he was concerned about the employee's well-being, saying that she was "really tired" and was affected by "maybe too many beers." This passage is defamatory because it strongly implies sordid conduct where Mr. Dossett appears to force the employee into some sort of sexual contact. The article gives no context to these tortured quotations. In reality, Mr. Dossett was describing how he held up this employee as he helped her from a bar to a hotel lobby two blocks away. The two were always either on a sidewalk or around other people. The article also fails to state that the complaint was not made by the intoxicated employee, but by someone with no firsthand knowledge of the events in question.

58.     The article as a whole is defamatory per se because it states that Mr. Dossett is a "predator," and leads readers to believe that he sexually harassed employees, and that he was demoted for sexually harassing employees. This is false.

59.     The article is defamatory per se because it attributes to Mr. Dossett serial sexual misconduct, unfitness for the duties of his profession, moral turpitude, and foreseeably would harm Mr. Dossett's career and livelihood. Mr. Dossett is therefore entitled to special and general damages.

60.     As a direct and proximate result of these false statements, Mr. Dossett has lost his employment and will not likely be employable as an attorney due to the severe damage to his reputation and the broad republication of their stories about him. Mr. Dossett's yearly total employment compensation including benefits was approximately $241,958.00. Mr. Dossett reasonably expected to work until he turned 70.

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

61.     Mr. Dossett is entitled to special damages in the amount of $4,113,286.00 for his past and future loss of wages.  Mr. Dossett is entitled to general damages in the amount of $2,000,000.00 for the injury to his reputation, embarrassment, humiliation, and emotional distress caused by the relevant defendants in this claim.

## COUNT TWO: DEFAMATION PER SE FOR STATEMENTS IN THE SEPTEMBER 2, 2018 INDIAN COUNTRY TODAY ARTICLE "NCAI ATTORNEY JOHN DOSSETT UNDER FIRE AFTER #METOO ALLEGATIONS."

### (Against Defendant NCAI)

62.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

63.     NCAI and Mark Trahaunt, the Editor and Publisher of NCAI's wholly-owned "Indian Country Today" news website, republished the false allegations on September 2, 2018 under the headline "NCAI Attorney John Dossett under fire after #MeToo allegations." A true and correct copy of the online edition of the article is attached as Exhibit B.  The article included the statements:

> The article also cites several interviews from people who remained anonymous and commented on the behavior of Dossett. "As a new staff, I was told by a colleague, 'You are a pretty young Native woman, beware of John Dossett. Don't be caught in a room alone with him,'" the former employee said to Indianz.com. "It's the worst kept secret in D.C.'s Indian circles."

64.     The article as a whole is defamatory because it gives credence and appears to confirm to the false statements from the Indianz.com article, which NCAI had investigated and knew were false.

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

65.    Each of these statements is false and defamatory or relies on false rumors from anonymous persons who have no personal knowledge to support the conclusion that Mr. Dossett engaged in any type of sexual harassment. By mischaracterizing events and omitting the results of the investigations, Defendant NCAI led its readers to believe that Mr. Dossett committed acts of sexual harassment.

66.    The article is defamatory per se because it attributes to Mr. Dossett serial sexual misconduct, unfitness for the duties of his profession, moral turpitude, and foreseeably would harm Mr. Dossett's career and livelihood. Mr. Dossett is therefore entitled to special and general damages.

67.    As a direct and proximate result of these false statements, Mr. Dossett has lost his employment and will not likely be employable as an attorney due to the severe damage to his reputation and the broad republication of their stories about him. Mr. Dossett's yearly total employment compensation including benefits was approximately $241,958.00. Mr. Dossett reasonably expected to work until he turned 70.

68.    Mr. Dossett is entitled to special damages in the amount of $4,113,286.00 for his past and future loss of wages. Mr. Dossett is entitled to general damages in the amount of $2,000,000.00 for the injury to his reputation, embarrassment, humiliation, and emotional distress caused by the relevant defendants in this claim.

/ / /

/ / /

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

COUNT THREE: DEFAMATION PER SE FOR STATEMENTS IN OCTOBER 11, 2018

INDIAN COUNTRY TODAY ARTICLE "TRANSPARENCY DEMANDED IN NCAI'S

HANDLING OF STAFF LAWYER AND #METOO ALLEGATIONS"

(Against Defendant NCAI )

69.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

70.     On October 11, 2018, Indian Country Today published another story, written by

Mr. Trahaunt, intending to justify NCAI's actions in firing Mr. Dossett. A true and correct copy

of the online edition of the article is attached as Exhibit C.  It republished in whole a letter from

NCAI President Jefferson Keel, including this statement:

> Earlier this year, NCAI hired an external investigator who
> investigated two specific allegations of sexual harassment against
> John Dossett, one of which had been the subject of an earlier
> internal investigation.  In conducting this investigation, the
> external investigator spoke with many current and former
> employees, including some former employees who learned about
> the investigation and requested an opportunity to speak.  The
> investigation concluded with recommendations that NCAI
> promptly implemented.

71.     With this news article and statement, NCAI publicly defamed Mr. Dossett by

omitting the results of its internal investigations, and leading the reader to believe that Mr.

Dossett's demotion was related to allegations of sexual harassment.  NCAI had investigated both

incidents and concluded that no sexual harassment had taken place.  Then under public pressure,

NCAI President Keel converted these non-incidents into "two specific allegations of sexual

harassment against John Dossett," while omitting that both had been investigated and determined

that no sexual harassment took place.  Indian Country Today repeated this defamation in a news

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

story that continues to reside on its website. President Keel's statement implies and leads the reader to believe that the investigation found facts demonstrating sexual harassment and that Mr. Dossett's demotion was based on these facts, when no such facts exist.

72.     President Keel's defamatory statement caused further harm to Mr. Dossett's reputation because it was taken as confirmation of the false rumors previously published by Indianz.com.

73.     The article is defamatory per se because it attributes to Mr. Dossett sexual misconduct, unfitness for the duties of his profession, moral turpitude, and foreseeably would harm Mr. Dossett's career and livelihood. Mr. Dossett is therefore entitled to special and general damages.

74.     As a direct and proximate result of these false statements, Mr. Dossett has lost his employment and will not likely be employable as an attorney due to the severe damage to his reputation and the broad republication of their stories about him. Mr. Dossett's yearly total employment compensation including benefits was approximately $241,958.00. Mr. Dossett reasonably expected to work until he turned 70.

75.     Mr. Dossett is entitled to special damages in the amount of $4,113,286.00 for his past and future loss of wages. Mr. Dossett is entitled to general damages in the amount of $2,000,000.00 for the injury to his reputation, embarrassment, humiliation, and emotional distress caused by the relevant defendants in this claim.

/ / /

/ / /

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

COUNT FOUR: DEFAMATION PER SE FOR STATEMENTS IN THE OCTOBER 18, 2018

HIGH COUNTRY NEWS ARTICLE "NATIONAL CONGRESS OF AMERICAN INDIANS

ROILED BY CLAIMS OF HARASSMENT AND MISCONDUCT."

(Against High Country News)

76.    Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

77.    On October 18, 2018, High Country News published a defamatory article titled

"National Congress of American Indians roiled by claims of harassment and misconduct." A

true and correct copy of the online edition of the article is attached as Exhibit D.

78.    The article published the following statements that are defamatory per se:

a.    "Former NCAI Attorney John Dossett is accused of unwanted touching of

a female employee and of making crude sexual remarks to coworkers at a

2016 conference." Those allegations are false and misleading.

b.    "In March of 2017, whistleblowers contacted NCAI's then-president,

Brian Cladoosby, to report a hostile work environment, Pata's repeated

attempts to circumvent protocol, and the organization's refusal to

investigate the Spokane sexual harassment incident." The Spokane

incident was investigated and found no wrongdoing and no grounds for

discipline.

79.    The article is defamatory as a whole because it leads readers to believe that Mr.

Dossett sexually harassed employees and that he was demoted because of the alleged sexual

harassment.

/ / /

/ / /

Page 24    COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

80.    Each of these statements is false and defamatory or relies on false rumors from anonymous persons who have no personal knowledge to support the conclusion that Mr. Dossett engaged in any type of sexual harassment.

81.    By mischaracterizing events, Defendant High Country News created false implications from undisclosed facts, leading their readers to believe that Mr. Dossett committed acts of sexual harassment.

82.    The article is defamatory per se because it attributes to Mr. Dossett serial sexual misconduct, unfitness for the duties of his profession, moral turpitude, and foreseeably would harm Mr. Dossett's career and livelihood.  Mr. Dossett is therefore entitled to special and general damages.

83.    As a direct and proximate result of these false statements, Mr. Dossett has lost his employment and will not likely be employable as an attorney due to the severe damage to his reputation and the broad republication of their stories about him.  Mr. Dossett's yearly total employment compensation including benefits was approximately $241,958.00.  Mr. Dossett reasonably expected to work until he turned 70.

84.    Mr. Dossett is entitled to special damages in the amount of $4,113,286.00 for his past and future loss of wages.  Mr. Dossett is entitled to general damages in the amount of $2,000,000.00 for the injury to his reputation, embarrassment, humiliation, and emotional distress caused by the relevant defendants in this claim.

/ / /

/ / /

/ / /

Page 25    COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

COUNT FIVE: DEFAMATION PER SE BY NCAI FOR STATEMENTS IN THE OCTOBER

23, 2018 INDIANZ.COM ARTICLE "NATIONAL CONGRESS OF AMERICAN INDIANS

OPEN ANNUAL CONVENTION AMID CONTROVERSY."

(Against Defendants Ho-Chunk and Noble Savage Media)

85.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

86.     On October 23, 2019, Indianz.com published "National Congress of American

Indians opens annual convention amid controversy." A true and correct copy of the online

edition of the article is attached as Exhibit E. The article quotes NCAI President Jefferson Keel

making a public statement to the Annual Meeting of the National Congress of American Indians

on the previous day:

> President Jefferson Keel directly addressed the controversy that
> arose after Indianz.Com began reporting on the issue almost two
> months ago. He acknowledged almost immediately the turmoil that
> has eroded confidence in the nation's oldest and largest inter-tribal
> organization.
>
> "As you know, NCAI has been in the news lately and it's not for
> the best reasons," Keel told fellow tribal leaders not long after
> opening the 75th annual convention in a hotel in downtown
> Denver.
>
> But Keel insisted that NCAI took action to address allegations of
> staff misconduct long before Indianz.Com's first report on August
> 31, which detailed the existence of a #MeToo investigation
> involving John Dossett, who was reassigned and then eventually
> ousted from his role as the organization's longest-serving and
> highest-ranking attorney.
>
> "NCAI doesn't condone harassment of any kind in the workplace,
> nor have we, nor will we, tolerate it anymore," Keel said. "We will
> take action when it occurs in the future just like we did in the
> situation at hand."

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

87.     This statement by NCAI President Keel was defamatory because it was in reference to the demotion and firing of Mr. Dossett and falsely states that sexual harassment occurred "in the situation at hand." The statement was contrary to NCAI's own internal investigations. Mr. Dossett was, in fact, demoted for non-sexual harassment grounds and due to office politics. The statement was made to the largest annual gathering of tribal leaders and advocates in the nation, causing great harm to Mr. Dossett's reputation.

88.     The statement is defamatory per se because it attributes to Mr. Dossett sexual misconduct, unfitness for the duties of his profession, moral turpitude, and foreseeably would harm Mr. Dossett's career and livelihood. Mr. Dossett is therefore entitled to special and general damages.

89.     As a direct and proximate result of these false statements, Mr. Dossett has lost his employment and will not likely be employable as an attorney due to the severe damage to his reputation and the broad republication of their stories about him. Mr. Dossett's yearly total employment compensation including benefits was approximately $241,958.00. Mr. Dossett reasonably expected to work until he turned 70.

90.     Mr. Dossett is entitled to special damages in the amount of $4,113,286.00 for his past and future loss of wages. Mr. Dossett is entitled to general damages in the amount of $2,000,000.00 for the injury to his reputation, embarrassment, humiliation, and emotional distress caused by the relevant defendants in this claim.

/ / /

/ / /

/ / /

Page 27     COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

## SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF

(Against Defendants Ho-Chunk, Noble Savage Media, NCAI, High Country News)

91.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

92.     Mr. Dossett seeks injunctive relief against the Defendants ordering them to retract their defamatory statement made about Mr. Dossett, to remove the articles from their websites, ordering NCAI to issue a statement about the results of its internal investigations, and precluding them for publishing further defamatory statements accusing or implying that Mr. Dossett has committed sexual harassment or that he was demoted or terminated due to sexual harassment.

93.     Plaintiff will suffer irreparable harm in the form of loss of reputation and loss of employment if the Defendants are allowed to continue publishing these defamatory articles.

94.     Plaintiff is likely to prevail on the merits of this case.  The defamation alleged above is clear.

95.     An injunction against publishing defamatory statements about Plaintiff will have little effect on Defendants but will have a strongly beneficial effect on Mr. Dossett.

96.     It is in the public's interest that such an injunction be granted because the public does not benefit at all from being misled by the Defendants.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

(Against Defendant NCAI)

97.     Plaintiff repeats and realleges each allegation above as if set forth herein.

98.     NCAI owes a duty of care to its employees as it relates to investigations into allegations of misconduct and in making decisions about employee discipline.  The NCAI

Page 28     COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

Employee Handbook states that: "The organization will conduct all investigations in a discreet manner. The organization recognizes that every investigation requires a determination based on all the facts in the matter. We also recognize the serious impact a false accusation can have." The Employee Handbook also states: "Our professional ethics require that each employee maintain the highest degree of confidentiality when handling member matters." The NCAI Employee Handbook also states: "The organization will investigate every reported incident immediately."

99.     NCAI violated that duty of care as follows:

    a.    Failing to keep sensitive information about allegations against Mr. Dossett confidential;

    b.    Failing to consider all of the facts of the matter, intentionally disregarding the possibility that the claims were made for an improper purpose;

    c.    After concluding that no incidents of sexual harassment occurred, and it became evident that false rumors were circulating, failing to communicate with NCAI employees about the results of NCAI's internal investigations;

    d.    Refusing to investigate when, new, false and far more damaging allegations were reported on its own website, instead ordering Mr. Dossett to resign; and

    e.    Continuing to make public statements that Mr. Dossett was guilty of some form of sexual misconduct.

100.    It was foreseeable that NCAI's misconduct would result in serious, irreparable harm to Mr. Dossett's career and mental well-being.

/ / /

Page 29    COMPLAINT FOR DEFAMATION, INJUNCTIVE
RELIEF, NEGLIGENCE, AND INTENTIONAL
INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

101.    As a direct and proximate result of NCAI's negligence, Mr. Dossett has suffered economic damages in the form of past and future lost wages amount of $4,113,286.00 and non-economic damages for his pain and suffering in the amount of $2,000,000.00.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

(Against all Defendants)

102.    Plaintiff repeats and realleges each allegation above as if set forth herein.

103.    Mr. Dossett had professional relationships with NCAI and Lewis & Clark Law School as their employees. Mr. Dossett also had professional relationships with Cornell Law School, other academic institutions, and with other potential future employers.

104.    Defendants intentionally interfered with those relationships by knowingly making false statements about Plaintiff, maliciously sharing false rumors with colleagues among the NCAI Staff and with Indianz.com, and knowingly published unsubstantiated false allegations with reckless disregard for the truth, resulting in Plaintiff's loss of employment with NCAI, loss of employment as an adjunct law professor with Lewis & Clark Law School, a ruined reputation and loss of future opportunities for employment.

105.    Defendants accomplished the interference through improper means or for an improper purpose.

106.    As a direct and foreseeable result of the Defendants' interference with his economic relations, Mr. Dossett lost his jobs with NCAI and Lewis & Clark Law School.

107.    Mr. Dossett suffered damages in the form of past and future lost wages in the sum of $4,113,286.00

/ / /

COMPLAINT FOR DEFAMATION, INJUNCTIVE RELIEF, NEGLIGENCE, AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

WHIPPLE LAW OFFICE, LLC.
1675 SW Marlow Ave., Suite 201
Portland, OR 97225
503.222.6004

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i.       This Court's finding that the statements published by defendants are false and defamatory;

ii.      The Court's injunction that the defendants retract and cease publishing defamatory content about Plaintiff.

iii.     For the First Claim for Relief, an award of compensatory damages of not less than $6,113,286.00.

iv.      For the Second Claim for Relief, an award of compensatory damages of not less than $6,113,286.00.

v.       For the Third Claim for Relief, an award of compensatory damages of not less than $6,113,286.00.

vi.      For the Fourth Claim for Relief, an award of compensatory damages of not less than $4,113,286.00.

iv.      Such other relief as the Court deems just and proper.

DATED this 29th day of August, 2019.

Respectfully submitted,

Whipple Law Office, LLC.

By:     /s/ B. Scott Whipple
        B. Scott Whipple, OSB #983750
        Telephone 503-222-6004
        Of Attorneys for Plaintiff John H. Dossett

COMPLAINT FOR DEFAMATION, INJUNCTIVE
        RELIEF, NEGLIGENCE, AND INTENTIONAL
        INTERFERENCE WITH ECONOMIC RELATIONS