Ryan M. Bledsoe, OSB No. 073296
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland OR, 97204
Phone: (503) 221-1440
Email: ryan.bledsoe@tonkon.com

Peter Michael Meloy, admitted *pro hac vice*
MELOY LAW FIRM
P.O. Box 1241
Helena, MT  59624-1241
Phone: (406) 442-8670
Email: mike@meloylawfirm.com

*Attorneys for Defendant High Country News*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN H. DOSSET,<br><br>              Plaintiff,<br><br>    vs.<br><br>HO-CHUNK, INC., a tribal corporation formed by the Winnebago Tribe of Nebraska, NOBLE SAVAGE MEDIA, LLC, a limited liability company of unknown origin, THE NATIONAL CONGRESS OF AMERICAN INDIANS OF THE UNITED STATES AND ALASKA, an Oklahoma not-for-profit corporation, and HIGH COUNTRY NEWS, a Colorado nonprofit corporation,<br><br>              Defendants. | Case No. 3:19-cv-01386<br><br>**DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page(s)**

LR 7-1 CERTIFICATION ..................................................................................... 1

MOTION ............................................................................................................... 1

MEMORANDUM OF LAW ................................................................................. 1

    I.      STATEMENT OF THE CASE ................................................................ 1

    II.     STANDARDS OF REVIEW ................................................................... 4

           2.      Anti-SLAPP Special Motion to Strike ................................... 5

           3.      Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ........................... 7

    III.    ARGUMENT .......................................................................................... 9

           1.      The allegedly defamatory story was written in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. ....................................... 9

           2.      The Plaintiff is a limited purpose public figure and may not recover absent an allegation of constitutional malice (which he has not made).... 11

           3.      Plaintiff's remaining negligence-based claim is derivative of his defamation claim and cannot succeed as an independent tort. ................. 14

    IV.    CONCLUSION ..................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aeroplate Corp. v. Arch Ins.*,
   No. CV F 06-1099 AWI SMS, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006)........................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................14

*Balistreri v. Pacifica Police Department*,
   901 F.2d 696 (9th Cir. 1988) ................................................................................13, 14

*Bank of Or. v. Indep. News*,
   298 Or. 434, 693 P.2d 35 (1985) ...............................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007).....................................................................13, 14

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .......................................................................................14

*Clifford v. Trump*,
   339 F. Supp. 3d 915 (C.D. Cal. 2018) ........................................................................11

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967)..............................................18

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749, 105 S. Ct. 2939 (1985).........................................................................19

*Dworkin v. Hustler Magazine, Inc.*,
   867 F.2d 1188 (9th Cir.1989) ....................................................................................21

*Fodor v. Leeman*,
   179 Or. App. 697, 41 P.3d 446 (2002)...................................................................18, 20

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ................................................................................10, 12

*Gertz. Cooper v. Portland Gen. Elec. Corp.*,
   110 Or. App. 581, 824 P.2d 1152 (1992).....................................................................20

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).............................................18, 19

**PAGE 1 – TABLE OF AUTHORITIES**

*Guzman v. Finch*,
  No. 19cv412-MMA (MDD), 2019 WL 1877184 (S.D. Cal. Apr. 26, 2019)...................15, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1990) ................................................................................14

*Handy v. Lane Cty.*,
  360 Or. 605, 385 P.3d 1016 (2016) ........................................................................13

*Hanna v. Plumer*,
  380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)..............................................10

*Higher Balance, LLC v. Quantum Future Group*,
  Civil No. 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008)...................12, 13

*Jones v. Bock*,
  549 U.S. 199, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007).........................................14

*Leidholt v. L.F.P. Inc.*,
  860 F.2d 890 (9th Cir. 1988) .................................................................................21

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990).............................................18

*Miller v. Watson*,
  No. 3:18-cv-00562-SB, 2019 WL 1871011 (D. Or. Feb. 12, 2019)...........10, 16, 17

*Montgomery v. Risen*,
  197 F. Supp. 3d 219 (D.D.C. 2016) .......................................................................18

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .................................................................................13

*Mullen v. Meredith Corp.*,
  271 Or. App. 698, 353 P.3d 598 (2015)..............................................................11, 15

*Neumann v. Liles*,
  358 Or. 706, 369 P.3d 1117 (2016) .................................................................11, 15, 17

*New York Times v. Sullivan*,
  376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).........................................18

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .............................................................................15

*Obsidian Fin. Grp. LLC v. Cox*,
  No. CV-11-57-HZ, 2011 2011 WL 5999334 (D. Or. Nov. 30, 2011)....................19

**PAGE 2 – TABLE OF AUTHORITIES**

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018) ........................................................................10

*Reader's Digest Ass'n v. Superior Court,*
    37 Cal. 3d 244, 690 P.2d 610, 208 Cal. Rptr. 137 (1984) .......................19

*Reesman v. Highfill,*
    149 Or. App. 374, 942 P.2d 891 (1997), rev'd on other grounds, 327 Or. 597,
    965 P.2d 1030 (1998)....................................................................................20

*Rice v. Comtek Mfg. of Or., Inc.,*
    766 F. Supp. 1539 (D. Or. 1990) ................................................................21

*Schwern v. Plunkett,*
    845 F.3d 1241 (9th Cir. 2017) ......................................................................11

*Spreadbury v. Bitterroot Pub. Library,*
    856 F. Supp. 2d 1195 (D. Mont. 2012)......................................................21

*Tavoulareas v. Piro,*
    817 F.2d 762 (U.S. App. D.C. 1987) ..........................................................18

*Thomas v. Fry's Elec., Inc.,*
    400 F.3d 1206 (9th Cir. 2005) ......................................................................11

*Tunac v. United States,*
    897 F.3d 1197 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 817,
    202 L. Ed. 2d 578 (2019) ..............................................................................14

*Unelko Corp. v. Rooney,*
    912 F.2d 1049 (9th Cir. 1990) ......................................................................20

*Waldbaum v. Fairchild Publn's, Inc.,*
    627 F.2d 1287 (D.C. Cir. 1980) ..................................................................18

*Wingard v. Oregon Family Council, Inc.,*
    290 Or. App. 518, 417 P.3d 545 (2018)......................................................11

*Zweizig v. Nw. Direct Teleservs., Inc.,*
    No. 3:15-cv-02401-HZ, 2018 WL 6062316 (D. Or. Nov. 20, 2018)......................10

**Statutes**

Or. Rev. Stat. § 31.150(2)(b) ...............................................................................17

Or. Rev. Stat. § 31.150(2)(d) ...............................................................................17

ORS 31.150..............................................................................................7, 11, 12

**PAGE 3 – TABLE OF AUTHORITIES**

**Other Authorities**

Fed.R.Civ.P., Rule 12(b)(6) ..........................................................................7, 10, 13, 14, 20

Sophie Gilbert, *The Movement of #MeToo,* The Atlantic (Oct. 16, 2017) ...................................16

U.S. Const. am. I............................................................................................10, 11, 14, 16, 17, 21

## LR 7-1 CERTIFICATION

The parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so.

## MOTION

COMES NOW Defendant High Country News, by and through counsel, and moves this court for an order dismissing the Complaint upon the grounds and for the reasons that the allegations of the Complaint are subject to dismissal under Oregon's anti-SLAPP statute, ORS 31.150, and because Plaintiff is a limited purpose public figure he does not state a claim upon which relief can be granted for failure to allege malice all as more fully set forth in the memorandum submitted in support, hereof.

## MEMORANDUM OF LAW

Defendant High Country News ("HCN") submits the following memorandum in support of its special motion to strike and Rule 12(b)(6) motion to dismiss the Complaint filed by Plaintiff John Dossett ("Dossett").

## I.    STATEMENT OF THE CASE

Plaintiff Dossett filed this defamation action against Defendant HCN and other defendants seeking damages stemming from allegedly libelous statements published about him. Specifically, the Complaint alleges that Dossett, an attorney "with a strong record of accomplishments" is a "leader in the field of Indian Law and a staunch advocate for American Indian rights." (Complaint, ¶ 2). Dossett was General Counsel for the National Congress of American Indians ("NCAI"), a non-profit organization whose purpose is to advance tribal causes and is also a Defendant in this action. (Complaint, ¶ 2). On August 31, 2018 a "prominent internet-based news site" Indianz.com, published a story headlined "Prominent Indian Country Attorney Reassigned After #MeToo Allegations." According to his Complaint, Dossett characterized the story as portraying him as a "predator in a position of power within NCAI." (Complaint, ¶ 3).

**PAGE 1 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

The gist of the Indianz.com piece was that "the highest ranking attorney at the National Congress of American Indians" was "reassigned" from his general counsel position to "senior counsel" after a complaint brought by a former employee that Dossett intimidated, harassed and pressured female employees at NCAI. The change in his employment status occurred after an internal investigation of the charges. According to the story Dossett occupied a position "with widespread influence in Indian Country, from policy matters in the executive branch and legislation on Capitol Hill to high-profile U.S. Supreme Court cases." (Complaint appendix, Ex. "A.")

The news story described a national Indian public interest group beset with internal problems including the loss of a number of female employees and an administration unwilling to take steps to address the issue. (*Id.*) According to one female employee, Dossett's treatment of female employees was common knowledge, yet the organization did nothing to deal with his behavior. The Complaint also refers to elements of the story in ¶¶ 36-39.

Dossett, apparently contacted by the journalists writing the story, denied any improper behavior but refused to comment further "out of respect for that individual." According to the Complaint, Dossett was told by NCAI administrative officials to limit his response. (Complaint, ¶ 35). However, the story reported that Dossett had earlier responded to the allegations by admitting that during a walk back to a hotel in Spokane, Washington during a conference, he "totally restrained" a female employee and "held her hand" in an attempt to assist her after a long meeting. Dossett had apologized for his behavior but denied any of the female employees' allegations of sexual misconduct. He claimed to be assisting her because she drank too much.

A former executive director of NCAI criticized the handling of the complaint claiming that it fostered a climate of shame, silence, and intimidation among employees. She called for a closer examination of the organization's management and thought that such examination would reveal problems with the way employees have been treated.

On September 2, 2018, NCAI's news website "Indian Country Today" published a report of the Indianz.com story. (Complaint, ¶ 40). This second story characterized the initial story as:

**PAGE 2 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN
SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

"[a]ccording to the article, the harassment allegations could be responsible for a high turnover rate of employees within NCAI." The story also quoted a former director of operations for NCAI who left her position because colleagues were marginalized, disciplined, punished, and even terminated for trying to address issues of poor management. Management for NCAI were quoted in the story that personnel complaints were thoroughly investigated, and appropriate steps taken, but NCAI would keep the allegations and the results of investigations confidential. (Complaint appendix, Exhibit "B.").

On September 24, 2018, the NCAI executive committee met in Washington D.C. where Dossett responded to the allegations. According to his Complaint, Dossett was only given five minutes to defend himself. (Complaint, ¶ 43).

On October 3, 2018, NCAI's Executive Director Jacqueline Pata telephoned Dossett and asked for his resignation. Dossett apparently refused to resign and issued his eight-page statement responding to the allegations of misbehavior. Two hours later, the Executive Director fired Dossett.

On October 11, 2018, Indian Country Today published a second story containing a verbatim letter from NCAI president Jefferson Keel. In the letter, Keel explains that NCAI hired an independent investigator to look into the specific allegations of harassment against Plaintiff Dossett. The investigation concluded with recommendations that NCAI promptly implemented. The "gist" of Keel's letter was that as a result of the Dossett complaints NCAI had made changes to address harassment issues including the creation of an ad hoc committee to oversee the manner in which allegations of misconduct would be addressed, engaging special human relations experts to assist in resolving complaints and the sponsorship of sexual harassment training sessions for employees. (Complaint appendix Exhibit "C" and Complaint, ¶ 46).

The October 11th Indian Country Today story included reference to an eight-page statement written by Dossett responding to the harassment allegations. Although the October 11th story does not report Dossett's termination as NCAI's attorney, the article refers to Dossett as a "former NCAI attorney."

**PAGE 3 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

On October 18, 2018, Defendant HCN reported the turmoil within NCAI involving the dispute with Dossett over allegations of misconduct. The "gist" of this story was that for several years Executive Director of NCAI had received complaints of harassment of employees of the organization, but had failed to investigate them or report them to the Board of Directors. (Complaint, Ex. "D"). The HCN piece reported that "Former NCAI attorney John Dossett is accused of unwanted touching of a female employee and of making crude sexual remarks to coworkers at a 2016 Convention." (*Id.*). The story also reported "In March of 2017, whistleblowers contacted NCAI's then president Brian Cladoosby, to report a hostile work environment, Pata's repeated attempts to circumvent protocol and the organization's refusal to investigate the Spokane sexual harassment incident." (*Id*.).

As to HCN, Plaintiff Dossett's libel per se claims arise from these two statements, which he claims are false and defamatory. (Complaint, ¶ 78). Dossett also alleges that the article is generally defamatory because it leads readers to believe that he was demoted because of the allegations or that he in fact was guilty of sexual harassment.

## II.    STANDARDS OF REVIEW

Federal courts generally apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1140, 14 L. Ed. 2d 8 (1965). Although anti-SLAPP motions appear to be a procedural mechanism to vindicate existing substantive rights, they are generally allowed in federal court. *See Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (applying Oregon's anti-SLAPP statute). The Ninth Circuit has recently clarified that "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

This motion presents such a legal challenge and the Court can resolve it on First Amendment grounds, as a matter of law, as other courts have done. *See e.g.*, *Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 WL 1871011, at *4–*5 (D. Or. Feb. 12, 2019); *Zweizig v. Nw.*

**PAGE 4 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

*Direct Teleservs., Inc.*, No. 3:15-cv-02401-HZ, 2018 WL 6062316, at *2 (D. Or. Nov. 20, 2018);
*Clifford v. Trump*, 339 F. Supp. 3d 915, 922 (C.D. Cal. 2018); *Aeroplate Corp. v. Arch Ins.*, No.
CV F 06-1099 AWI SMS, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 9, 2006).

**2.      Anti-SLAPP Special Motion to Strike**

To combat lawsuits designed to chill the exercise of free speech and press, the Oregon
Legislature has authorized a special motion to strike claims that are based on a defendant's
engagement in First Amendment activity. Sometimes called an "anti-SLAPP statute" (anti-
Strategic Lawsuits Against Public Participation) Oregon's statute, enacted in 2001 and codified
at ORS 31.150, "creates an expedited procedure for dismissal of certain nonmeritorious civil
cases without prejudice at the pleading stage." *Neumann v. Liles*, 358 Or. 706, 723, 369 P.3d
1117 (2016). Defendants in federal court may avail themselves of a state's applicable anti-
SLAPP statute's provisions.  *Thomas v. Fry's Elec., Inc.,* 400 F.3d 1206, 1206–07 (9th Cir.
2005). Notably, "Oregon used California's anti-SLAPP law as a model for its legislation."
*Schwern v. Plunkett*, 845 F.3d 1241, 1244 (9th Cir. 2017).

In *Mullen v. Meredith Corp.*, 271 Or. App. 698, 700, 353 P.3d 598, 601 (2015), the
Oregon Court of Appeals described the purpose of the statute as "to 'permit a defendant who is
sued over certain actions taken in the public arena to have a questionable case dismissed at an
early stage.'" (quoting *Staten v. Steel,* 222 Or. App. 17, 27, 191 P.3d 778 (2008), rev. den. 345
Or. 618 (2009)). The law "create[s] a procedure 'for expeditiously dismissing unfounded
lawsuits attacking certain types of public speech' through special motions to strike, or anti-
SLAPP motions." *Schwern*, 845 F.3d at 1243–44 (citing *Plotkin v. State Accident Ins. Fund*, 280
Or. App. 812, 814, 385 P.3d 1167 (2016)).

Oregon's anti-SLAPP statute contemplates a "two-step burden-shifting process."
*Wingard v. Oregon Family Council, Inc.*, 290 Or. App. 518, 521, 417 P.3d 545 (2018).
Specifically, Oregon's anti-SLAPP statute provides:

> (1)      A defendant may make a special motion to strike against a claim in a civil
> action described in subsection (2) of this section. The court shall grant the

**PAGE 5 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN
SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21A but shall not be subject to ORCP 21F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice.

(2)     A special motion to strike may be made under this section against any claim in a civil action that arises out of:

  (a)     Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

  (b)     Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

  (c)     Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest;

  (d)     Or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(3)     A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

(4)     In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

ORS 31.150.

In order to qualify for a motion to strike under subsection (2)(d) of the statute, the conduct must be in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech. The Court in *Gardner* applied the statute to on-air radio broadcasts. *Gardner*, 563 F.3d at 991. In *Higher Balance, LLC v. Quantum Future Group,* Civil

**PAGE 6 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

No. 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008), the district court granted a motion to strike a defamation claim arising from an anonymous communication posted on the defendant's website. *Id.* at *12.

In the instant motion to strike, this Court must first resolve whether Defendant HCN's conduct involved a "constitutional right of free speech in connection with a public issue or an issue of public interest." ORS 31.150(2)(c). If so, then Plaintiff Dossett must come forward and present substantial prima facie evidence demonstrating that he is likely to prevail on his claim. Substantial evidence means enough evidence from which a reasonable trier of fact could find that the plaintiff has met his burden of production. *See Handy v. Lane Cty.*, 360 Or. 605, 623, 385 P.3d 1016 (2016).

As to this second prong, it is HCN's legal position that Dossett will be unable to sustain his burden because he has failed to allege that the story in question was published with constitutional malice as required for "limited purpose" public figures.

### 3.    Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1988). In order "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To sufficiently state a claim and survive a motion to dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007). Mere "labels and conclusions" or the "formulaic recitation of the

**PAGE 7 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

elements of a cause of action will not do." *Id.*  The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 677.

Apart from factual sufficiency, a complaint is also subject to dismissal where it lacks a cognizable legal theory, or where the allegations on their face "show that relief is barred" for some legal reason. *Balistreri,* 901 F.2d at 699; *Jones v. Bock,* 549 U.S. 199, 215, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007). A court is not required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir. 1994).

In general, a federal district court should not consider any factual materials outside of the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may properly be considered. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," may be considered in ruling on a Rule 12(b)(6) motion. *Tunac v. United States,* 897 F.3d 1197, 1207 n. 8 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 817, 202 L. Ed. 2d 578 (2019).

Accordingly, Defendant HCN has joined this Motion to Strike with a Rule 12(b)(6) Motion to Dismiss. As argued below, Plaintiff Dossett has failed to state a legally cognizable defamation claim against Defendant HCN based on Oregon's anti-SLAPP statute because HCN's article is protected under the First Amendment. Second, based on the allegations of the complaint, Dossett is a public figure for a limited purpose and because he has not alleged constitutional malice, all claims against HCN must be stricken and/or dismissed. Last, any claims sounding in negligence are derivative of his defamation claim, and must also be dismissed.

/ / /

/ / /

/ / /

### III.    ARGUMENT

**1.    The allegedly defamatory story was written in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest.**

ORS 31.150(2)(d) authorizes a court to dismiss a claim for defamation arising from a communication made "in connection with a public issue or an issue of public interest." An issue of public interest or concern is just that—"one that is of interest to the public." *Neumann*, 295 Or. App. at 345–46; *see also, Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ("an issue of public interest" within the meaning of California's anti-SLAPP statute "is *any issue in which the public is interested*" and "the issue need not be "significant" to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest") (emphasis in original).

In other words, "is it one that arises out of conduct in furtherance of free speech in connection with an issue of public interest?" *Mullen*, 271 Or. App. at 705. Subsection (2)(d) "speaks broadly of 'any claim' that arises out of 'conduct in furtherance of' free speech rights 'in connection with a public issue or an issue of public interest.'" *Id.* at 705-06. Indeed, anti-SLAPP statutes should "be construed broadly" by courts. *Guzman v. Finch*, No. 19cv412-MMA (MDD), 2019 WL 1877184, at *4 (S.D. Cal. Apr. 26, 2019).

In *Guzman*, the California federal district court cited "three non-exclusive and sometimes overlapping categories of statements that have been found to encompass an issue of public interest under the anti-SLAPP statute:  (1) cases where the statement or activity precipitating the underlying cause of action was 'a person or entity in the public eye; (2) the statement or activity involved conduct that could directly affect a large number of people beyond the direct participants; and (3) cases where the statement or activity involved a topic of widespread, public interest. *Id.* at * 13-14 (quotations and citations omitted). While the plaintiff need not be a public figure, *Mullen*, 271 Or. App. at 706–07, all of these considerations are present here.

**PAGE 9 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

Indeed, Dossett's Complaint devotes pages to exalting his public prestige and reputation as a high-profile public representative and champion for Indian rights, arguably a public issue by itself.  The allegedly defamatory HCN story featured an internal struggle within the largest Native American rights organization in the country. The gravamen of the story was that female employees perceived a hostile work environment leading to significant turnover in the organization, in part because of a failure of leadership in the organization.  Dossett, the former chief counsel for the organization was the center of these allegations and was the subject of several sexual harassment complaints.  He was demoted and then terminated from his position as general counsel allegedly in connection with these allegations.  While Dossett publicly denied any wrongdoing, the story, including Dossett's comments and responses, were an important part of the "public issue or issue of public importance."

It cannot reasonably be denied that generally the #MeToo movement is also one of significant public import and concern. The social power of the movement confronts "a climate of serial sexual predation" which "women had long kept quiet about" because it risked compromising their professional aspirations.  Sophie Gilbert, *The Movement of #MeToo,* The Atlantic (Oct. 16, 2017), https://www.theatlantic.com/entertainment/archive/2017/10/the-movement-of-metoo/542979.  "[U]ncovering the colossal scale of the problem is revolutionary in its own right" and certainly qualifies as an issue of significant public interest and concern.

Accordingly, HCN's reporting was an act in furtherance of the exercise of free speech in connection with an issue of public interest and therefore protected by the First Amendment under Oregon's anti-SLAPP statute.

While there are no Oregon cases with identical circumstances, a relevant case is *Miller v. Watson*.  In *Miller*, this Court granted a motion to strike a defamation claim under Oregon's anti-SLAPP statute where a newspaper had published a story about a memo detailing the findings of internal investigation into the plaintiff, a volunteer, contractor, and reserve deputy sheriff with a 911 communications District, who was found to have leveraged his alleged knowledge of the District's executive director's "sexually hostile and abusive behavior toward another District

**PAGE 10 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

employee" in order to further his career in the District. *Miller*, 2019 WL 1871011, at *2. This Court held that the memo qualified "as protected speech under both ORS § 31.150(2)(b) and (2)(d)" and that discovery was not necessary because the motion to strike presented a legal issue. *Id.* at *5.

*Miller* dictates that a communication is protected under Oregon's anti-SLAPP statute if it "concerns an issue of public interest" and "contains the findings of an investigation into the alleged misconduct" of a person of public interest. Another relevant case is the California *Guzman* case cited earlier. In *Guzman*, the federal district court determined that a public Facebook post by an employee regarding her sexually abusive supervisor was "conduct in furtherance of her right of free speech in connection with an issue of public interest" because it was "akin to domestic violence" which is an issue "of widespread public interest." *Guzman*, 2019 WL 1877184 at *6. The defendant requested judicial notice of Google search results for several phrases, including "sexual harassment in the workplace" and "#metoo" which the court determined was "unnecessary." *Id.* at *4 n. 4.

These cases support the determination requested by HNC here—the alleged defamatory story published by HNC naming Dossett qualifies as speech protected by the First Amendment under Oregon's anti-SLAPP statute, ORS 31.150(2)(d), because it was written in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. As such, the claims against HCN should be stricken and/or dismissed.

     **2.    The Plaintiff is a limited purpose public figure and may not recover absent an allegation of constitutional malice (which he has not made).**

Defamation actions are governed by state law, but the First Amendment of the U.S. Constitution provides certain safeguards that limit the application of that law, including the need to encourage and maintain free public discourse regarding matters of public importance. *Neumann*, 358 Or. at 713 ("the United States Supreme Court has determined that the First

Amendment places limits on the application of the state law of defamation").  As such, the U.S. Supreme Court increased the burden on defamation plaintiffs who are public officials or public figures.  *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (public official); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967) (public figure).  Such plaintiffs must establish not only that the statement constitutes a provably false assertion of objective fact, but also that the defendant published the statement with "actual malice" – knowledge of the statement's falsity or reckless disregard as to its truth.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990).

To meet this burden, Dossett must show, by clear and convincing evidence, that when HCN published the alleged defamations it "seriously doubted that the statements were true." *Fodor v. Leeman*, 179 Or. App. 697, 701, 41 P.3d 446, 449 (2002); *see also*, *Montgomery v. Risen*, 197 F. Supp. 3d 219, 259 (D.D.C. 2016) (plaintiff must show it was highly probable the story was (1) fabricated; (2) so inherently improbable that only a reckless person would have put it in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that appellees had obvious reasons to doubt).

The U.S. Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), outlined two types of public figures:  the "all-purpose" public figures who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," and the "limited-purpose" public figures "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  "Few people," however, "attain the general notoriety that would make them public figures for all purposes." *Waldbaum v. Fairchild Publn's, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). Much more common are "public figures for the more limited purpose of certain issues or situations." *Tavoulareas v. Piro*, 817 F.2d 762, 772 (U.S. App. D.C. 1987).

/ / /

/ / /

**PAGE 12 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

This type of "limited" public figure "loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 253–54, 690 P.2d 610, 615, 208 Cal. Rptr. 137, 142 (1984). Oregon courts have acknowledged the distinction announced in *Gertz*. *See e.g., Obsidian Fin. Grp. LLC v. Cox*, No. CV-11-57-HZ, 2011 WL 5999334, at *4–*6 (D. Or. Nov. 30, 2011) (citing *Bank of Or. v. Indep. News*, 298 Or. 434, 444, 693 P.2d 35, 42 (1985)).

Elements demonstrating that a party is a limited-purpose public figure include: (1) a public controversy existing at the time of the alleged defamation, meaning the issue had been debated publicly and had substantial, foreseeable ramifications for nonparticipants; (2) the party voluntarily acted to influence resolution of the issue; and (3) the alleged defamation was germane to the party's participation in the controversy. *Reader's Digest*, 37 Cal. 3d at 254. While the Oregon Supreme Court has determined that a corporate bank did not become a public figure merely by carrying on its business, *Bank of Or. v. Indep. News*, 298 Or. at 444, that is not the basis for HCN's assertion of Dossett's "limited public figure" status here. Dossett is a person, not a corporate entity.

*Gertz* dictates that a private person may become a public figure if the person voluntarily injects himself or is drawn into a particular public controversy, thereby assuming special prominence in the resolution of public questions. *Gertz*, 418 U.S. at 351. In such a case, a showing of "actual malice" is constitutionally required. And, as previously discussed, the matters at issue are not private, but rather the very public #MeToo movement. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S. Ct. 2939 (1985) (plurality opinion that a private plaintiff defamed by speech relating to a matter of purely private concern need not show actual malice in order to recover compensatory, presumed, or punitive damages).

Dossett admits, even promotes, his status a high-profile Indian rights advocate. At the time of HCN's story, the #MeToo movement and surrounding public interest already existed. Indeed, that was no doubt part of the impetus for the story. By virtue of his high-profile position,

**PAGE 13 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

sexual allegations against him became a public issue and he became involved in a matter of public concern. Moreover, he intentionally and voluntarily offered comments in his defense, including an eight-page letter. He therefore became a part of the public issue and HCN's story about him was in his "limited purpose" public figure capacity. *See Fodor v. Leeman*, 179 Or. App. 697, 701, 41 P.3d 446, 448 (2002) (an independent consultant, author and lecturer on land use issues was a limited public figure with respect to an advertisement critical of a land use article). Dossett is not simply an "involuntary participant in a newsworthy event." *Reesman v. Highfill*, 149 Or. App. 374, 385, 942 P.2d 891, 898 (1997), *rev'd on other grounds*, 327 Or. 597, 965 P.2d 1030 (1998) (rejecting "limited purpose" public figure status to a jet aerobatics pilot involved in a fiery airplane crash at an airport whose expansion was in controversy).

Accordingly, HCN's reporting of Dossett and the associated public sexual harassment controversy implicates its free expression of "a publicly debatable" issue that is entitled to "special protection" within the meaning of *New York Times* and *Gertz*. *Cooper v. Portland Gen. Elec. Corp*., 110 Or. App. 581, 588, 824 P.2d 1152, 1155 (1992). The reported statements by HCN regarded public matters and were published in a way that "made them available to the general public," free for "public discussion or comment." *Id.* As such, they are entitled to special protection and a higher standard of liability. *Id.*

Because Dossett is a limited purpose public figure involved in an issue of public concern, he is required to establish that the news story in question was precipitated with constitutional malice. He makes no such claim or allegations in his Complaint. Accordingly, his Complaint is constitutionally infirm and the Court is respectfully requested to dismiss it under Rule 12(b)(6).

### 3.    Plaintiff's remaining negligence-based claim is derivative of his defamation claim and cannot succeed as an independent tort.

Plaintiff has also asserted that in writing and publishing the story, all Defendants, including HCN, intentionally interfered with his economic relations. (Complaint, Fourth Cause of Action). Such a negligence-based claim is derivative of the defamation claim and must fail if the claim from which it is derived fails. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th

Cir. 1990) (dismissing claims for product disparagement and tortious interference with business relationships because predicate defamation failed); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1193 n. 2-3 (9th Cir.1989) ("an emotional distress claim based on the same facts as an unsuccessful libel claim cannot survive as an independent cause of action" (quotation marks and citation omitted)); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 893 n. 4 (9th Cir. 1988) (finding that emotional distress and false light invasion of privacy claims that are "sufficiently duplicative" of libel are subject to the same limitations governing the defamation claim, including the malice requirement); *Rice v. Comtek Mfg. of Or., Inc.*, 766 F. Supp. 1539, 1542 (D. Or. 1990) (following *Dworkin's* rule that claims "duplicative of a defamation claim . . . must be dismissed if both are pleaded); *Spreadbury v. Bitterroot Pub. Library*, 856 F. Supp. 2d 1195, 1201 (D. Mont. 2012) ("claims arising out of the same facts plead in companion defamation claims are 'sufficiently derivative' and are, therefore, subject to the same limitations governing the libel claims, including defense of truth and the actual malice requirements").

Assuming this Court accepts HCN's preceding arguments in favor of striking and dismissing the defamation claim against HCN, then HCN is also entitled to dismissal of the negligence-based claim against it.  Any tortious conduct in HCN's interference is premised and derived from the alleged defamatory remark, which HCN has established is protected by the First Amendment.

## IV.    CONCLUSION

Based on the foregoing arguments and authorities, Defendant HCN respectfully requests the Court to strike and/or dismiss Plaintiff Dossett's claims against HCN as its news story is protected by the First Amendment and Oregon's anti-SLAPP statute. Additionally, Dossett has failed to plead the requisite malice for a limited purpose public figure.  As such, he has failed to

/ / /

/ / /

/ / /

**PAGE 15 – DEFENDANT HIGH COUNTRY NEWS' MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

state a claim upon which relief can be granted. Last, for the same reasons, his negligence claim against HCN must also be dismissed.

DATED this 24th day of October, 2019.

Ryan M. Bledsoe
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland OR, 97204

**MELOY LAW FIRM**

By: */s/Peter Michael Meloy*
Peter Michael Meloy

*Attorneys for Defendant High Country News*

**CERTIFICATE OF SERVICE**

This is to certify that on the 24th day of October, 2019, a true and exact copy of the foregoing document was served electronically via the CM/ECF system which will generate a Notice of Electronic Filing on:

B. Scott Whipple
Whipple Law Office LLC
1675 SW Marlow Ave.  Ste 201
Portland OR 97225

Andrew L. Paris
Andrew Paris Law
1500 SW First Ave.  Ste 1170
Portland OR 97201

Anthony Broadman,
Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115

Nicole E. Ducheneaux, *Pro Hac Vice*
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South
Bellevue, NE 68005

Scott J. Aldworth,
Susan T. Alterman,
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR 97204

*/s/ Peter Michael Meloy*
Peter M. Meloy

041019/00001/10475827v1

**PAGE 1 – CERTIFICATE OF SERVICE**