**Susan T. Alterman**, OSB No. 870815
salterman@kelrun.com
**Scott J. Aldworth,** OSB No. 113123
saldworth@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR  97204
Telephone:  503/222-3531
Fax:  503/227-2980

**Matthew E. Kelley** (admitted *pro hac vice*)
kelleym@ballardspahr.com
**Chad R. Bowman** (admitted *pro hac vice*)
bowmanchad@ballardspahr.com
Ballard Spahr LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: 202/508-1112
Fax:  202/661-2299

Attorneys for Defendant The National Congress of
  American Indians of the United States and Alaska

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN H. DOSSETT,<br><br>          Plaintiff,<br><br>     v.<br><br>HO-CHUNK, INC., a tribal corporation formed by the Winnebago Tribe of Nebraska; NOBLE SAVAGE MEDIA, L.L.C., a limited liability company of unknown origin; THE NATIONAL CONGRESS OF AMERICAN INDIANS OF THE UNITED STATES AND ALASKA, an Oklahoma not for profit corporation; and HIGH COUNTRY NEWS, a Colorado nonprofit corporation,<br><br>          Defendants. | Case No. 3:19-cv-01386-SB<br><br>**Defendant The National Congress of American Indians of the United States and Alaska's**<br><br>**MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**<br><br>**ORAL ARGUMENT REQUESTED** |

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 1

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................3

LOCAL RULE 7-1 CERTIFICATION .......................................................................7

MOTION......................................................................................................................7

MEMORANDUM OF LAW ......................................................................................7

INTRODUCTION ........................................................................................................7

FACTUAL AND PROCEDURAL BACKGROUND...................................................8

ARGUMENT ............................................................................................................15

I.      THE OREGON ANTI-SLAPP STATUTE APPLIES TO DOSSETT'S
        DEFAMATION CLAIM ...............................................................................18

II.     THE COMPLAINT FAILS TO STATE A VIABLE DEFAMATION
        CLAIM FOR MULTIPLE REASONS ........................................................20

        A.      Dossett Is A Public Figure Who Cannot Establish Actual Malice .......20

                1.      Dossett Is a Limited-Purpose Public Figure ...............................20

                2.      Dossett Cannot Plausibly Plead Constitutional Actual Malice..............21

        B.      The Articles Do Not Reasonably Convey The Defamatory Meaning
                Alleged ............................................................................................27

        C.      The Injunctive Relief Dossett Seeks Is Barred by the First
                Amendment........................................................................................31

III.    THE COMPLAINT'S ANCILLARY CLAIMS FAIL................................32

        A.      Dossett's Intentional Interference With Economic Relations Claim
                Fails ................................................................................................32

        B.      Dossett's Negligence Claim Fails ....................................................34

                1.      NCAI Owed Dossett No Special Duty of Care.........................34

                2.      NCAI Fulfilled Its Duties to Dossett ........................................36

                3.      The Economic Loss Rule Bars Dossett's Negligence Claim.................37

CONCLUSION.........................................................................................................38

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                    Page 2

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accuardi v. Fredericks*,
    No. 3:13-cv-01825-ST, 2014 U.S. Dist. LEXIS 27328 (D. Or. Mar. 4, 2014)......................18

*American Chemical Society v. Leadscope, Inc.*,
    978 N.E.2d 832 (Ohio 2012)....................................................................................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................17, 22

*Austin v. University of Oregon*,
    925 F.3d 1133 (9th Cir. 2019) ..............................................................................................17

*Bahr v. Ettinger*,
    745 P.2d 807 (Or. 1987) ........................................................................................................30

*Basilius v. Honolulu Publishing Co.*,
    711 F. Supp. 548 (D. Haw. 1989) .........................................................................................29

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................16, 17

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984).................................................................................................................26

*Brocato v. City of Baker City*,
    No. 2:10CV592-SU, 2012 U.S. Dist. LEXIS 44992 (D. Or. Jan. 4, 2012) ............................30

*Cafasso v. General Dynamics C4 Systems*,
    637 F.3d 1047 (9th Cir. 2011) ..............................................................................................17

*Card v. Pipes*,
    398 F. Supp. 2d 1126 (D. Or. 2004) ................................................................................18, 19

*Cobell v. Norton*,
    283 F. Supp. 2d 66 (D.D.C. 2003) .........................................................................................9

*Croce v. N.Y. Times Co.*,
    930 F.3d 787 (6th Cir. 2019) ...............................................................................................30

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 3

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Dodds v. American Broadcasting Co.*,
  145 F.3d 1053 (9th Cir. 1998) ........................................................................22, 26

*Englert v. MacDonell*,
  No. 05-1863-AA, 2006 U.S. Dist. LEXIS 29361 (D. Or. May 10, 2006) ..............19

*Flowers v. Carville*,
  310 F.3d 1118 (9th Cir. 2002) ..........................................................................20

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .......................................................................31, 32

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) ..........................................................15, 16, 18, 32

*Garrison v. Louisiana*,
  379 U.S. 64 (1964).............................................................................................21

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)...........................................................................................20

*Global Relief Foundation, Inc. v. N.Y. Times Co.*,
  390 F.3d 973 (7th Cir. 2004) ............................................................................30

*Guzman v. Finch*,
  No. 19cv412-MMA (MDD), 2019 U.S. Dist. LEXIS 71168 (S.D. Cal. Apr.
  26, 2019) ...........................................................................................................19

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)................................................................................22, 24, 26

*Higher Balance, LLC v. Quantum Future Group, Inc.*,
  No. 08-233-HA, 2008 U.S. Dist. LEXIS 102611 (D. Or. Dec. 18, 2008).........19, 27

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .......................................................................27, 35

*Koanui v. Cenveo Corp.*,
  No. 04-6326-TC, 2005 U.S. Dist. LEXIS 48965 (D. Or. Oct. 5, 2005) ...........34, 36

*Larry v. Schmid*,
  No. 09-663-AC, 2011 U.S. Dist. LEXIS 152871 (D. Or. Oct. 21, 2011).............29

*Lloyd v. Gerhard*,
  No. 3:17-cv-00582-MK, 2019 U.S. Dist. LEXIS 55496 (D. Or. Jan. 2, 2019) ......16

**Defendant The National Congress of American Indians'
MOTION TO DISMISS AND MOTION TO STRIKE**            Page 4

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Lowe v. Philip Morris USA, Inc.*,
　207 Or. App. 532, 142 P.3d 1079 (2006)................................................................38

*Makaeff v. Trump University, LLC*,
　715 F.3d 254 (9th Cir. 2013) .......................................................................20, 23

*Masson v. New Yorker Magazine, Inc.*,
　501 U.S. 496 (1991)..........................................................................................22

*Masson v. New Yorker Magazine, Inc.*,
　960 F.2d 896 (9th Cir. 1992)...........................................................................23

*McGanty v. Staudenraus*,
　321 Or. 532 (1995)......................................................................................33, 34

*Miami Herald Publishing Co. v. Tornillo*,
　418 U.S. 241 (1974).........................................................................................32

*Michel v. NYP Holdings, Inc.*,
　816 F.3d 686 (11th Cir. 2016) ....................................................................22, 25

*Miller v. Watson*,
　No. 3:18-cv-00562-SB, 2019 U.S. Dist. LEXIS 70930 (D. Or. Feb. 12, 2019)....16, 19, 22, 23

*Mimms v. CVS Pharmacy, Inc.*,
　889 F.3d 865 (7th Cir. 2018) ...........................................................................24

*N.Y. Times Co. v. Sullivan*,
　376 U.S. 254 (1964).............................................................................23, 24, 26

*Newton v. National Broadcasting Co.*,
　930 F.2d 662 (9th Cir. 1990) ...........................................................................25

*Olive v. City of Scottsdale*,
　94-1028, 1995 U.S. Dist. LEXIS 22672 (D. Ariz. Apr. 3, 1995) .............................34

*Pickup v. Brown*,
　740 F.3d 1208 (9th Cir. 2014) .........................................................................32

*Pippen v. NBCUniversal Media, LLC*,
　734 F.3d 610 (7th Cir. 2013) ...........................................................................24

*Planned Parenthood Federationn of America, Inc. v. Center for Medical Progress*,
　890 F.3d 828 (9th Cir. 2018) ...........................................................................16

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 5

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Reesman v. Highfill*,
  965 P.2d 1030 (Or. 1998) ..........................................................................27

*Reuber v. Food Chemical News, Inc.*,
  925 F.2d 703 (4th Cir. 1991) ....................................................................29

*Schwern v. Plunkett*,
  845 F.3d 1241 (9th Cir. 2017) ..................................................................15

*Sharma v. Providence Health & Services-Oregon*,
  289 Or. App. 644 (2018)............................................................................33

*Sheets v. Knight*,
  308 Or. 220 (1989).....................................................................................35

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ..............................................................17, 18

*St. Amant v. Thompson*,
  390 U.S. 727 (1968).........................................................................21, 22, 24

*Staten v. Steel*,
  222 Or. App. 17, 191 P.3d 778 (2008)......................................................18

*United States District Court v. Sandlin*,
  12 F.3d 861 (9th Cir. 1993) ......................................................................21

*United States v. Alvarez*,
  567 U.S. 709 (2012)...................................................................................29

*Volm v. Legacy Health System, Inc.*,
  237 F. Supp. 2d 1166 (D. Or. 2002) .........................................................28

*Wenzel v. Klamath County Fire District No. 1*,
  2017 U.S. Dist. LEXIS 198914 (D. Or. Aug. 29, 2017)............................37

**Statutes**

ORS 31.150(2) ...................................................................................................18

ORS 31.150-31.155 ...........................................................................................15

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 6

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## LOCAL RULE 7-1 CERTIFICATION

Undersigned counsel for Defendant The National Congress of American Indians hereby certifies that the parties made a good faith effort through a telephone conference to resolve the dispute but have been unable to do so.

## MOTION

COMES NOW Defendant The National Congress of American Indians, by and through counsel, and moves this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) and ORS 31.150 *et seq.* dismissing this action in its entirety and awarding Defendant its reasonable attorneys' fees and costs in an amount to be determined at a later date.  As more fully explained in the following memorandum in support, the Complaint should be dismissed because Plaintiff fails to state a claim regarding any of his alleged causes of action and the injunctive relief he seeks is barred by the First Amendment.

## MEMORANDUM OF LAW

Defendant The National Congress of American Indians submits the following memorandum in support of its motion to dismiss the Complaint:

## INTRODUCTION

This lawsuit arises from the discipline and eventual firing of Plaintiff John Dossett as general counsel of the National Congress of American Indians ("NCAI"), the oldest and largest national organization comprised of tribal nations and their citizens.  Dossett's Complaint ("Compl.") acknowledges that several female NCAI employees complained about alleged sexual harassment and other misconduct; that NCAI investigated those complaints and determined that he had engaged in inappropriate behavior including making sexually charged comments; and that

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

he was fired after he issued a public statement attacking his accusers and criticizing NCAI management.

This, however, is not principally an employment action.  Dossett chose to sue primarily over *news coverage* of this controversy, principally by a news site called Indianz.com, but also by Indian Country Today ("ICT"), NCAI's editorially independent news outlet.  Although ICT simply summarized Indianz.com's initial report regarding the complaints and Dossett's demotion and then published a report on his rebuttal and NCAI's response, the Complaint alleges that these articles defamed him by implying his guilt.  Tacked onto his defamation claim are two ancillary claims that allege NCAI failed to properly handle its investigation of him and that it intentionally interfered with his teaching relationship with Lewis and Clark Law School.

Dossett's defamation claim should be dismissed under Oregon's anti-SLAPP statute and Federal Rule of Civil Procedure 12(b)(6) for two reasons.  First, he is a public figure who must prove ICT published the articles knowing they were false or with a subjective awareness they were probably false; the Complaint's allegations wholly fail in this regard.  Second, the articles cannot reasonably be understood to report, as fact, that he is guilty of sexual harassment.  Dossett's ancillary tort claims fail because NCAI owed him no duty regarding its internal investigation and he does not plead facts to show the alleged defamation was intended to cause his dismissal as an adjunct law professor through improper means.  And Dossett's requests for injunctive relief must be denied because they are prohibited by the First Amendment.

## FACTUAL AND PROCEDURAL BACKGROUND

The news reports at issue here arise from alleged workplace misconduct by the general counsel for NCAI, the oldest, largest and most representative American Indian and Alaska

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 8

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Native organization serving the interests of tribal governments and communities in the United States.[1]  NCAI is the ultimate parent of ICT, an independent news organization devoted to coverage of Native communities and issues.[2]

### Former NCAI General Counsel John Dossett

Dossett began working as an attorney for NCAI in 1995 and was the organization's general counsel from 1997 until 2018.  Compl. ¶ 11.  Dossett, who worked for NCAI remotely from his home in Oregon, also was an adjunct professor at Lewis & Clark Law School.  *Id.* ¶¶ 17-18.

Dossett pleads that he is a "nationally recognized expert on tribal sovereignty and jurisdiction, tribal lands and natural resources, taxation, and public safety in Indian country."  *Id.* ¶ 15.  He alleges that highlights of his career include acting as the co-director of the Tribal Supreme Court Project for 17 years; serving as acting executive director of NCAI in 2001; and "organizing legislative efforts on major federal laws that affect American Indians," including legislation regarding tribal criminal jurisdiction and tribal and individual Indian land trust issues. *Id.*  Dossett pleads that his "most rewarding collaborative work" was "organizing NCAI's legislative efforts in support of the Violence Against Women Act," which restored tribal criminal jurisdiction over non-Indian perpetrators of domestic violence.  *Id.* ¶ 16.

---

[1] NCAI is a nonprofit organization founded in 1944 whose members include American Indian and Alaska Native tribal governments, tribal citizens, individuals, and Native and non-Native organizations. *See Cobell v. Norton*, 283 F. Supp. 2d 66, 256-57 (D.D.C. 2003).

[2] News Release, *Mark Trahant Named Editor to Lead Indian Country Today*, NAT'L CONG. OF AM. INDIANS (Feb. 28, 2018), http://www.ncai.org/news/articles/2018/02/28/mark-trahant-named-editor-to-lead-indian-country-today.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 9

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

**The Allegations Against Dossett**

Dossett claims to be a victim of false accusations by vindictive female co-workers and an unfair process in which he could not properly defend himself. *See* Compl. ¶¶ 19-33, 42-44. The main villain in Dossett's version of events is former NCAI Director of Operations Nicole Hallingstad, a third party who the Complaint accuses of spreading false rumors about Dossett, encouraging a co-worker to file a false complaint against him, and providing information to journalists that led to the controversy that underlies this lawsuit. *Id.* ¶¶ 23-26, 33-34. The Complaint does not explain her alleged animosity toward Dossett other than a vague claim that she wanted to oust then-NCAI Executive Director Jacqueline Pata. *Id.* ¶ 24. Dossett also claims other women who worked for NCAI falsely accused him of misconduct. *Id.* ¶¶ 19, 21, 26.

The misconduct allegations center on two incidents at an NCAI conference in Spokane, Washington in June 2016. *Id.* ¶¶ 21, 26. In the first, Dossett alleges that he helped an inebriated female colleague on a two-block walk from a dinner to the conference hotel, where he left her in the lobby and "allowed her to find her way to her room." *Id.* ¶ 21. Dossett acknowledges that in an email later obtained by reporters, he said he "totally restrained" the woman by the arm and held her hand during the walk, which he asserts was to prevent her "from falling over and entering traffic." *Id.* ¶ 38. Dossett alleges that NCAI's former director of governmental affairs, who did not witness the incident, "made a vague informal complaint implying some form of misconduct" to then-NCAI Executive Director Jacqueline Pata. *Id.* ¶¶ 19, 21.[3] He alleges that "the matter was closed after Ms. Pata decided that no action was warranted." *Id.* ¶ 22.

---

[3] This allegation contradicts the public statement Dossett circulated via email shortly before his termination by NCAI, *see* Compl. ¶ 44, which said the employee he escorted to the hotel was

**Defendant The National Congress of American Indians' MOTION TO DISMISS AND MOTION TO STRIKE**                                    Page 10

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Dossett pleads that the second incident of alleged misconduct at the 2016 conference involved his purportedly making "a rude comment about masturbation when watching sports in a hotel lounge with a group of co-workers." *Id.* ¶ 26. Dossett pins this allegation on his purported nemesis, Hallingstad. *Id.* ¶ 26. The Complaint asserts "on information and belief" that Hallingstad convinced a "departing female colleague" to "file a false claim" with Pata in February 2018 about this alleged incident that also included an allegation that Dossett had engaged in psychological harassment of a female subordinate attorney. *Id.*

In response to this complaint, NCAI hired outside counsel to investigate. *Id.* ¶ 27. Dossett pleads that he denied any wrongdoing to this investigator, and that Pata rebuffed him when he attempted to file a complaint against Hallingstad in retaliation for purportedly falsely accusing him. *Id.* ¶ 27-29. Dossett admits receiving a disciplinary memo in May 2018 that stated he had engaged in "unprofessional and inappropriate behavior, including yelling, bullying, being disrespectful, speaking over colleagues, insulting and derogatory emails, and sexually-charged comments." *Id.* ¶ 30. Because of these findings, he was given a different job title and stripped of his supervisory duties. *Id.* ¶ 32. Still, Dossett alleges that "NCAI had investigated both incidents and concluded that no sexual harassment had taken place," *id.* ¶ 46, and that his demotion was not "related to allegations of sexual harassment," *id.* ¶ 71.

---

the one who had complained to Pata about the incident. *See* John Dossett, *Statement of John Dossett Regarding a Question of My Integrity* at 3, Oct. 3, 2018, available at https://www.indianz.com/News/2018/10/03/johndossettstatement.pdf.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

### News Coverage of the Allegations and Dossett's Firing

The Complaint does not allege that NCAI made the dispute public.  It became so in August 2018, after Hallingstad submitted a letter of resignation to the NCAI Executive Committee alleging mismanagement by NCAI leadership.  Compl. ¶ 33.  The Complaint alleges, "on information and belief," that Hallingstad provided this letter to Indianz.com, a news website devoted to American Indian issues that is owned by the Winnebago Tribe of Nebraska.  *Id.* ¶ 34. (ICT subsequently reported that Hallingstad denied providing the letter to Indianz.com.  Compl. Ex. B at 2.)

On August 31, 2018, Indianz.com published an article (the "First Indianz.com Article") discussing Hallingstad's accusations of mismanagement at NCAI and reporting on Dossett's reassignment and the accusations that he had been "harassing, intimidating and pressuring female employees at NCAI."  *See* Compl. Ex. A.  The article quoted several unnamed former NCAI employees as saying complaints about Dossett's behavior had been ignored by NCAI leaders.  *Id.* at 1-3.  The article also quoted Dossett's statement specifically denying wrongdoing regarding walking the female employee to the conference hotel, and also quoted from an email in which Dossett defended himself to the outside investigator, saying, "I can't tell how you [sic] painful it was to be accused of something like this."  *Id.* at 4-5.

Two days later, NCAI's independent news site, ICT, published an article (the "First ICT Article") summarizing the First Indianz.com Article.  *See* Compl. Ex. B.  In the passage Dossett challenges, the First ICT Article said that the First Indianz.com Article "cites several interviews from people who remained anonymous and commented on the behavior of Dossett" and continues:

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                    Page 12

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

> "As a new staff, I was told by a colleague, 'You are a pretty young Native
> woman, beware of John Dossett.  Don't be caught in a room alone with him,'" the
> former employee said to Indianz.com.  "It's the worst kept secret in D.C.'s Indian
> circles."

*Id.* at 2.  The First ICT Article quoted the portion of Hallingstad's resignation letter included in

the First Indianz.com Article and quoted Hallingstad as denying she provided the letter to

Indianz.com.  *Id.*  The article quoted statements from Pata and then-NCAI President Jefferson

Keel, both of whom said that NCAI takes its duties to its employees seriously but does not

comment on internal personnel matters.  *Id.* at 2-3.  Keel added that Hallingstad's allegations

"were each handled promptly, investigated thoroughly and appropriate actions were taken."  *Id.*

at 3.  The article concluded by quoting in full Dossett's public statement that denied wrongdoing

and questioned Hallingstad's motives.  *Id.*

After the first Indianz.com and ICT articles, according to the Complaint, the NCAI

Executive Committee met in September 2018 and gave Dossett five minutes to defend himself.

Compl. ¶ 43.  On October 3, 2018, Pata called Dossett to seek his resignation; he responded by

issuing a public statement via his NCAI email, and Pata fired him two hours later.  *Id.* ¶ 44.

Just over a week later, on October 11, ICT published an article reporting on NCAI

leaders' response to the controversy (the "Second ICT Article").  *See* Compl. Ex. C.  The Second

ICT Article referred to Dossett as a "former" NCAI attorney and reported that tribal leaders,

including the chairmen of the Cheyenne River Sioux Tribe and the Fond du Lac Band of Lake

Superior Chippewa Indians, had called for an independent investigation and for Pata's

suspension.  *Id.* at 1.  The article noted that Indianz.com had posted Dossett's eight-page public

statement and extensively quoted from it, including his denials of wrongdoing and his allegations

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 13

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

he was railroaded by NCAI. *Id.* at 2-3. The article then reproduced in full a lengthy statement from Keel describing administrative actions NCAI took in response to the controversy and again asserting NCAI's commitment to safeguarding the privacy of current and former employees. *Id.* at 3-5. In the passage challenged by the Complaint, Keel said:

> Earlier this year, NCAI hired an external investigator who investigated two specific allegations of sexual harassment against John Dossett, one of which had been the subject of an earlier internal investigation. In conducting this investigation, the external investigator spoke with many current and former employees, including some former employees who learned about the investigation and requested an opportunity to speak. The investigation concluded with recommendations that NCAI promptly implemented.

*Id.* at 4. Notably, the Complaint does not identify any portion of this statement that is false.

**This Lawsuit**

Dossett filed this lawsuit on August 29, 2019, purporting to state causes of action against NCAI, the owners of Indianz.com and another news outlet that covered the controversy, High Country News, for defamation, injunctive relief, negligence and intentional interference with economic relations ("IIER"). Compl. ¶¶ 54-107. The Complaint seeks damages of $6.1 million for each of the claims for defamation, negligence and injunctive relief and $4.1 million on the IIER claim, plus a declaration that the challenged statements are false and defamatory and an injunction prohibiting publication of "defamatory content about Plaintiff." *Id.* at 31 (prayer for relief). The claim for injunctive relief also specifically requests that the Court enter an order compelling all defendants to "retract their defamatory statement [sic] made about Mr. Dossett, to remove the articles from their websites, and precluding them for [sic] publishing further defamatory statements accusing or implying that Mr. Dossett has committed sexual harassment or that he was demoted or terminated due to sexual harassment." *Id.* ¶ 92.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Dossett claims that the challenged passage in the First ICT Article "is defamatory because it gives credence and appears to confirm to [sic] the false statements from the Indianz.com article," and implies he is guilty of "serial sexual misconduct, unfitness for the duties of his profession, [and] moral turpitude."  Compl. ¶ 64, 66.  Despite his admission that he was reassigned after receiving a memo concluding he had engaged in "unprofessional and inappropriate behavior" including making "sexually-charged comments," *id.* ¶¶ 30-32, Dossett alleges the First ICT Article falsely "led its readers to believe that Mr. Dossett committed acts of sexual harassment," *id.* ¶ 65.

The Complaint alleges the challenged statement in the Second ICT Article defamed him by "leading the reader to believe that Mr. Dossett's demotion was related to allegations of sexual harassment" although the investigations "determined that no sexual harassment took place." Compl. ¶ 71.  Dossett alleges that "President Keel's statement implies and leads the reader to believe that the investigation found facts demonstrating sexual harassment and that Mr. Dossett's demotion was based on these facts, when no such facts exist."  *Id.*

## ARGUMENT

Oregon provides protection "akin to a statutory immunity from suit" to defendants from meritless lawsuits premised on constitutionally protected speech, which are otherwise known as SLAPPs, or "strategic lawsuits against public participation."  *Schwern v. Plunkett*, 845 F.3d 1241, 1242 (9th Cir. 2017).  Under Oregon's anti-SLAPP statute, ORS 31.150-31.155, defendants can bring a special motion to strike a speech-based claim, which operates somewhat similarly to a motion to dismiss.  *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009).  The law sets up a two-step process: first, the defendant must show the claim is premised on speech

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                    Page 15

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

protected by the statute, and if so, the burden shifts to the plaintiff to establish a probability of success on the claim by presenting substantial evidence that would support a prima facie case. *Id.* (citing ORS 31.150).  If the plaintiff cannot meet his burden to show a probability of success, the claim must be dismissed, and the defendant is entitled to reimbursement of its reasonable attorneys' fees and costs.  *Lloyd v. Gerhard*, No. 3:17-cv-00582-MK, 2019 U.S. Dist. LEXIS 55496, at *11 (D. Or. Jan. 2, 2019), *R. & R. adopted*, 2019 U.S. Dist. LEXIS 56070 (D. Or. Mar. 31, 2019).

Oregon's anti-SLAPP law applies in federal court.  *Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 U.S. Dist. LEXIS 70930, at *8-9 (D. Or. Feb. 12, 2019) (Beckerman, M.J.), *R. & R. adopted,* 2019 U.S. Dist. LEXIS 70592 (D. Or. Apr. 25, 2019).  Federal courts apply the substantive immunity provided by a state anti-SLAPP law such as Oregon's, but not any procedural provisions that conflict with the Federal Rules of Civil Procedure.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  In *Planned Parenthood*, the Ninth Circuit clarified that an evidentiary showing at the second step is only required where the defendant challenges the factual sufficiency of a claim.  *Id.* at 834.  However, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Id.*; *see also Miller*, 2019 U.S. Dist. LEXIS 70930, at *9 (same when applying Oregon anti-SLAPP statute).  This is such a special motion to strike under the anti-SLAPP statute.

To survive a motion to dismiss under Rule 12(b)(6), a properly stated claim must include specific allegations that are "enough to raise a right to relief above the speculative level."  *Bell*

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**
Page 16

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (same).  The facts alleged in a properly stated claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

The *Iqbal/Twombly* analysis requires federal courts to "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Austin v. Univ. of Or.*, 925 F.3d 1133, 1137-38 (9th Cir. 2019) ("Just saying so is not enough.").  While courts generally must "take all of the factual allegations in the complaint as true," they are not "bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  Then, courts must address the remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  *Iqbal*, 556 U.S. at 679.  To survive, the pleadings must allege facts showing "more than a sheer possibility that a defendant acted unlawfully," and it is not enough for a complaint to plead facts that are "merely consistent" with liability.  *Id*. at 678.

Under this standard, courts also must consider whether the inference of plausibility is "more likely explained by lawful . . . behavior." *See Iqbal*, 556 U.S. at 680 (citing *Twombly* 550 U.S. at 567).  As the Ninth Circuit has explained, in making the plausibility determination the court must use its "'judicial experience and common sense' . . . and consider 'obvious alternative explanation[s]'" for the alleged misconduct.  *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1056-57 (9th Cir. 2011) (citations omitted) ("obvious alternative explanation" for federal

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 17

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

contractor's failure to disclose new technology was desire to protect trade secrets rather than intent to defraud the government); *see also, e.g.*, *Somers*, 729 F.3d at 965 (other obvious explanations rather than deliberate overcharging of consumers existed for Apple's music pricing structure, including market competition and strategy to gain market share for its devices).

The Complaint should be dismissed and NCAI should be awarded its fees because Dossett has not plausibly pleaded any claim and thus cannot show any possibility of success.

## I.    THE OREGON ANTI-SLAPP STATUTE APPLIES TO DOSSETT'S DEFAMATION CLAIM

Like similar laws in other states, Oregon's anti-SLAPP statute is "designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner*, 563 F.3d at 986; *see also Staten v. Steel*, 222 Or. App. 17, 29, 191 P.3d 778, 787 (2008) (statute's "purpose is to provide for the dismissal of claims against persons participating in public issues . . . before the defendant is subject to substantial expenses in defending against them"). At the first step of the anti-SLAPP analysis, the defendant must show that the claim arises from, as relevant here, statements made "in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." ORS 31.150(2).

The ICT Articles easily meet both criteria. The statements challenged by the Complaint were unquestionably made in a public forum: a news website available to anyone. *See Card v. Pipes*, 398 F. Supp. 2d 1126, 1136 (D. Or. 2004) (statements made in a newspaper article and on a website were presented in a public forum); *see also Accuardi v. Fredericks*, No. 3:13-cv-

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                    Page 18

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01825-ST, 2014 U.S. Dist. LEXIS 27328, at *6-7 (D. Or. Mar. 4, 2014) (noting that a posting on a website "hardly could be more public") (citation omitted).

Courts in Oregon have adopted an expansive view of what constitutes an "issue of public interest" to bring speech under the anti-SLAPP statute's protection. *See, e.g.*, *Higher Balance, LLC v. Quantum Future Grp., Inc.*, No. 08-233-HA, 2008 U.S. Dist. LEXIS 102611, at *9 (D. Or. Dec. 18, 2008) (the term "issue of public interest" "has been applied broadly, however, in Oregon state and federal cases") (citation omitted). Thus, courts have held that issues of public interest include the quality of goods and services in the marketplace, *e.g.*, *id.* at *13-14; alleged political bias in the classroom by a University of Oregon professor, *Card*, 398 F. Supp. 2d at 1136; and allegations of ethical lapses by a forensic scientist, *Englert v. MacDonell*, No. 05-1863-AA, 2006 U.S. Dist. LEXIS 29361, at *21-22 (D. Or. May 10, 2006). The ICT Articles discuss an issue of public interest: allegations of misconduct and mismanagement among high-ranking officials at NCAI, the most prominent American Indian and Alaska Native advocacy organization in the United States. *See, e.g.*, *Guzman v. Finch*, No. 19cv412-MMA (MDD), 2019 U.S. Dist. LEXIS 71168, at *14-16 (S.D. Cal. Apr. 26, 2019) (defendant's Facebook post alleging an abusive sexual relationship with her work supervisor was protected under California's similar anti-SLAPP statute because domestic violence is a matter of public interest).

Therefore, because the ICT Articles were statements made in a public forum about an issue of public interest, Dossett must show a probability of success on his claims by showing that they are sufficient to survive a Rule 12(b)(6) motion to dismiss. *Miller*, 2019 U.S. Dist. LEXIS 70930, at *9. Dossett cannot meet his burden, as the following sections demonstrate.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**
Page 19

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## II.    THE COMPLAINT  FAILS TO STATE A VIABLE DEFAMATION CLAIM FOR MULTIPLE REASONS

### A.    Dossett Is A Public Figure Who Cannot Establish Actual Malice

The First Amendment mandates that public figures prove, by clear and convincing evidence, that the allegedly defamatory statements were made with constitutional "actual malice," meaning "with knowledge of [their] falsity or with reckless disregard for the truth." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).  Dossett is a public figure for purposes of this case, and his Complaint shows he cannot plausibly plead actual malice.

#### 1.    Dossett Is a Limited-Purpose Public Figure

Dossett is what is known in defamation law as a "limited-purpose public figure," someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues," and thus "assume[s] special prominence in the resolution of public questions."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  To safeguard robust public debate, "the First Amendment demands more stringent proof of wrongdoing when [public figures] sue their detractors."  *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002).  Courts determining as a matter of law whether a plaintiff is a limited-purpose public figure should consider

> whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected [him]self into the controversy for the purpose of influencing the controversy's ultimate resolution.

*Makaeff*, 715 F.3d at 266.

Here, Dossett is (and was when the ICT Articles were published) a "leader in the field of Indian law," a "nationally recognized expert" who was "instrumental" in organizing political

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                    Page 20

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

support for provisions in the Violence Against Women Act expanding tribal jurisdiction.  Compl. ¶¶ 2, 15-16.  As such, he voluntarily thrust himself into the public controversy regarding violence and sexual assault of women in general and Native women in particular, and allegations that he harassed women at NCAI are therefore germane to his participation in that controversy.

More specifically, by the time that the ICT Articles were published, a public controversy had erupted over allegations of misconduct and mismanagement at NCAI – involving both the allegations against Dossett and his allegations that he was treated unfairly.  Whether one interprets it as creating or merely reflecting the controversy, the First Indianz.com Article shows that the controversy existed before ICT started reporting on it, and that Dossett already had begun participating in it by issuing the first of multiple public statements.  *See generally* Compl. Ex. A.  By injecting himself or, at a minimum, being drawn into this controversy, Dossett became a public figure in that context before publication of the ICT Articles, which reported on his role in the controversy.

2.    Dossett Cannot Plausibly Plead Constitutional Actual Malice

Dossett's public-figure status means that he must show that the ICT Articles were published with constitutional "actual malice," which is "a subjective standard testing the publisher's good faith belief in the truth of his or her statements."  *United States Dist. Court v. Sandlin*, 12 F.3d 861, 867 (9th Cir. 1993) (citation omitted).  Actual malice in this context does not mean ill will or spite; rather, a public figure must show that the defendant subjectively believed at the time of publication that the challenged statements were false or that it reported them despite having a "high degree of awareness of their probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**                     Page 21

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Therefore, even where (unlike here) the publication was made negligently, the actual malice standard is not satisfied. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("Mere negligence does not suffice."). Actual malice "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 730-31. Indeed, neither a "departure from reasonably prudent conduct," nor even a "failure to investigate" standing alone constitutes actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667-688, 688 (1989). In other words, "there is no actual malice where journalists unknowingly mislead the public." *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1064 (9th Cir. 1998) (citation omitted).

Although states of mind such as constitutional actual malice may be pleaded generally, plaintiffs still must plead facts that would plausibly suggest defendants harbored the requisite mental state. *Iqbal*, 556 U.S. at 683, 686-87. The Supreme Court has stressed that the inference of culpability must be *reasonably* drawn from the facts alleged; if there is a reasonable alternative explanation that is lawful, the plaintiff has not stated a claim. *Id*. at 682-83.

To move forward with his defamation claim, therefore, the Complaint must allege sufficient facts that, if proven, would plausibly establish that the ICT Articles were published with actual malice. *Miller*, 2019 U.S. Dist. LEXIS 70930, at *38-39. As this Court recognized in *Miller*, although the Ninth Circuit has not specifically applied the *Iqbal/Twombly* pleading standards to actual malice, federal appellate courts uniformly have done so. *Id.* at *16; *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 22

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.") (collecting cases).

Here, Dossett has not pleaded any facts that would allow the Court to draw the reasonable inference that ICT published the articles at issue with subjective knowledge of falsity – *i.e.*, actual malice. *Miller*, 2019 U.S. Dist. LEXIS 70930, at *38-39. Regarding the First ICT Article, Dossett has not pleaded and cannot show any fact that would plausibly suggest that the ICT journalists who summarized the initial Indianz.com report about the allegations against Dossett and his response subjectively believed that what they published was false.

In cases such as this one involving summaries or republications of allegations made by other news sources, showing actual malice requires facts that would indicate that the defendant ignored "'obvious reasons' to doubt the truthfulness of the original speaker." *Makaeff*, 715 F.3d at 271 (citation omitted). In other words, Dossett must plead facts from which it may be inferred that Indianz.com is inherently unreliable and that the ICT journalists involved in publishing the article *knew* that it was unreliable. He has not done so. Indeed, all Dossett pleads about Indianz.com is that it is a "prominent internet-based news site." Compl. ¶ 3. As the Ninth Circuit has held, "a publisher who does not already have 'obvious reasons to doubt' the accuracy of a story is not required to initiate an investigation that might plant such doubt." *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992) (citation omitted).

Further, Dossett fails to allege any fact that would establish actual malice in the minds of those persons actually *responsible for* the ICT Articles. The relevant inquiry must focus on the subjective belief of those specific persons *responsible for* the challenged article at the time of its publication. *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("the state of mind

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

required for actual malice would have been brought home to the persons in the Times'
organization having responsibility for the publication").  Any alleged knowledge or motive of
NCAI as a corporate entity – or of any persons other than the ICT editorial staff responsible for
the challenged articles – is legally irrelevant.  *Id*.; *see also Mimms v. CVS Pharmacy, Inc.*, 889
F.3d 865, 868 (7th Cir. 2018) (knowledge of corporate executives could not be imputed to lower-
level employees who made allegedly defamatory statements).  Dossett's bare allegation that
"NCAI had actual knowledge of the falsity of the Indianz.com story," Compl. ¶ 41, is as
insufficient as it is conclusory.  Dossett does not allege that any ICT journalist involved with the
ICT Articles harbored any knowledge of falsity of particular published statements, nor could he.
Dossett's defamation claim thus fails on the pleadings, and Dossett cannot establish a likelihood
of success under Rule 12(b)(6) and ORS 31.150.

Dossett complains that ICT did not contact him prior to publishing the first article and did
not interview "alternative sources."  Compl. ¶ 41.  Even assuming that allegation to be true, it is
black-letter law that "failure to investigate before publishing, even when a reasonably prudent
person would have done so, is not sufficient to establish" actual malice.  *Harte-Hanks*, 491 U.S.
at 668.  Indeed, in *St. Amant*, the Supreme Court held that the evidence "f[e]ll short" of
establishing actual malice where the defendant had "no personal knowledge" of the reported
activities, yet "failed to verify the information with those . . . who might have known the facts."
390 U.S. at 730; *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir.
2013) (defendants' failure to check court records to determine if plaintiff had filed for
bankruptcy did not constitute actual malice).

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Moreover, even though ICT had no legal duty to include Dossett's comments in either article, it went out of its way to do so – something that indicates an absence of actual malice. Both ICT articles extensively quoted Dossett's rebuttals to the accusations against him, his assertions that NCAI treated him unfairly, and his claims that the complaints against him were exaggerated or false. *See* Compl. Ex. B at 3; Compl. Ex. C at 1-2. Including both sides of the story negates an alleged inference of actual malice. *See Michel*, 816 F.3d at 703-04 (allegations of actual malice were undermined by contents of challenged publication, which gave "readers sufficient information to weigh for themselves the likelihood of an article's veracity").

In addition, because the Complaint is premised on alleged implications, Dossett must plead (and ultimately prove) facts that would show that the ICT journalists *intentionally* communicated the defamatory meaning Dossett ascribes to the ICT Articles. *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 680-81 (9th Cir. 1990). In *Newton*, the Ninth Circuit explained that because actual malice is a subjective standard, a plaintiff must prove by clear and convincing evidence that the defendant actually intended a defamatory implication; to hold otherwise "would permit liability to be imposed not only for what was said but also for what was not intended to be said." *Id.* at 681. Dossett does not plead any fact that would show ICT journalists intended to imply that he was guilty of sexual harassment or sexual misconduct. Rather, the only allegation that comes close is Dossett's conclusory (and therefore inadequate) assertion that the Second ICT Article was published "intending to justify NCAI's actions in firing Mr. Dossett." Compl. ¶ 70.

This reading is untenable. The fact that the First ICT Article summarized the content of the First Indianz.com Article and included Dossett's entire statement in response underscores

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 25

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

that ICT did *not* intend to imply as a factual matter that Dossett was guilty of any misconduct. Because Dossett has not pleaded facts plausibly establishing that ICT journalists intended to imply he was guilty of sexual misconduct, and because nothing on the face of the ICT Articles suggests that such an implication was intended, Dossett has not alleged an adequate claim of actual malice fault, an element of his claim.  *See Dodds*, 145 F.3d at 1064 (actual malice not shown where there was no evidence broadcast's producers intended defamatory implication and broadcast did not "contain any language demonstrating that ABC endorses" such implication").[4]

For the same reasons, Dossett has failed to plead actual malice regarding the Second ICT Article as well.  The Complaint pleads no facts plausibly establishing that there was reason to doubt President Keel's veracity.  It pleads no facts showing that any of the journalists at ICT had any knowledge or awareness that President Keel's challenged statement – or the alleged defamatory implications flowing from it – were false or probably false.  The Complaint pleads no facts plausibly establishing that either the Second ICT Article on its face shows its authors intended the defamatory implications Dossett claims or facts to show that anyone at ICT had such intent.  For all of these reasons, the Complaint's defamation claim against NCAI should be dismissed and NCAI should be awarded its reasonable attorney's fees and costs.

---

[4] Dossett grumbles that the challenged articles remain on the ICT website after he has raised his claims of falsity.  Compl. ¶ 52.  But denials alone do not establish falsity or actual malice. *Harte-Hanks*, 491 U.S. at 691 n.37 ("[T]he press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'") (citation omitted).  But even assuming falsity had been established – which it has not – the allegation is a legal *non sequitur* for another reason:  Actual malice is assessed based on the journalist's state of mind *at the time of publication*. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).  Declining to retract a publication therefore does not show the existence of actual malice at the time it was published. *Sullivan*, 376 U.S. at 286.

**Defendant The National Congress of American Indians'
MOTION TO DISMISS AND MOTION TO STRIKE**

Page 26

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

**B.     The Articles Do Not Reasonably Convey The Defamatory Meaning Alleged**

Dossett's defamation claim fails for an independent reason as well:  Here, when considered in their full context and from the perspective of a reasonable reader as required, the challenged passages in the ICT Articles cannot reasonably be interpreted as statements by ICT that Dossett is guilty of sexual harassment as a factual matter.

Whether a challenged publication is capable of conveying a defamatory meaning is a threshold question of law for the Court.  *Reesman v. Highfill*, 965 P.2d 1030, 1034 (Or. 1998); *see also Higher Balance*, 2008 U.S. Dist. LEXIS 102611, at *25-26 (same).  Context is crucial to this analysis.  *Reesman*, 965 P. 2d at 1034.  The Court cannot consider allegedly defamatory statements in isolation; rather, it must consider the challenged publications as a reasonable reader would, taking into account "all parts of the communication that are ordinarily heard or read with it."  *Knievel v. ESPN*, 393 F.3d 1068, 1074-76 (9th Cir. 2005).  In cases such as this one where a plaintiff alleges defamation by implication, "the inference that the plaintiff seeks to draw from the facially nondefamatory communication must be reasonable."  *Reesman*, 965 P. 2d at 1034.  Considered as a whole, neither publication bears the defamatory meaning the Complaint attributes to it.

For example, the Second ICT Article puts Dossett's denials of wrongdoing and accusations of unfair treatment by NCAI front and center, starting in the fourth paragraph, highlighting his assertion that he never sexually harassed anyone and that "most" of the complaints against him were "exaggerated or untrue."  Compl. Ex. C at 1-2.  Those comments provide the context for President Keel's statement that – as Dossett acknowledges is true – there was an investigation, the investigator made recommendations, and those unspecified

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**
*Page 27*

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

recommendations were implemented.  *See id.* at 2-5.  In the same statement (which Dossett

ignores in his complaint), Keel states that NCAI would not provide "more specific information"

because to do so would "jeopardize those parties who have chosen privacy over publicity."  *Id.* at

4.

Thus, in the context of the Second ICT Article, which recounts at length Dossett's

protestations of innocence and criticisms of how NCAI treated him, Keel's vanilla statement that

unspecified recommendations had been implemented simply does not reasonably convey the

pleaded defamatory meaning that the investigation concluded Dossett was guilty of sexual

harassment.  Compl. ¶ 71.[5]

The First ICT Article, because it is clearly a summary of the First Indianz.com Article,

also does not convey a defamatory implication at all.  The article includes Dossett's entire public

statement denying wrongdoing and questioning Hallingstad's motives.  Compl. Ex. B at 3.  It

also includes public statements by Pata and Keel saying that NCAI could not publicly discuss the

details of internal personnel matters.  *Id.* at 2-3.  The challenged passage reports what

Indianz.com quoted an anonymous former NCAI employee as saying – purporting to relay a

statement by another unnamed NCAI employee offering *an opinion* rather than a factual

assertion.  *Id.* at 2.  Reasonable readers would not understand vague, secondhand hearsay from

---

[5] The other alleged defamatory implication Dossett ascribes to this passage – that his
demotion was "related to allegations of sexual harassment" – is not actionable because it is true.
*See, e.g.*, *Volm v. Legacy Health Sys., Inc.*, 237 F. Supp. 2d 1166, 1178-79 (D. Or. 2002)
(substantially true statements are not actionable as defamation).  Dossett admits that allegations
of sexual harassment were made against him; that those allegations were investigated; and that at
the conclusion of the investigation, he was reprimanded and demoted for, *inter alia*, making
"sexually-charged comments."  Compl. ¶¶ 21-22, 26-32.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 28

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

an anonymous source – in the context of an article that quotes Dossett's on-the-record denial and reproach of one of his critics – as an assertion that Dossett had in fact engaged in sexual misconduct.  *See, e.g.*, *Larry v. Schmid*, No. 09-663-AC, 2011 U.S. Dist. LEXIS 152871, at *23-24 (D. Or. Oct. 21, 2011) (article quoting prosecutor's belief in guilt of defendant who had been acquitted could not be understood as affirmative assertion of guilt).

Further, reasonable readers would not understand the ICT Articles to convey a defamatory meaning because they are balanced reports that recount both the fact that allegations had been made and the fact that Dossett strongly denied the allegations.  *See, e.g.*, *Basilius v. Honolulu Publ'g Co.*, 711 F. Supp. 548 (D. Haw. 1989) (article reporting competing theories about an assassination could not be understood as factual assertion of plaintiff's involvement), *aff'd without opinion*, 888 F.2d 1394 (9th Cir. 1989).  The law recognizes "the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation."  *United States v. Alvarez*, 567 U.S. 709, 718 (2012).  Particularly where, as here, there is an existing, heated public controversy regarding allegations of misconduct against an official of a prominent advocacy group, a news organization "cannot be made to warrant that every allegation that it prints is true."  *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 717 (4th Cir. 1991).  Dossett's position effectively is that ICT cannot, on pain of defamation liability, publish reports that mention sexual harassment allegations against him even where those reports provide his vehement denials of those allegations, thereby enabling readers to better judge for themselves where the truth lies.

This common and fundamental form of journalism is protected by the First Amendment and by Oregon law.  For example, in the context of a newspaper's coverage of an acrimonious

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 29

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

local political dispute, an accusation of wrongdoing against the plaintiff by a political opponent could not be understood as defamatory. *Brocato v. City of Baker City*, No. 2:10CV592-SU, 2012 U.S. Dist. LEXIS 44992, at *36-38 (D. Or. Jan. 4, 2012). Similarly, the Oregon Supreme Court affirmed dismissal of a former city council candidate's defamation claim over a newspaper report that state election authorities were investigating a flyer he authored that was circulated by a citizens' group, because the secretary of state's office was indeed investigating. *Bahr v. Ettinger*, 745 P.2d 807, 808-09 (Or. 1987).

Unlike some other jurisdictions, neither the Oregon Supreme Court nor the Ninth Circuit has to date adopted particular nomenclature to describe this principle, *i.e.*, that reports recounting the positions of both sides to a public controversy should not be actionable as defamation precisely because it is important that the public be informed about such disputes. In Ohio, for example, that state's high court has described it succinctly as the "balanced report" principle, holding that, where a news report presents both sides of a dispute on a matter of public concern, the report is not reasonably understood in a defamatory sense. *Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 853-54 (Ohio 2012); *see also Croce v. N.Y. Times Co.*, 930 F.3d 787, 793 (6th Cir. 2019) (affirming dismissal of defamation claims based on article that presented allegation of wrongdoing and denials that was "a standard piece of investigative journalism that presents newsworthy allegations made by others, with appropriate qualifying language"); *Glob. Relief Found., Inc. v. N.Y. Times Co.*, 390 F.3d 973, 987 (7th Cir. 2004) (affirming dismissal of defamation claims over reports that plaintiff was being investigated for terrorism links and rejecting plaintiff's "argument that these media defendants must be able to prove the truth of the government's charges before reporting on the investigation itself").

**Defendant The National Congress of American Indians'
MOTION TO DISMISS AND MOTION TO STRIKE**

Page 30

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Here, viewed in whole and in context, the ICT Articles are objective accounts of the competing allegations of Dossett's critics on the one hand, and of Dossett's version of those same events on the other.  In cases such as this one – where a prominent public advocate is accused of sexual misconduct, and where both the allegations and the advocate's response have already been reported – it is crucial for the public to be able to hear both sides of the story.  The law correctly assumes that reasonable readers of such news reports can and should make up their own minds when presented with competing narratives, and that reasonable people understand that, just because an allegation is made does not make it true, and just because an allegation is denied does not make it false.

Thus, Dossett's defamation claim against NCAI should be dismissed for the independent and equally dispositive reason that the ICT Articles do not convey a defamatory meaning.

### C.    The Injunctive Relief Dossett Seeks Is Barred by the First Amendment

It bears separate emphasis that Dossett cannot obtain the injunctive relief he seeks because, beyond the fact that his tort claims fail as a matter of law, he seeks *compelled speech* and prior restraints that are prohibited by the First Amendment.

An order requiring ICT to take down the articles at issue and precluding it from publishing anything "accusing or implying that Mr. Dossett has committed sexual harassment or that he was demoted or terminated due to sexual harassment," Compl. ¶ 92, would be a "classic prior restraint on speech," an extraordinary remedy that is the "most serious and the least tolerable infringement on First Amendment rights."  *Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (citation omitted) (holding an order to YouTube to take down an allegedly copyright infringing video would be an unconstitutional prior restraint).  There is a "historical

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 31

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

and heavy presumption against such restraints" that Dossett has not even come close to overcoming in this case, most prominently because he has not plausibly pleaded a claim for defamation or any other tort.  *Id.*

Dossett's request for orders for NCAI to "issue a statement about the results of its internal investigations" and for ICT to "retract" the allegedly defamatory statements also clearly run afoul of the First Amendment as impermissible compelled speech.  Like prior restraints, orders compelling speech pass constitutional muster only under circumstances not present here. *See, e.g.*, *Pickup v. Brown*, 740 F.3d 1208, 1228 (9th Cir. 2014).  As the Supreme Court has said, a government "compulsion to publish that which 'reason tells [the publisher] should not be published' is unconstitutional."  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256 (1974).

Dossett's claim for injunctive relief should thus be denied for the additional reason that the orders he seeks are undoubtedly unconstitutional.

## III.    THE COMPLAINT'S ANCILLARY CLAIMS FAIL

### A.    Dossett's Intentional Interference With Economic Relations Claim Fails

Dossett' claim for intentional interference with economic relations ("IIER") should be dismissed for two independent and equally dispositive reasons.  First, an IIER claim cannot be premised on constitutionally protected speech; if the plaintiff cannot sustain a defamation claim regarding the challenged statements, they cannot support an IIER claim.  *Gardner*, 563 F.3d at 992.  Thus, Dossett's IIER claim fails for the same reason his defamation claim fails.

Second, Dossett's IIER claim should be dismissed for the independent reason that he does not plead facts that would support the requisite common law elements.  Under Oregon law, the elements of an IIER claim are:

**Defendant The National Congress of American Indians'
MOTION TO DISMISS AND MOTION TO STRIKE**

Page 32

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

 (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).  The Complaint falls short on at least the first, third, and fifth elements.

NCAI's termination of Dossett's employment cannot support his IIER claim because it is axiomatic that "a party to a contract cannot be liable for interference with that contract."  *Id*. at 536.  Further, Dossett has not plausibly pleaded facts that would show any prospective employer refused to hire him because of the ICT Articles at issue here.  *Sharma v. Providence Health & Servs.-Or.*, 289 Or. App. 644, 670 (2018) (plaintiff pursuing claim for interference with prospective economic relations must show existence of "a specific prospective business relationship with which [the defendant] allegedly interfered").

That leaves only the allegation relating to Dossett's employment as an adjunct law school professor.[6]  The Complaint contains nothing beyond the conclusory claim that the articles he challenges "result[ed] in Plaintiff's . . . loss of employment as an adjunct law professor with Lewis & Clark Law School," Compl. ¶ 104, which the Court need not consider.  The only actual fact that he pleads is that "[i]n the same timeframe" as the publications at issue, the law school "*suspended* Mr. Dossett's employment as an adjunct professor."  *Id.* ¶ 45 (emphasis added).  This falls far short of Dossett's burden to plead facts that would plausibly suggest he (a) was

---

[6] Although Dossett alleges he was "pursuing a return as Distinguished Practitioner in Residence at Cornell Law School," Compl. ¶ 17, he does not allege any facts showing that NCAI knew about this or that anything NCAI did caused Cornell to turn him down, *see id.* ¶ 104.

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

fired from his adjunct teaching job; (b) *after* the ICT Articles were published; (c) *because of* the

ICT Articles, which were (d) published for an improper purpose.  *See McGanty*, 321 Or. at 535

("a causal effect between the interference and damage to the economic relationship" is required

to prove IIER).  Because Dossett has not overcome the First Amendment hurdles for an IIER

claim based on speech, and because he has not plausibly pleaded the elements of a claim, his

fourth cause of action should be dismissed.

> **B.     Dossett's Negligence Claim Fails**
>
> **1.     NCAI Owed Dossett No Special Duty of Care**

The law in Oregon is clear:  An employment relationship like that between Dossett and

NCAI does not give rise to a duty to investigate alleged misconduct.  *Koanui v. Cenveo Corp.*,

No. 04-6326-TC, 2005 U.S. Dist. LEXIS 48965, at *13 (D. Or. Oct. 5, 2005) (citing *Conway v.

Pacific Univ.*, 924 P.2d 818 (Or. 1996)).  Indeed, as recognized in *Koanui*, the vast majority of

courts acknowledge that no such duty exists.  *Id.* at *12-13 (citing, *inter alia*, *Olive v. City of

Scottsdale*, 94-1028, 1995 U.S. Dist. LEXIS 22672, at *7 (D. Ariz. Apr. 3, 1995); *Lambert v.

Morehouse*, 843 P.2d 1116, 1119 (Wash. App. 1993)).

As those courts and others have stated, a negligence claim arising out of an employer's

investigation into alleged employee misbehavior – or even a lack of any such investigation –

would negate the at-will nature of the employment relationship.  *Koanui*, 2005 U.S. Dist. LEXIS

48965, at *11-12.  When an employer can terminate or otherwise discipline an employee for any

reason, or no reason, it has wide discretion to police its workplace in any manner it deems

appropriate.  *Olive*, 1995 U.S. Dist. LEXIS 22672, at *7.  Thus, no duty of care exists that would

require the employer to conduct an investigation in any particular manner, or at all.

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**
                                                                                    Page 34

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Here, Dossett's claim is based on a premise that is inherently flawed. "The at-will-employment rule has been the rule in Oregon for [more than] a century." *Sheets v. Knight*, 308 Or. 220, 233-34 (1989). The Complaint is devoid of any allegation that Dossett's employment by NCAI was anything other than at-will. Indeed, the employee handbook at the center of Dossett's claim makes abundantly clear that Dossett's employment was at-will. Ex. 1 at 2. Thus, no special duty attached that would have governed NCAI's investigation of Dossett's conduct and his negligence claim must fail.

Nor does the Complaint's misleading quotation of NCAI's Employment Policy Handbook (the "Employee Handbook") change the analysis or create a legally enforceable duty. To the contrary, the Employee Handbook, relevant portions of which are attached as Exhibit 1,[7] explains various work rules and makes explicit that its policies are "management guidelines only, which in a developing business will require changes from time to time." Ex. 1 at 1. It informs employees that NCAI "retains the right to make decisions involving employment as needed in order to conduct its work in a manner that is beneficial to the employees and the organization." *Id.* The policies stated in the handbook, therefore, do not create "contractual obligation with respect to any matters it covers." *Id.*

The matters addressed by the Employee Handbook include NCAI's strict work rules covering non-discrimination, anti-harassment, and standards of conduct – three matters, NCAI makes abundantly clear, it takes very seriously. *Id.* at 3, 6-8, 55. One tool the organization uses

---

[7] Because the Complaint references and quotes from the Employee Handbook, it is properly considered by the Court on a motion to dismiss as incorporated by reference. *See Knievel*, 393 F.3d at 1076 (court may consider on motion to dismiss document "whose contents are alleged in a complaint") (citation omitted).

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 35

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

to enforce its anti-harassment policy is its reporting and investigation procedure, which the handbook describes in detail. *See id.* at 8-9. As the handbook explains, all complaints of harassing conduct will be investigated "promptly" and "as confidentially as possible." *Id.* at 8. The Employee Handbook further states that NCAI intends for investigations to be conducted "in a discreet and sensitive manner," in an attempt to gather all relevant facts and in recognition of the impact that false accusations may have. *Id.* at 9; Compl. ¶ 98. Most importantly, it highlights the organization's commitment to pursuing complaints of this sort, taking decisive actions regarding those employees who violate these policies, and preventing reprisal for participation in investigations in any way. Ex. 1 at 9. Like all NCAI employees, and especially because he was the organization's general counsel for more than twenty years, Dossett was required to know and understand these policies, including the organization's strong commitment to anti-harassment and the fact that the Employee Handbook was subject to the organization's discretion to enforce and interpret. *Id.*

> **2.**      NCAI Fulfilled Its Duties to Dossett

Even if NCAI owed Dossett a duty of care to conduct an investigation into his alleged misbehavior, the allegations in the Complaint make clear that NCAI fulfilled this duty. Under Oregon law, "an employer's interpretation and application of facts to its own policy is often given deference." *Koanui*, 2005 U.S. Dist. LEXIS 48965, at *8 n.2 (citing *Simpson v. Western Graphics Corp.*, 293 Or. 96 (1982)). The Employee Handbook details how seriously NCAI takes its commitment to providing a work environment free from harassment and other inappropriate conduct. Ex. 1 at 8-9. Its efforts include taking prompt action to review and investigate workplace complaints and to keep its investigations confidential to the extent possible

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 36

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

given the needs of the organization.  *Id.*  Under the law, NCAI has the discretion to apply these rules as it deems appropriate.

Dossett disagrees with the way in which NCAI conducted its investigation of his alleged improper behavior, but mere disagreement over the way in which NCAI interprets and applies its own rules does not give rise to a legal claim.  As mentioned above and made clear in the Employment Handbook, Dossett was employed at-will and no contractual relationship arose through the terms of the Handbook.  Further, the Employee Handbook itself disclaimed any contract status.  *Id.* at 2.  Rather than a contract, the Employee Handbook is clearly framed as guidelines, which NCAI retained the right to interpret and apply.  *Id.* at 1-2.

Here, NCAI enforced and applied its policies in the manner it deemed fit to maintain a respectful and healthy workplace.  Oregon law gives it the right to do so.  Dossett's negligence claim therefore fails as a matter of law.

### 3.    The Economic Loss Rule Bars Dossett's Negligence Claim

Dossett's negligence claim also fails because it is barred by Oregon's economic loss rule. Under that rule, absent a special relationship between the parties other than an employment relationship, a defendant is not liable for negligently causing purely economic loss without a corresponding injury to the plaintiff's person or property.  *Wenzel v. Klamath County Fire Dist. No. 1*, 2017 U.S. Dist. LEXIS 198914 *43-44 (D. Or. Aug. 29, 2017) (citing *Hale v. Grace*, 304 Or. 281, 284 (1987)).  Dossett has not alleged any kind of physical injury or damage to property, nor has he alleged facts that would give rise to a special relationship between him and NCAI.  In *Wenzel*, for example, this Court dismissed under the economic loss rule a similar negligence

**Defendant The National Congress of American Indians'**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Page 37

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

claim based on an investigation into misconduct that resulted in the plaintiff's firing.[8]  Dossett's

negligence claim is barred by the economic loss rule and should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant The National Congress of American Indians

of the United States and Alaska respectfully requests that this Court grant its motion to strike and

dismiss all claims against it, and award NCAI its reasonable attorneys' fees and costs in an

amount to be determined at a later date.

DATED this 12th day of November, 2019.

KELL, ALTERMAN & RUNSTEIN, L.L.P.

By: s/Scott J. Aldworth

Scott J. Aldworth, OSB No. 113123
Susan T. Alterman, OSB No. 870815
Telephone:  (503) 222-3531
Fax:  (503) 227-2980
saldworth@kelun.com
salterman@kelrun.com

Matthew E. Kelley (admitted *pro hac vice*)
Chad R. Bowman (admitted *pro hac vice*)
BALLARD SPAHR LLP
Telephone: 202/508-1112
Fax:  202/661-2299
kelleym@ballardspahr.com
bowmanchad@ballardspahr.com

Attorneys for Defendant The National
Congress of American Indians of the United
States and Alaska

---

[8] Dossett's assertion of "non-economic damages for his pain and suffering," Compl. ¶ 101, does not salvage this claim because, again absent a special relationship, "there can be no liability in ordinary negligence except for actual, physical harm."  *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551, 142 P.3d 1079, 1089 (2006), *aff'd*, 344 Or. 403, 183 P.3d 181 (2008).

**Defendant The National Congress of American Indians'
MOTION TO DISMISS AND MOTION TO STRIKE**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980