Ryan M. Bledsoe, OSB No. 073296
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland OR, 97204
Phone: (503) 221-1440
Email: ryan.bledsoe@tonkon.com

Peter Michael Meloy, admitted *pro hac vice*
MELOY LAW FIRM
P.O. Box 1241
Helena, MT 59624-1241
Phone: (406) 442-8670
Email: mike@meloylawfirm.com

*Attorneys for Defendant High Country News*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN H. DOSSET,<br><br>               Plaintiff,<br><br>  vs.<br><br>HO-CHUNK, INC., a tribal corporation formed by the Winnebago Tribe of Nebraska, NOBLE SAVAGE MEDIA, LLC, a limited liability company of unknown origin, THE NATIONAL CONGRESS OF AMERICAN INDIANS OF THE UNITED STATES AND ALASKA, an Oklahoma not-for-profit corporation, and HIGH COUNTRY NEWS, a Colorado nonprofit corporation,<br><br>               Defendants. | Case No. 3:19-cv-01386<br><br>**DEFENDANT HIGH COUNTRY NEWS' REPLY MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    I.    Dossett's Defamation Claim Must Be Stricken Because He Has Not Met His Burden Under Oregon's Anti-SLAPP Statute ......................................... 1

        A.    HCN Has Established the Applicability of ORS 31.150(2)(d) ................. 1

        B.    Dossett Cannot Establish a Prima Facie Case of Defamation ................... 4

            1.    Dossett Cannot Show the Requisite Malice Required for a Public Figure or Limited Public Figure ......................................... 4

            2.    Dossett Cannot Establish Falsity; the Facts Reported by HCN were True ............................................................................... 7

                a.    Truth is a Complete Defense to a Libel Claim .................. 7

                b.    Substantial Truth is All that is Required ............................ 9

                c.    The Materials Submitted by Dossett in Response to HCN's Motion to Strike and Dismiss Establish that the Gist of the Report is Substantially True .............. 11

        C.    Dossett is Not Entitled to Attorney Fees .................................................. 13

    II.    Dossett's Negligence Claim Must be Dismissed ................................................. 13

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auvil v. CBS*, 67 F.3d 816, 820 n. 5 (9th Cir. 1995),
   *cert. denied,* 116 S.Ct. 1567 (1996) ...................................................................................9

*Bandelin v. Pietsch*,
   98 Idaho 337, 563 P.2d 395 (1977) .....................................................................................5

*Card v. Pipes*,
   398 F. Supp. 2d 1126 (D. Or. 2004) ....................................................................................8

*Chapin v Knight- Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ...........................................................................................10

*Cobb v. Time, Inc.*
   1995 WL 861518 (M.D. Tenn. 1995) .............................................................................9, 10

*Doe No. 1 v. Burke*,
   91 A.3d 1031 (D.C. App. 2014) ..........................................................................................5

*Dworkin v. L.F.P., Inc*.
   839 P.2d 903 (Wyo. 1992) .................................................................................................10

*Firestone v. Time, Inc.*
   460 F.2d 712 (5th Cir.) *cert. denied*, 409 U.S. 875 (1972) ..................................................9

*Garrison v State of Louisiana*,
   379 U.S. 64, 85 S. Ct. 209, 13 L. Ed .2d 125 (1964) ..........................................................8

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974) ...............................................4, 5, 6

*Hickey v. Capital Cities/ABC, Inc.*,
   792 F. Supp. 1195 (D. Or. 1992) ....................................................................................8, 10

*Higher Balance, LLC v. Quantum Future Grp., Inc.*,
   2008 WL 5281487 (D. Or. Dec. 18, 2008) .........................................................................2

*Jones v. Globe Int'l. Inc.*,
   1995 WL 819177 (D. Conn.) .............................................................................................10

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,
   736 F.3d 1180 (9th Cir. 2013) ..........................................................................................1, 6

**PAGE 1 – TABLE OF AUTHORITIES**

*Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*,
   606 F. Supp. 2d 1266 (S.D. Cal. 2009) ................................................................................8

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991) ....................................................10

*Masson v. New Yorker Magazine, Inc.*
   85 F.3d 1394 (9th Cir. 1996) .............................................................................................9, 10

*New York Times Co. v. Sullivan*,
   376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ...........................................................8

*Norse v. Henry Holt & Co.*
   991 F.2d 563 (9th Cir. 1993) ................................................................................................10

*Obsidian Fin. Grp., LLC v. Cox*,
   740 F.3d 1284 (9th Cir. 2014) ................................................................................................5

*Overby v. KPTV Television Inc.*,
   1995 WL 860298 (D. Or.) .....................................................................................................10

*Pace v. Rebore*,
   107 A.D.2d 30 (N.Y. App. Div. 1985) ...................................................................................5

*Patrick v. Cleveland Scene Publ. LLC*,
   2009 WL 4981690 (6th Cir. 2009) (unpublished) ................................................................10

*Philadelphia Newspapers Inc. v. Hepps*,
   475 U.S. 767, 106 S. Ct. 1558, 89 L .Ed. 2d 783 (1986) ....................................................8, 9

*Read v. Phoenix Newspapers, Inc.*
   169 Ariz. 353, 819 P.2d 939 (1991) ......................................................................................10

*Reed v. Gallagher*,
   248 Cal. App. 4th 841, 204 Cal. Rptr. 3d 178 (2016) .............................................................7

*Shirley v. Freunscht*,
   81 Or. App. 221, 724 P.2d 907 (1986), *rev'd on other grounds*, 303 Or. 234,
   735 P.2d 600 (1987) ................................................................................................................8

*Simonson v. UPI*,
   654 F.2d 478 (7th Cir. 1981) ................................................................................................10

*Stilts v. Globe Int'l Inc.*
   1996 WL 370142 (6th Cir. 1996) ..........................................................................................10

*Tate v. Bradley*,
    679 F. Supp. 608 (W.D. La. 1987), *aff'd on other grounds*, 837 F.2d 206 (5th Cir. 1988) ............................................................................................................5

*Wingard v. Oregon Family Council, Inc.*,
    290 Or. App. 518, 417 P.3d 545 (2018) ..................................................................1, 7

**Statutes**

ORS 31.150 ..............................................................................................1, 2, 4, 7, 13

ORS 31.152 ..............................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1

John Dossett, *Conference Panelist*, Transcript from the National Congress of
    American Indians Conference at Berkeley, Cal., Nov. 17, 2006 ............................6

John Dossett, *Indian Country and the Territory Clause: Washington's Promise at
    the Framing,* 68 Am. L. Rev. 205 (2018) ..............................................................6

John Dossett, *Justice Gorsuch and Federal Indian Law*,
    43 Human Rights 7 (2017) ....................................................................................6

John H. Dossett, *Tribal Nations and Congress's Power to Define Offences
    Against the Law of Nations*, 80 Mont. L. Rev. 41 (Winter 2019) ........................6

*The New Realism: The Next Generation of Scholarship in Federal Indian Law*,
    32 Am. Indian L. Rev. 1 (2007/2008) ....................................................................6

S. Johnson, J. Kaufman, J. Dossett, S. Hicks, and S. David, *National Conference
    of State Legislatures, Government to Government: Models of Cooperation
    Between States and Tribes* (2d ed., 2009) ............................................................6

*Restatement (Second) of Torts*, §581A, comment f, at 237 (1977) ..............................9

U.S. Const. am I .............................................................................................1, 2, 8, 14

Defendant High Country News ("HCN") submits the following reply memorandum in support of its special motion to strike and Fed. R. Civ. P. 12(b)(6) motion to dismiss the Complaint filed by Plaintiff John Dossett ("Dossett").

## INTRODUCTION

At its core, freedom of speech protected under the First Amendment is the right to express opinions without being punished. The good deed punished unjustly here is HCN's expression of constitutionally protected speech for the benefit of the public and Dossett's frivolous lawsuit to squelch the same. The "procedural argument" Dossett accuses HCN of "hiding from" (Dossett's Memorandum at 7), is actually "the valid exercise of First Amendment rights" protected by anti-SLAPP statutes, which exist "to limit frivolous suits brought primarily for the purpose of chilling the valid exercise of [such] rights." *Makaeff v. Trump Univ., Ltd. Liab. Co.*, 736 F.3d 1180, 1183 (9th Cir. 2013). As argued below, Dossett's claims meet this standard and, accordingly, should be stricken and/or dismissed under both ORS 31.150(2)(d) and Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

**I. Dossett's Defamation Claim Must Be Stricken Because He Has Not Met His Burden Under Oregon's Anti-SLAPP Statute.**

    **A. HCN Has Established the Applicability of ORS 31.150(2)(d).**

Dossett conflates the "public figure" prerequisite of malice with the threshold "public interest" issue required for the applicability of ORS 31.150(2)(c) and (d). Under Oregon's anti-SLAPP statute, the latter is considered first. The statute contains a "two-step burden-shifting process," *Wingard v. Oregon Family Council, Inc.*, 290 Or. App. 518, 521, 417 P.3d 545 (2018), whereby a defendant "has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct" in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. ORS 31.150(2)(c)-(d). The burden then shifts to the plaintiff under ORS 31.150(3), to establish that there is a probability that he will prevail on the claim by presenting

substantial evidence to support a prima facie case, which is the point at which the merits of the plaintiff's allegations, including the necessity of malice, are analyzed.

Anti-SLAPP statutes fundamentally change the manner with which courts resolve defamation claims. In jurisdictions without such statutes, initial motions to dismiss treat actionability of the complaint assuming the matters contained therein are true. Issues such as whether the offending words are capable of defamatory meaning or whether absolute privileges apply are common themes of motions to dismiss in non-Anti-SLAPP jurisdictions. Questions related to the merits of the claim are tested on summary judgment after discovery has been conducted. The two-step approach of ORS 31.150 authorizes courts to consider issues usually reserved for summary judgment in the second phase of the procedure. Issues related to whether the plaintiff is a public figure triggering the actual malice standard and, if so, whether the plaintiff can meet this standard are part of the second phase inquiry. Likewise, the court can make an early determination of the truth of the allegedly defamatory matter at the outset of the proceeding. The statute saves the parties from expensive motion practice and discovery on a case that will ultimately be dismissed before trial. This is one such case.

This expedited inquiry is not without protections for the plaintiff. In order for the court to consider the merits of a defamation action at the outset, a defendant must establish that the allegedly libelous communication concerns an issue of public interest. If this first requirement of the anti-SLAPP analysis is satisfied, the plaintiff must come forward with sufficient facts to sustain a prima facie case. The court examines the plaintiff's offerings as it would on a motion for summary judgment. In their Motions to Strike, Defendants have clearly demonstrated that the news stories about which Dossett complains concern the public interest.

Oregon courts have taken a broad view of what is encompassed by an "issue of public interest" afforded First Amendment protection under ORS 31.150. *See, e.g., Higher Balance, LLC v. Quantum Future Grp., Inc.*, 2008 WL 5281487, at *4 (D. Or. Dec. 18, 2008). Under the second inquiry, if Dossett cannot establish a prima facie case, the Complaint can be stricken and dismissed. Dossett's failure to allege or show malice, assuming Dossett is deemed a "public

figure" or "limited public figure," would merit dismissal.  So too would Dossett's inability to establish falsity of HCN's statements, as truth is a complete defense to a libel claim.

As to the first part of Oregon's anti-SLAPP statute, HCN contends that its article was in furtherance of its exercise of the constitutional right of free speech in connection with a public issue or issue of public interest.  The HCN story featured an internal struggle within the largest Native American rights organization in the country.  The "gist" of the story was that female employees perceived a hostile work environment leading to significant turnover in the organization, in part because of a failure of leadership in the organization.  In Section C of the Argument portion of his opposition memorandum, Dossett does not deny that sexual harassment and the #metoo movement are matters of significant public import, but rather denies that his alleged actions fall into this category because HCN's news story did not report "details" of the alleged harassment, at least as Dossett remembers the subject incidents.

Dossett offers no legal authority for his "lack of detail" defense, but rather assumes that his memory is infallible and superior to that of his female coworkers.  Dossett faults an "inebriated coworker" for misinterpreting his claimed altruistic actions.  Dossett warns of a "dangerous standard" if all news stories involving sexual harassment allegations were deemed matters of public import.  This, of course, is the same rationale that inspired the #metoo movement.  But the story went far beyond a discussion of allegations of hostile work environment within NCAI.  It also reported on the manner in which the organization dealt with these allegations and the turmoil it caused resulting in the dismissal of a significant portion of NCAI's administrative leadership.  Clearly HCN has met its burden of establishing that the story reported matters of general public interest, particularly within the Native American community.

The burden accordingly shifts to Dossett to make out his prima facie case.  Dossett's effort to do so involves submission of a thirty-page affidavit together with an eighty-eight-page addendum.  His memorandum in opposition sets forth the factual bases for his claim.  He contends that he is not a public figure and is not obliged to establish that the stories were written with malice, but even if he were deemed a public figure, HCN acted with malice.  Since truth is a

complete defense to a libel claim, he also assumes his tendered proof satisfies this element of his prima facie case. His self-serving denial that he is a public figure is in direct conflict with the allegation of his complaint that he is one of the leading authorities on American Indian law in this country and a staunch supporter of their rights. Not only has he failed to allege that the stories were written with malice, he claims that even if this standard applied, he can meet that burden of proof. Finally, when this Court focuses on the specific portions of the stories Dossett claims to be untrue, his own submissions are the best evidence of the truth of the reports.

As detailed in the following arguments, Dossett has not met his burden under ORS 31.150(3). As such, his defamation claim against HCN must be stricken.

### B. Dossett Cannot Establish a Prima Facie Case of Defamation.

#### 1. Dossett Cannot Show the Requisite Malice Required for a Public Figure or Limited Public Figure.

In stark contrast to his Complaint portrayal of himself as a well-regarded attorney of high public prominence and prestige who champions Indian rights on a national stage, Dossett now walks-back these self-laudatory representations in order to avoid a determination that he is a public figure, or limited public figure, required to show malice. In other words, while Dossett claims that his stellar reputation and public stature were sufficiently disparaged to claim significant defamation damages, his public import is conveniently just below the level required for "public figure" or "limited public figure" status. Dossett is attempting to have his proverbial cake and eat it too.

Dossett claims that because "he is not well known either by the public at large or by the target audiences of the articles posted by the Defendants," he is not a public figure. (Dossett's Memorandum at 16). He also makes the self-serving declaration that "he did not purposefully insert himself into the subject matter of these articles." (Dossett's Memorandum at 16). Dossett likens his status to the plaintiff lawyer in *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 345, 94 S. Ct. 2997, 41 L. Ed. 2d. 789 (1974). Elmer Gertz, however, was a private lawyer, whose practice did not involve representation of organizational clients with national interests. His reputation

**PAGE 4 – DEFENDANT HIGH COUNTRY NEWS' REPLY MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

was limited to the local community in which he lived and worked. In contrast to *Gertz*, there is clear evidence of Dossett's "notoriety" in national legal and academic circles and of his "pervasive involvement" and efforts to advocate for Native American interests, which qualifies him as a public figure. *Gertz*, 418 U.S. at 352.

The same holds true for the attorney in *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014), whose representative role was limited to that of a bankruptcy trustee in a single case. The controversy here does not implicate an attorney's representation in a single case, but rather Dossett's status as a prestigious high-profile male attorney, involved in legal issues on a national level, who was accused of sexual harassment. Indeed, Dossett lauded his national reputation as an Indian law advocate in his Complaint. He noted that he served as a Distinguished Practitioner in Residence at Cornell Law School, and worked extensively in Washington D.C., representing various tribes from across the nation, commuting from his home in Portland, Oregon. (Compl., ¶¶ 17-18). Dossett's national prominence as a lawyer and Indian law advocate cannot be disputed.

"[A]ttorneys whose cases address large-scale public issues or who represent prominent clients and seek extensive media attention [often] become limited-purpose public figures." *Doe No. 1 v. Burke*, 91 A.3d 1031, 1042-43 (D.C. App. 2014) (citing cases). While certainly legal representation, by itself, does not establish an individual as a public figure, if an attorney seeks "substantial publicity" "by putting out press releases and giving interviews," it is more likely the attorney will be deemed a public figure. *Id*. Additionally lawyers who occupy public leadership roles are often deemed limited public figures. *See e.g., Tate v. Bradley*, 679 F. Supp. 608, 612 (W.D. La. 1987) (finding lawyer had assumed public, leadership role in promoting Cajun culture), *aff'd on other grounds*, 837 F.2d 206 (5th Cir. 1988); *Pace v. Rebore*, 107 A.D.2d 30, 32 (N.Y. App. Div. 1985) (noting lawyer was chairman of local Republican Committee); *Bandelin v. Pietsch*, 98 Idaho 337, 340, 563 P.2d 395, 398 (1977) (lawyer's "public role" and community "prominence" were factors in court's determination that he was a limited public figure).

**PAGE 5 – DEFENDANT HIGH COUNTRY NEWS' REPLY MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

Despite his representation on page 20 of his Memorandum that "he worked in the background as legal counsel" for NCAI, it is clear that he was at the forefront of NCAI's work and national advocacy efforts and was (and is) a well-known legal lawyer, scholar, author, and panelist. *See e.g.* John H. Dossett, *Tribal Nations and Congress's Power to Define Offences Against the Law of Nations*, 80 Mont. L. Rev. 41 (Winter 2019); John Dossett, *Indian Country and the Territory Clause: Washington's Promise at the Framing* 68 Am. L. Rev. 205 (2018); John Dossett, *Justice Gorsuch and Federal Indian Law*, 43 Human Rights 7 (2017); S. Johnson, J. Kaufman, J. Dossett, S. Hicks, and S. David, *National Conference of State Legislatures, Government to Government: Models of Cooperation Between States and Tribes* (2d ed., 2009); John Dossett, *Conference Panelist*, Transcript from the National Congress of American Indians Conference at Berkeley, Cal., Nov. 17, 2006: *The New Realism: The Next Generation of Scholarship in Federal Indian Law*, 32 Am. Indian L. Rev. 1 (2007/2008).

Even if not "a public figure for all purposes," [Gertz, 418 U.S. at 351](#), Dossett certainly assumed "limited public figure" status when he inserted himself into the national #metoo controversy. And while he argues that "simply responding" to sexual harassment allegations or news stories about the same is insufficient, he offers no authority for this position. The record is clear that, as a man in a position of prestige and power who risked losing his job, he voluntarily made comments regarding the sexual harassment allegations against him, with the "purpose of influencing the controversy's ultimate resolution." [Makaeff, 715 F.3d at 266](#). Accordingly, at least with regard to the current action, Dossett is properly deemed a limited purpose public figure involved in an issue of public concern. He is required to establish that the news story in question was precipitated by malice.

In this regard, Dossett admits that while he did not specifically allege malice in his Complaint, the facts tendered in his response support such a showing. He claims that HCN acted with malice because its publication about him was done with actual knowledge or reckless disregard for the truth or falsity of the report. This is so, he argues, because "HCN was in possession of NCAI internal documents and being in contact with NCAI Board members who

had likely seen the conclusions of the external investigation." As discussed more fully, below, those documents are consistent with the truth of the matters set forth in the HCN piece.

In *Wingard v. Or. Family Council, Inc*., 290 Or. App. 518, 524, 417 P.3d 545, 548 (2018), the court stated that "[f]or purposes of the response to defendants' anti-SLAPP motion, however, the problem is that plaintiff has failed to present sufficient evidence from which a reasonable factfinder could find that defendants knew that those assertions (including the description of the relationship as 'pressured') were false (or acted with reckless disregard as to their falsity) at the time that defendants published their statements." In *Reed v. Gallagher*, 248 Cal. App. 4th 841, 862, 204 Cal. Rptr. 3d 178, 193-94 (2016), the court said that a public figure "in order to successfully defend against [an] anti-SLAPP motion" must "establish a probability that [he] will be able to produce clear and convincing evidence of actual malice." *Id.* "Put another way, [a plaintiff] must make a prima facie showing of facts demonstrating a high probability that [the defendant] published the challenged statements with knowledge of their falsity or while entertaining serious doubts as to their truth." *Id.*

Dossett has utterly failed to establish that there is a high probability that HCN published the statements with knowledge of their falsity or entertained serious doubts as to their truth. Indeed, as the following discussion reveals, it is impossible for him to do so because the statements were true.

### 2. Dossett Cannot Establish Falsity; the Facts Reported by HCN were True.

#### a. Truth is a Complete Defense to a Libel Claim.

In his memorandum opposing HCN's motion to strike and dismiss, Dossett submits a plethora of testimony and documents related to his claims. He offers this testimony as "evidence outside the four-corners of the complaint as allowed by ORS 31.150(3)." While he seeks to take advantage of his self-serving testimony, he also establishes beyond cavil, the truth of the matters reported in the HCN publication at issue.

"In ruling on an anti-SLAPP motion to strike, the court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant" and the "plaintiff's burden as to the second prong of the anti-SLAPP test is therefore akin to that of a party opposing a motion for summary judgment." *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 606 F. Supp. 2d 1266, 1271-72 (S.D. Cal. 2009) (citations omitted); *see also, Card v. Pipes*, 398 F. Supp. 2d 1126, 1135 (D. Or. 2004) (in ruling on motion to dismiss and anti-SLAPP motion to strike, the court noted that "Plaintiff has essentially admitted the truth of the two statements, and truth is an affirmative defense"). Truth as a defense is therefore properly considered.

Under both state and federal law, truth is a complete defense to a libel claim. Oregon courts have followed the traditional notion that truth is an absolute defense to defamation actions. "Substantial truth" is a defense when the "gist" of a statement is true, even if it contains slight inaccuracies. *Capital Cities/ABC, Inc.*,792 F. Supp. at 1197; *Shirley v. Freunscht,* 81 Or. App. 221, 224, 724 P.2d 907 (1986), *rev'd on other grounds*, 303 Or. 234, 735 P.2d 600 (1987).

In the landmark case, *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), the United States Supreme Court focused squarely on the First Amendment protection afforded the dissemination of truth as the primary justification for placing constitutional restrictions on the reach of common law libel claims. The Court noted that Alabama presumed that a defamatory publication was false but recognized the defense of truth. This presumption of falsity was unconstitutional the Court held, precisely because "[a]uthoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth." *Id*. at 271.

The following term, the Court reiterated that the fatal flaw in the common law of libel is its capacity to discourage the dissemination of truth. In *Garrison v State of Louisiana*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed .2d 125 (1964), the Court stated that, under the First Amendment, "[t]ruth may not be the subject of either civil or criminal sanctions where the discussion of public affairs is concerned." *Id.* at 74. The Court's 1986 ruling in *Philadelphia Newspapers Inc. v. Hepps,* 475 U.S. 767, 106 S. Ct. 1558, 89 L .Ed. 2d 783 (1986), removed all doubt that a plaintiff

must prove falsity to establish a cause of action for defamation against a media defendant. There, the owner of a chain of convenience stores brought a libel suit arising out of a series of stories that suggested the owner had ties to organized crime and used those links to influence Pennsylvania's governmental process. The trial court found that Pennsylvania's statute placing the burden of establishing the truth on the defendant was unconstitutional and, accordingly, instructed the jury that the plaintiff bore the burden of proving the truth of the challenged statements. The Pennsylvania appellate court reversed the trial court's determination that the statute was unconstitutional, and the defendant obtained certiorari. Writing for the majority, Justice O'Conner determined that the Pennsylvania Supreme Court had erred in finding the statute constitutional. Noting that the articles involved matters of public concern, Justice O'Conner explained that "the common law rule on falsity – that the defendant must bear the burden of proving truth – must . . . fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages." *Id*. at 776. Not only does a libel plaintiff bear the burden of proving falsity, but it must do so by "clear and convincing evidence." *Firestone v. Time, Inc.* 460 F.2d 712, 722 (5th Cir.) *cert. denied*, 409 U.S. 875 (1972); *Cobb v. Time, Inc*. 1995 WL 861518 (M.D. Tenn. 1995); *Masson v. New Yorker Magazine, Inc.* 85 F.3d 1394 (9th Cir. 1996) (affirming defense verdict based on jury instruction that plaintiff must prove by a preponderance of the evidence that one or more of the challenged quotations was false"); *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 820 n. 5 (9th Cir. 1995) (noting that Washington state courts have not decided burden for proving falsity, but dismissing because plaintiffs had "failed to meet the more generous preponderance of evidence standard.") *cert. denied,* 116 S.Ct. 1567 (1996).

### b. Substantial Truth is All that is Required.

The *Restatement (Second) of Torts*, §581A, comment f, at 237 (1977) states that it "is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." It is

sufficient to show that the imputation is substantially true, or, as it is often put, to justify the "gist," the "sting" or the "substantial truth" of the defamation. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 516-17, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991). The U.S. Supreme Court in *Masson* explained that "minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting of the libelous charge be justified.'" 501 U.S. at 517 (citation omitted).

Ordinarily issues related to whether the statement is substantially true are raised on summary judgment. Indeed, a number of cases have been resolved by courts on the issue of substantial truth. *See e.g., Stilts v. Globe Int'l Inc*. 1996 WL 370142 (6th Cir. 1996) (no triable issue of fact exists where the "gist" of an article is substantially true); *Patrick v. Cleveland Scene Publ. LLC*, 2009 WL 4981690 (6th Cir. 2009) (unpublished); *Chapin v Knight- Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993); *Norse v. Henry Holt & Co.* 991 F.2d 563 (9th Cir. 1993); *Simonson v. UPI,* 654 F.2d 478 (7th Cir. 1981); *Hickey v. Capital Cities/ABC, Inc.,* 792 F. Supp. 1195 (D. Or. 1992); *Dworkin v. L.F.P., Inc*. 839 P.2d 903 (Wyo. 1992); *Read v. Phoenix Newspapers, Inc.* 169 Ariz. 353, 819 P.2d 939 (1991).

In *Jones v. Globe Int'l. Inc.,* 1995 WL 819177 * 8 (D. Conn.) for example, the court concluded that a criminal conviction collaterally estopped Marla Trump's publicist from challenging reports of his arrest for stealing Ms. Trump's shoes and other personal items. *See also Cobb v. Time, Inc.* 1995 WL 861518 * 6 (M.D. Tenn.) ("where the parties agree about the factual distinction between the statement published and the underlying truth, 'the question of whether a statement is substantially accurate is one of law for the court to decide'") (citation omitted); *Overby v. KPTV Television Inc*., 1995 WL 860298 * 2 (D. Or.) ("in the absence of a dispute as to the underlying facts, the question of whether the alleged defamatory statements were substantially true is one of law for the court").

Here, the issue is not whether Dossett committed acts of sexual harassment or sexual assault. The issue is whether the October 18, 2018 news story, published by HCN is substantially true. In the context of a special motion to strike and/or motion to dismiss under Oregon's anti-SLAPP statute, the more discrete issue for this Court is whether Dossett can

**PAGE 10 – DEFENDANT HIGH COUNTRY NEWS' REPLY MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

produce sufficient evidence to permit a jury to determine, under a clear and convincing standard of proof, that the HCN report in question is false. As argued below, Dossett cannot meet his burden. The gist of the report is accurate.

### c. The Materials Submitted by Dossett in Response to HCN's Motion to Strike and Dismiss Establish that the Gist of the Report is Substantially True.

The "gist" of Dossett's libel claim against HCN is found in Paragraph 78 of his Complaint. There, he alleges the report that "Former NCAI attorney John Dossett is accused of unwanted touching of a female employee and of making crude sexual remarks to coworkers at a 2016 Convention." The story also reported that "[i]n March of 2017, whistleblowers contacted NCAI's then president Brian Cladoosby, to report a hostile work environment, [Jacqueline] Pata's repeated attempts to circumvent protocol and the organization's refusal to investigate the Spokane sexual harassment incident." Dossett's libel per se claims arise solely from these two statements, which he claims are false and defamatory. (Complaint, ¶ 78).

In his declaration, Dossett devotes several pages of his affidavit to explain his version of the events occurring in Spokane on June 30, 2016, the last day of the NCAI Convention. (See Spokane Incident and Investigation, pp 6-8, Dossett affidavit.) While he admits to having physical contact with an inebriated female colleague, he contends that the contact did not constitute sexual harassment. He does, however, admit that Jacqueline Pata, the Executive Director of NCAI, contacted him about the incident stating that the colleague "felt uncomfortable that maybe [he] had intended to take advantage of her." (Dossett Dec. Para 26, p. 7). He further states that in connection with this incident, Ms. Pata asked him to take a course in preventing sexual harassment in the workplace. (Dossett Dec. Para. 27, p, 8).

It is important to note that the HCN story did not claim that Dossett committed sexual harassment. The issue before this Court at this juncture is whether he was accused of unwanted touching of a female employee. Clearly, the "gist" of the facts as set forth in his own declaration support the HCN report that he was "accused of unwanted touching by a female employee."

**PAGE 11 – DEFENDANT HIGH COUNTRY NEWS' REPLY MEMORANDUM IN
SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

HCN also reported that Dossett had been accused of making crude sexual remarks to co-workers. In his declaration, Dossett admits that "a former NCAI employee, Sarah Pytalski, filed a false claim that I made a joke about masturbation." He actually attached the report as Exhibit BB to his declaration. Exhibit BB entitled "Official Report of Sexual Harassment" signed by Sarah C. Pytalski, NCAI's Policy and Research Manager, recites an incident occurring on the last day of the 2016 NCAI Convention (the same day as the unwanted touching incident) in which Dossett was engaged in a conversation with Pytalski about what the two of them would do while waiting for the dinner hour. Dossett asked Pytalski what she was going to do and she answered "I don't know . . . I'm probably going to take a nap." She claims his response was: "Alright, I guess I'll go beat off in my room, then." She claimed to be shocked and appalled that he would make a reference to masturbation . . . [it] was completely repugnant and made me feel deeply uncomfortable."

Dossett denies having made the comment and argues that Pytalski's statement was part of a political coup within NCAI. However, for the purposes of his libel claim, the question is not whether he made the statement but whether he was *accused* of making a crude sexual remark to co-workers at the 2016 convention. His own declaration and accompanying documentation support the truth of the fact that he was accused of making crude sexual comments at the convention . . . precisely as HCN reported.

As referenced above, the second piece of the story about which Dossett complains concerns a report that "[i]n March of 2017, whistleblowers contacted NCAI's then president Brian Cladoosby, to report a hostile work environment, Pata's repeated attempts to circumvent protocol and the organization's refusal to investigate the Spokane sexual harassment incident." In his declaration, Dossett attaches a six-page report from NCAI Director of Operations, Nicole Hallingstad, dated April 22, 2017, to NCAI President Brian Cladoosby as Exhibit AA. The gist of the report is that Executive Director Jackie Pata had not only failed to deal with the Spokane complaints but the hostile work environment generally among female employees at NCAI: precisely as HCN reported. Again, the issue before the Court in this case is whether the report

that "whistleblowers contacted NCAI's then President Brian Cladoosby to report a hostile work environment, Pata's repeated attempts to circumvent protocol and the organization's refusal to investigate the Spokane sexual harassment incident" is true. The Hallingstad letter goes into great detail about her concerns that these "problems" were not being dealt with properly by NCAI.

While Dossett goes to great lengths to attack the substance of the allegations, the fact that these accusations were made as reported by the HCN piece is indisputable. Based on his own filings, it is clear that Dossett will be unable to establish, by clear and convincing evidence, that the story, itself, is false. Accordingly, his defamation Complaint against HCN should be dismissed.

### C. Dossett is Not Entitled to Attorney Fees.

Dossett argues that the instant motion is frivolous and made for the purpose of delay. On this basis, he seeks an award of his reasonable attorney fees associated with defending the motions filed by the Defendants under ORS 31.152. As the foregoing arguments and authorities demonstrate, the motion is meritorious, not frivolous. At the very least, the motion is well-grounded in fact and warranted by existing law. HCN submits it is Dossett's defamation action which is frivolous, justifying an award of fees to HCN. "A defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." ORS 31.152(3). Dossett's request for attorney fees should be denied.

## II. Dossett's Negligence Claim Must Be Dismissed.

Dossett has conceded that his derivative claims must be dismissed if related to his defamation action, however, it is his position that he will prevail on the anti-SLAPP motion to strike and therefore his derivative claim for intentional interference with economic relations should remain. Based on the arguments and authorities asserted above, HCN should prevail on its anti-SLAPP motion to strike, and the remaining derivative negligence claim should also be dismissed.

## CONCLUSION

As evidenced from the foregoing, HCN's news story is protected by the [First Amendment](#) and Dossett has not met his burden under Oregon's anti-SLAPP statute to avoid dismissal. Dossett has not, and cannot, establish a prima facie case of defamation against HCN because: 1) truth is a complete defense; and 2) he is a public figure or limited purpose public figure and he provides no evidence that the stories were precipitated by malice. Accordingly, Defendant HCN respectfully requests the Court to strike and/or dismiss Plaintiff Dossett's Complaint and claims against HCN.

DATED this 10th day of December, 2019.

> Ryan M. Bledsoe
> TONKON TORP LLP
> 888 SW Fifth Avenue, Suite 1600
> Portland OR, 97204
>
> **MELOY LAW FIRM**
>
> By: */s/Peter Michael Meloy*
> Peter Michael Meloy
>
> *Attorneys for Defendant High Country News*

# CERTIFICATE OF SERVICE

This is to certify that on the 10th day of December, 2019, a true and exact copy of the foregoing document was served electronically via the CM/ECF system which will generate a Notice of Electronic Filing on:

B. Scott Whipple
Whipple Law Office LLC
1675 SW Marlow Ave. Ste 201
Portland OR 97225

Andrew L. Paris
Andrew Paris Law
1500 SW First Ave. Ste 1170
Portland OR 97201

Anthony Broadman,
Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115

Nicole E. Ducheneaux, *Pro Hac Vice*
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South
Bellevue, NE 68005

Scott J. Aldworth,
Susan T. Alterman,
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR 97204

                                                */s/ Peter Michael Meloy*
                                                Peter M. Meloy

041019/00001/10610797v1

**PAGE 1 – CERTIFICATE OF SERVICE**