IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN H. DOSSETT,                                     Case No. 3:19-cv-01386-SB

               Plaintiff,               **OPINION AND ORDER**

      v.

HO-CHUNK, INC., a tribal corporation
formed by the Winnebago Tribe of Nebraska,
NOBLE SAVAGE MEDIA, LLC, a limited
liability company of unknown origin, THE
NATIONAL CONGRESS OF AMERICAN
INDIANS OF THE UNITED STATES AND
ALASKA, an Oklahoma nonprofit corporation,
and HIGH COUNTRY NEWS, a Colorado
nonprofit corporation,

               Defendants.

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff John H. Dossett ("Dossett") filed this action against Ho-Chunk, Inc. ("Ho-Chunk"), Noble Savage Media, LLC,[1] the National Congress of American Indians of the United States and Alaska ("NCAI"), and High Country News ("HCN") (together, "Defendants"),

---

[1] On Dossett's unopposed motion, the Court dismissed defendant Noble Savage Media, LLC, on July 9, 2020. (ECF No. 67.)

asserting state law claims for defamation, intentional interference with economic relations, and negligence. Defendants HCN, Ho-Chunk, and NCAI filed separate motions to dismiss and strike (ECF Nos. 30, 35, and 41) pursuant to Oregon's anti-SLAPP statute (OR. REV. STAT. § 31.150) and FED. R. CIV. P. 12(b)(6). Ho-Chunk filed a renewed motion to dismiss (ECF No. 55), and Dossett filed a motion for leave to amend the complaint (ECF No. 53).

The Court has jurisdiction pursuant to 28 U.S.C. § 1332, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court grants Defendants' motions to dismiss and strike, and denies as moot Dossett's motion to amend the complaint.

## BACKGROUND

Dossett began working for NCAI as a staff attorney in 1995, and served as NCAI's general counsel from 1997 to 2018. (Compl. ¶ 11.) NCAI is a 501(c)(4) "social welfare organization serving as a forum for policy development and advocacy on behalf of its membership of tribal governments and individual Native people." (Compl. ¶ 13; Pl.'s Opp'n at 9.) Indian Country Today ("ICT") "is a digital news platform wholly owned by NCAI." (Compl. ¶ 13.)

Ho-Chunk is a tribal government corporation formed by the Winnebago Tribe of Nebraska. (Compl. ¶ 12.) Ho-Chunk operates the news media website Indianz.com. (*Id.*) HCN is a nonprofit "media organization located in Paonia, Colorado[.]" (Compl. ¶ 14.)

Dossett is a "nationally recognized expert on tribal sovereignty and jurisdiction, tribal lands and natural resources, taxation, and public safety in Indian country." (Compl. ¶ 15.) Up until "the time of events in this matter, [Dossett] was an Adjunct Professor at the Northwestern School of Law of Lewis & Clark College." (Compl. ¶ 17.)

On August 31, 2018, Indianz.com published an online news article headlined "Prominent Indian Country Attorney Reassigned After #MeToo Allegations," with a subheading stating, "You are a pretty young Native woman, beware.'" (Compl. ¶¶ 54-61.) On September 2, 2018, ICT republished the same allegations in an article titled, "NCAI Attorney John Dossett Under Fire After #MeToo Allegations." (Compl. ¶¶ 62-68.)

On October 3, 2018, NCAI asked Dossett to resign, but Dossett refused. (Compl. ¶ 44.) NCAI terminated Dossett's employment on the same day. (*Id.*) In the same timeframe, Lewis and Clark Law School suspended Dossett's employment as an adjunct professor. (Compl. ¶ 45.)

On October 11, 2018, ICT published a second online article concerning workplace misconduct allegations against Dossett, titled "Transparency Demanded in NCAI's Handling of Staff Lawyer and #MeToo Allegations." (Compl. ¶¶ 69-75.) On October 18, 2018, HCN published an article titled "[NCAI] Roiled by Claims of Harassment and Misconduct." (Compl. ¶¶ 76-84.) On October 23, 2019, Indianz.com published an online article titled "National Congress of American Indians Opens Annual Convention Amid Controversy." (Compl. ¶¶ 85-90.)

Dossett denies the "false allegations and innuendo" in these news articles, and alleges that the articles have resulted in the loss of his employment and destruction of his reputation, career, and future opportunities, and emotional distress. (Compl. ¶¶ 5, 51, 53.) Dossett seeks $6,113,286 in damages. (Compl. at 31.)

///

///

///

## DISCUSSION

I.    **LEGAL STANDARDS**

    A.    **Anti-SLAPP Motions**

        1.    **Anti-SLAPP Motions in Oregon Courts**

Oregon's anti-SLAPP statute,[2] OR. REV. STAT. § 31.150, "creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage." *Neumann v. Liles*, 358 Or. 706, 723 (2016). Application of Oregon's anti-SLAPP statute is a "two-step burden-shifting process." *Wingard v. Or. Family Council, Inc.*, 290 Or. App. 518, 521 (2018). The moving defendant must first demonstrate that "the claim against which the motion is made arises out of" statements or conduct protected by OR. REV. STAT. § 31.150(2). The statute protects, in relevant part, "[a]ny . . . written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest" and "[a]ny other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." OR. REV. STAT. § 31.150(2).

If the defendant meets its burden, the plaintiff must "establish that there is a probability that [he] will prevail on the claim by presenting substantial evidence to support a prima facie case." OR. REV. STAT. § 31.150(3). Substantial evidence means enough evidence from which a reasonable trier of fact could find that the plaintiff has met his burden of production. *See Handy v. Lane Cty.*, 360 Or. 605, 623 (2016) ("In using terms like 'probability' and 'substantial evidence,' the legislature did not intend to require a plaintiff to do more than meet its burden of production.").

---

[2] "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation." *Young v. Davis*, 259 Or. App. 497, 499 (2013).

The second step of the analysis is typically not constrained to the pleadings. *See Bryant v. Recall for Lowell's Future Comm.*, 286 Or. App. 691, 693 (2017) (considering "facts as provided in the pleadings and the supporting and opposing declarations and exhibits submitted"); *see also* OR. REV. STAT. § 31.150(4) ("[T]he court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."). When presented with conflicting evidence, courts "adopt the version that is most favorable to plaintiff, so long as it is supported by substantial evidence." *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 816 (2016) (citation omitted). Courts consider a defendant's opposing evidence "'only to determine if it defeats plaintiff's showing as a matter of law.'" *Bryant*, 286 Or. App. at 693 (citing *Plotkin*, 280 Or. App. at 816).

### 2.    Anti-SLAPP Motions in Federal Court

Federal courts generally apply state substantive law and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Although anti-SLAPP motions appear to be a procedural mechanism to vindicate existing substantive rights, they are generally allowed in federal court. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999) (holding that some of California's anti-SLAPP provisions do not "directly interfere with the operation" of the Federal Rules of Civil Procedure); *see also Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (applying Oregon's anti-SLAPP statute). However, the Ninth Circuit has held that not all provisions of a state anti-SLAPP statute apply in federal court. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (holding that "the discovery-limiting aspects of [anti-SLAPP motions] collide with the discovery-allowing aspects of Rule 56"); *see also AR Pillow Inc., v. Maxwell Payton, LLC*, No. C11-1962-RAJ, 2012 WL 6024765, at *3 (W.D. Wash. Dec. 4, 2012) ("[T]he Ninth Circuit's holding that the automatic

stay of discovery in California's statute does not apply in federal court applies equally to [Washington's anti-SLAPP statute].").

To eliminate any lingering conflict, the Ninth Circuit recently adopted a tiered approach to anti-SLAPP motions. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834. By contrast, "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, . . . the Federal Rule of Civil Procedure 56 standard will apply." *Id.* If the defendant's motion challenges the factual sufficiency of a claim, "discovery must be allowed . . . before any decision is made by the court." *Id.* This is because "[r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure."[3] *Id.*; *see also Chase v. Gordon, Aylworth & Tami, P.C.*, Case No. 3:18-cv-00568-AC, 2020 WL 1644310, at *13 (D. Or. Feb. 14, 2020) ("Here, there has been no discovery, and the court examines only the legal sufficiency of the Defendants' anti-SLAPP motion to strike under Rule 12(b)(6)." (citing *Miller*, 2019 WL 1871011, at *4)).

///

///

---

[3] This Court has previously recognized that this interpretation appears to defeat the purpose of an anti-SLAPP motion, and converts it to a standard Rule 12(b)(6) motion to dismiss (with the exception that a successful anti-SLAPP motion allows for an award of attorney's fees). *See Miller v. Watson*, No. 3:18-CV-00562-SB, 2019 WL 1871011, at *4 (D. Or. Feb. 12, 2019), *adopted*, 2019 WL 1867922 (D. Or. Apr. 25, 2019)).

B.    **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

## II.    HO-CHUNK'S MOTION TO DISMISS

Defendant Ho-Chunk moves to dismiss Dossett's claims on the ground that "[Ho-Chunk] is an arm of the Winnebago Tribe of Nebraska and is cloaked in the Tribe's immunity such that this Court lacks jurisdiction." (Ho-Chunk's Mot. Dismiss at 7.) Dossett informed the Court prior to and during oral argument that he does not oppose Ho-Chunk's argument. (*See* Pl.'s Feb. 21, 2020 Letter, Decl. of Nicole Duchenaux Ex. A, ECF No. 51.) Accordingly, the Court grants Ho-Chunk's unopposed motion to dismiss all claims against Ho-Chunk, and dismisses Dossett's claims against Ho-Chunk without prejudice. *See Everist v. U.S.D.A*, No. 1:12-cv-00753-CL, 2012 WL 2367393, at *4 (D. Or. June 7, 2012) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice[.]") (citations omitted).

In light of the fact that the Court lacks subject matter jurisdiction over Dossett's claims against Ho-Chunk, the Court denies as moot Ho-Chunk's motion to strike and dismiss to the extent the motion seeks dismissal on grounds other than sovereign immunity.

III.    ANTI-SLAPP MOTIONS TO STRIKE

NCAI and HCN move to strike Dossett's complaint pursuant to Oregon's anti-SLAPP

statute on the ground that the news articles are protected speech and Dossett is unable to meet his

burden of showing a likelihood of success on the merits of his claims. (HCN's Mot. at 9-14;

NCAI's Mot. at 18-32.) The Court agrees.

### A.    Step One: Protected Statements

At the first step of the anti-SLAPP analysis, the defendants must demonstrate that the

challenged statements fall within one of the categories protected by Oregon's anti-SLAPP

statute. Defendants argue that the articles at issue are protected under sections 2(c) and (d) of the

statute: "(c) Any . . . written statement or other document presented, in a place open to the public

or a public forum in connection with an issue of public interest; or (d) Any other conduct in

furtherance of the exercise of the . . . constitutional right of free speech in connection with a

public issue or an issue of public interest." OR. REV. STAT. § 31.150(2). (NCAI's Mot. at 18-19;

HCN's Mot. at 9-11.) Dossett does not dispute that the statements were made in a public forum,

but argues that the subject matter of the articles was not a matter of public interest. (Pl.'s Opp'n

at 20-23.)

HCN and NCAI published the news articles online, and therefore the Court agrees that

the public forum requirement is satisfied here. *See Card v. Pipes*, 398 F. Supp. 2d 1126, 1136 (D.

Or. 2004) (finding that online news articles were published in a public forum); *Barrett v.

Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public

forums' for purposes of the anti-SLAPP statute.") (citations omitted).[4]

---

[4] "Oregon courts look to California case law in construing Oregon's anti-SLAPP statute
because Oregon's law was 'modeled on California statutes' and '[i]t was intended that California
case law would inform Oregon courts regarding the application of ORS 31.150[.]'" *Zweizig v.
Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016 WL 5402935, at *2 (D. Or. Sept. 24,

Further, the Court finds that the subject matter of the challenged news articles was an issue of public interest. The term "public interest" includes "*any issue in which the public is interested*[,]" and the issue need not be "significant" to be protected. *Guzman v. Finch*, No. 19cv412-MMA (MDD), 2019 WL 1877184, at *5 (S.D. Cal. Apr. 26, 2019) (outlining a list of factors courts should consider); *Higher Balance, LLC v. Quantum Future Grp., Inc.*, No. 08-233-HA, 2008 WL 5281487, at *5 (D. Or. Dec. 18, 2008) (holding that challenged statements were made in connection with an issue of public interest and noting that "[t]his conclusion is consistent with the broad definition of public interest applied by other federal courts as well as by Oregon's state courts"). Here, alleged workplace misconduct by the highest-ranking legal officer of the oldest and largest organization of American Indian and Alaska Native tribal governments is a matter of public interest, both because of the size and national scope of the organization and its member tribes and the nature of the allegations published during a national conversation about sexual harassment in the workplace. *See, e.g., Guzman*, 2019 WL 1877184, at *5 (finding that the defendant's Facebook post about alleged sexual abuse was not a private controversy because the post was "akin to domestic violence[,]" which courts have "found to be of widespread public interest"); *cf. Grenier v. Taylor*, 234 Cal. App. 4th 471, 483 (2015) (affirming finding that "allegations of abuse by members of the clergy and the protection of children concern issues of public interest"); *Higher Balance*, 2008 WL 4966771, at *5 (holding that online posts relating to alleged sexual abuse by a business owner were of public interest).

Dossett appears to acknowledge that sexual harassment in the workplace may be of public interest, but argues that what he did was not sexual harassment. *See* Pl.'s Opp'n at 20

2016) (quoting *Page v. Parsons*, 249 Or. App. 445, 461 (2012)); *Handy*, 360 Or. at 623, n.12 (noting that California anti-SLAPP cases decided after 2001 are persuasive regarding the interpretation of Oregon's anti-SLAPP statute).

PAGE 9 – OPINION AND ORDER

("These articles were not about sexual harassment, they were about Dossett walking an inebriated coworker two blocks to a hotel lobby and allegedly making a joke about masturbation (which he denies)."). However, allegations of sexual harassment in the workplace are in the public interest even if the allegations are disputed (and of course, they usually are). *See Todd v. Lovecruft*, Case No. 19-cv-01751-DMR, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) (finding that "accusations of abuse on their own can serve the interest of the public at large"); *see also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc*., 946 F. Supp. 2d 957, 969 (N.D. Cal. 2013) ("By asserting that the statements are not in the public interest because they are false, plaintiffs urge the Court to 'read a separate proof-of-validity requirement into the operative sections of the statute,' which this Court cannot do.") (citation omitted).

Dossett also argues that the subject matter of the articles is not of public interest because the events at issue involved only two employees and was "not likely of any interest to anyone outside of NCAI even if true[.]" (Pl.'s Opp'n at 22.) The Court disagrees. Alleged workplace misconduct by the highest-ranking legal officer in a national organization that resulted in discipline is of interest to more than just the alleged victims of the misconduct, as it puts future employers, colleagues, and others on notice of alleged misconduct and resulting discipline. To hold that alleged sexual harassment in a large national organization is not in the public interest would ignore the important principles underlying the recent movement to encourage alleged victims to speak up instead of covering up misconduct and risking the future victimization of others.

///

///

///

Nevertheless, even if the articles were of interest only to NCAI members, which Dossett

acknowledges, that audience is large enough to qualify as in the "public interest."[5] *See, e.g.,*

*Todd*, 2020 WL 60199, at *13 (holding that sexual harassment and assault allegations about

professional colleague posted on Twitter were in the public interest in part because of the size of

the industry in which the parties worked); *Grenier*, 234 Cal. App. 4th at 483 (holding that

alleged defamatory statements about a church pastor were in the "public interest" where the

church had between 550 and 1,000 members).

The Court finds that the articles at issue are written statements in a public forum in

connection with an issue of public interest, and therefore qualify for the protection of Oregon's

anti-SLAPP statute.

### B.      Step Two: Likelihood of Success on the Merits

Defendants have met their burden at the first step of the anti-SLAPP analysis, and

therefore the burden shifts to Dossett to "establish that there is a probability that [he] will prevail

on the claim by presenting substantial evidence to support a prima facie case." OR. REV. STAT. §

31.150(3). In light of the Ninth Circuit's guidance in *Planned Parenthood*, the Court applies the

Rule 12(b)(6) standard to evaluate whether Dossett has stated a defamation claim, and therefore

does not consider the extrinsic evidence submitted by Dossett.[6] *See Zweizig*, 2018 WL 6062316,

at *2 (denying the plaintiff's motion for reconsideration of the court's decision to grant an anti-

SLAPP motion before allowing for discovery because "applying the standards outlined in

---

[5] NCAI is the "the nation's largest Indian tribal membership organization[.]" *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1098 (D.N.M. 1999) (noting that in 1999, NCAI included 250 member tribes).

[6] For the same reason, the Court denies Dossett's request to compel NCAI to produce discovery or postpone resolution of the anti-SLAPP motions pending further discovery. (Pl.'s Opp'n at 7-8.)

*Planned Parenthood*," the claim was "legally insufficient" as it involved "an opinion statement protected by the First Amendment"); *Clifford v. Trump*, 339 F. Supp. 3d 915, 922 (C.D. Cal. 2018) (finding that an anti-SLAPP motion is analogous to a motion to dismiss where the defendant argued, in part, that the defamatory statements were protected opinions).

### 1.    Legal Standards

Dossett asserts a defamation claim, separated into five separate counts: Count One (Aug. 31, 2018 Indianz.com article); Count Two (Sept. 2, 2018 Indian Country Today article); Count Three (Oct. 11, 2018 Indian Country Today article); Count Four (Oct. 18, 2018 High Country News article); and Count Five (Oct. 23, 2018 Indianz.com article). Dossett attached the articles to his complaint. (*See* Compl. Exs. A-E.)

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann*, 358 Or. at 711 (quoting *Wallulis v. Dymowski*, 323 Or. 337, 342-43 (1996)). "A defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff].'" *Neumann*, 358 Or. at 711 (quoting *Farnsworth v. Hyde*, 266 Or. 236, 238 (1973)). "In the professional context, a statement is defamatory if it falsely 'ascribes to another, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession.'" *Id.* at 711-12 (quoting *Brown v. Gatti*, 341 Or. 452, 458 (2006)). In this context, defamation by written or printed words is actionable without proof of any special harm. *Id.* at 712.

"To be actionable, a communication must be both false and defamatory." *Reesman v. Highfill*, 327 Or. 597, 603-04 (1998) (citing *Harley–Davidson v. Markley*, 279 Or. 361, 364

(1977)); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) ("[A]

private-figure plaintiff must bear the burden of showing that the speech at issue is false before

recovering damages for defamation from a media defendant.").[7] "The court, rather than the jury,

determines whether a communication is capable of a defamatory meaning." *Reesman*, 327 Or. at

604 (citing *King v. Menolascino*, 276 Or. 501, 504 (1976)); *Gardner*, 563 F.3d 981 at 986

("Whether an allegedly defamatory statement is one of opinion or fact is a question of law."). "In

making that determination, the court looks to the context in which the communication was

made." *Reesman*, 327 Or. at 604 (citing *King*, 276 Or. at 504). "A communication can be

defamatory on its face[,]" but "[e]ven a communication that is not defamatory on its face may be

defamatory if a reasonable person could draw a defamatory inference from the communication."

*Reesman*, 327 Or. at 604 (citing *Andreason v. Guard Publ'g Co.*, 260 Or. 308, 310-11 (1971)

and *King*, 276 Or. at 504)).

### 2.    Falsity

Several of the specific statements that Dossett challenges as defamatory were not false, as

demonstrated by the facts he pleads in the complaint. Therefore, those statements cannot be

defamatory as a matter of law.

Dossett alleges that statements in the articles referencing NCAI's investigation of

Dossett's conduct do not clearly include the result of the investigations:

- "The terrible secret was apparently exacerbated by NCAI's documented inability to fully resolve complaints of sexual harassment and other allegations of misconduct."

---

[7] The case Dossett cites for the rule that falsity is presumed and that the defendant bears the burden to prove truth as a defense pre-dated *Philadelphia Newspapers*. *See* Pl.'s Opp'n at 31 n.107 (citing *Fowler v. Donnelly*, 225 Or. 287 (1960)).

- ". . . repeated attempts to resolve complaints against Dossett went nowhere . . . at least until the internal review this year."

- "In March of 2017, whistleblowers contacted NCAI's then-president, Brian Cladoosby, to report a hostile work environment, Pata's repeated attempts to circumvent protocol, and the organization's refusal to investigate the Spokane sexual harassment incident."

(Compl. ¶¶ 56, 78.) However, Dossett acknowledges in his complaint that a colleague lodged a complaint about his alleged misconduct stemming from a June 2016 conference, that NCAI investigated the matter, and that NCAI closed the matter with no action. (Compl. ¶¶ 21-22.) Dossett asserts that the statements in the article are misleading because NCAI completed its investigation of the complaint without any resulting discipline, but the challenged statements do not suggest otherwise. Rather, the statements assert the investigation did not "fully resolve" the complaint and that attempts to resolve the complaint "went nowhere." Dossett's own allegations demonstrate that the complaint was not fully resolved, but in fact was subject to a subsequent investigation, and he further acknowledges that the original complaint resulted in no discipline. For these reasons, the statements are not actionable because they are not false.[8] *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (holding that, to be actionable, a declarant's statement must be provable as false).

Dossett also challenges the statement about his reassignment, alleging that it does tell the whole story:

- "The highest-ranking attorney at the National Congress of American Indians has been reassigned in the wake of sexual harassment allegations, an investigation by Indianz.com has found."

---

[8] To the extent the statements that the complaint was not "fully resolved" or "went nowhere" are statements of opinion, *see* the following section.

(Compl. ¶ 57.) Dossett asserts that the statement suggests he was reassigned as a result of "actual sexual harassment," when in fact he was reassigned due to other non-sexual harassment complaints. (Compl. ¶¶ 57, 87.) However, the statement does not represent, or even imply, that Dossett was reassigned after a finding of sexual harassment. Rather, it says that Dossett was reassigned "*in the wake of* sexual harassment *allegations*," not as a result of any finding or resolution of the allegations. In any event, the complaints for which he acknowledges he was reassigned included "unprofessional and inappropriate behavior" and "sexually-charged comments" (Compl. ¶¶ 30-32), which are also allegations of sexual harassment.[9] Thus, whether the article was referring to the initial sexual harassment allegation or the subsequent allegations, the statement that Dossett was reassigned "in the wake of" sexual harassment allegations was not false, by Dossett's own admissions.

Dossett also challenges the republication of his own public statements in the articles:

- "In the document, Dossett said he 'never harassed' the employee, though he admits he 'totally restrained' her by the arm during the incident in question. He also said he 'held' the woman's hand in what he characterized as an attempt to assist her after a long day of work at the 'end of a big meeting.' Even as he offered an apology for his behaviors, he suggested that he had justification to act in that manner. He said he was concerned about the employee's well-being, saying that she was 'really tired' and was affected by 'maybe too many beers.'"

(Compl. ¶ 57.) Dossett argues that the statement "strongly implies sordid conduct where Mr. Dossett appears to force the employee into some sort of sexual contact" (*id*.), but the statement is a direct quote from Dossett himself. He is the one who used the phrase "totally restrained" the

---

[9] NCAI's employee handbook defined sexual harassment to include "verbal or physical conduct of a sexual nature including, but not limited to, sexually-related . . . jokes, . . . or other sexually-related comments." (Employee Handbook at 8, NCAI's Mot. Ex. 1, ECF No. 41-1.) The Court takes judicial notice of NCAI's employee handbook because Dossett referenced and quoted the employee handbook in his complaint. *See* Compl. ¶ 98; *see also Tolman v. Am. Red Cross*, 874 F. Supp. 2d 928, 932 (D. Idaho 2012) (taking judicial notice of employee handbook referenced in complaint).

woman's arm and "held" her hand after she had "maybe too many beers." (*Id.*) Dossett does not

allege that he was misquoted, and he cannot base a defamation claim on his own, accurately-

quoted statements. *See LKS Enter. LLC v. City of Silverton*, No. 6:16-cv-00785-MC, 2017 WL

890085, at *8 (D. Or. Mar. 6, 2017) (rejecting the plaintiff's unsupported argument regarding

"halftruths").

       Dossett also alleges that this statement about the allegations was false and misleading:

- "Former NCAI Attorney John Dossett is accused of unwanted touching of
  a female employee and of making crude sexual remarks to coworkers at a
  2016 conference."

(Compl. ¶ 78.) However, as discussed, Dossett acknowledges that those were the relevant

allegations.

       Dossett challenges the publication of NCAI President Jefferson Keel's statement about

NCAI's investigation of Dossett:

- "Earlier this year, NCAI hired an external investigator who investigated two
  specific allegations of sexual harassment against John Dossett, one of which had
  been the subject of an earlier internal investigation. In conducting this
  investigation, the external investigator spoke with many current and former
  employees, including some former employees who learned about the investigation
  and requested an opportunity to speak. The investigation concluded with
  recommendations that NCAI promptly implemented."

(Compl. ¶ 70.) Dossett asserts this statement is defamatory because it "lead[s] the reader to

believe that Mr. Dossett's demotion was related to allegations of sexual harassment" and "NCAI

had investigated both incidents and concluded that no sexual harassment had taken place." (*Id.*)

As discussed above, Dossett acknowledges he was reassigned as a result of "unprofessional and

inappropriate behavior," including "sexually-charged comments" (Compl. ¶¶ 30-32), and

therefore President Keel's statements were not false. Indeed, the same article included Dossett's

email statement, in which he acknowledged he was disciplined for, among other things,

"sexually charged comments," and the article directed readers to Dossett's full eight-page statement posted online. (Compl. Ex. C. at 1-2.)

Finally, Dossett challenges the publication of President Keel's statements at NCAI's annual meeting:

- "NCAI doesn't condone harassment of any kind in the workplace, nor have we, nor will we, tolerate it anymore," Keel said. "We will take action when it occurs in the future just like we did in the situation at hand."

(Compl. ¶ 86.) Although Keel did not mention Dossett by name, Dossett alleges that Keel's statement was defamatory because it falsely states that "sexual harassment occurred 'in the situation at hand'" when Dossett "was, in fact, demoted for non-sexual harassment grounds." (Id.) On the contrary, Keel used the phrase "harassment," not "sexual harassment," and Dossett acknowledges that he was demoted for, among other things, misconduct that qualifies as harassment.

The Court finds that with respect to the challenged statements above, the facts alleged in the complaint demonstrate that the statements are not false, and therefore are not actionable.[10]

### 3.    Statements of Opinion

With respect to the remaining statements, the Court finds that they are non-actionable statements of opinion.

It is well settled that the First Amendment protects statements of opinion that do not contain or imply provable factual assertions. See Milkovich, 497 U.S. at 20-21. "The dispositive

---

[10] Dossett also alleges that statements in the article about the number of NCAI female employees is inaccurate: "A close examination of NCAI's annual reports shows that women are in fact the most affected by the turmoil. Between 2017 and 2018, for example, 58 percent of the employees who left the organization were women." (Compl. ¶ 56.) A statement about the number of NCAI female employees, even if inaccurate, could not have subjected Dossett to hatred, contempt, or ridicule, or tend to diminish his esteem, respect, or goodwill, and is therefore not defamatory.

question in determining whether a defamatory statement is constitutionally protected, according to the [Supreme] Court, is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact about the plaintiff." *Neumann*, 358 Or. at 715 (citing *Milkovich*, 497 U.S. at 21).

The Ninth Circuit and the Oregon Supreme Court use a three-part test to determine whether a statement implies an assertion of objective fact: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Neumann*, 358 Or. at 717; *see also id.* at 718 ("[W]e follow the Ninth Circuit's three-part framework for whether a reasonable factfinder could conclude that a given statement implies a factual assertion."). Under this framework, courts consider "the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

Dossett challenges the following statements as implying that he engaged in sexual harassment:

- "That's no excuse," said [Suzman Shown] Harjo. "That's no excuse for predatory behavior."

- "As a new staff, I was told by a colleague, 'You are a pretty young Native woman, beware of John Dossett. Don't be caught in a room alone with him,'" the former employee said to Indianz.com. "It's the worst kept secret in D.C.'s Indian circles."

(Compl. ¶¶ 56-57, 63.) Both are statements of opinion entitled to First Amendment protection.

PAGE 18 – OPINION AND ORDER

The statement about "predatory behavior" is attributed to Harjo, who the article reports served as NCAI's executive director in the 1980s, and the article does not represent that Harjo worked with or knows Dossett personally. Harjo's comment followed Dossett's explanation about what happened at the June 2016 conference, and does not suggest that Harjo has any firsthand knowledge about what happened. Rather, it is clear from the context of the news article that Harjo was providing her opinion on the situation, and specifically Dossett's statement on the events in question, as a figure previously associated with NCAI. *See Partington*, 56 F.3d at 1154 (emphasizing the need to provide "room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public").

With respect to Harjo's choice of language, courts have consistently held that hyperbolic name-calling such as "predator" is loose, figurative speech that is suggestive of exaggeration, ridicule, or subjective impression, not assertions of provable facts. *See, e.g., Byrnes v. Lockheed-Martin, Inc.*, No. C-04-03941 RMW, 2005 WL 3555701, at *7 (N.D. Cal. Dec. 28, 2005) (finding statements characterizing plaintiff as a "sex harasser," a "dangerous harasser," an "unstable person," a "menace," and "a danger to other employees" to be opinions rather than statements of fact); *see also Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (holding that the use of the word "traitor" could not be reasonably interpreted as a representation of fact because it was used "in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization"); *Neumann*, 358 Or. at 722 ("The general reference to Neumann as 'crooked' is not a verifiable accusation that Neumann committed a specific crime."); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101-04 (N.D. Cal. 1999) (finding statements that referred to the plaintiff as a

"self-serving fraud," a "criminal," and "acted illegally" to be only hyperbolic expression when viewed in context).

The second statement above is attributed to someone who worked at NCAI, whose opinion appears to be that young, attractive Native women should be careful around Dossett. The statement is not a provable assertion of an objective fact, i.e., if this case went to trial, neither side would be able to prove if young attractive women should be careful around Dossett, nor if that is the "worst kept secret in D.C.'s Indian circles." Rather, the statement is clearly one person's subjective impression of Dossett, not an objective fact. *See Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) (holding that comments referring to a person as "Looney Tunes," "crazy," "nuts," and "mentally imbalanced" did not contain verifiable assertions); *Hinchey v. Horne*, No. 13-cv-00260-PHX-DGC, 2013 WL 4543994, at *9 (D. Ariz. Aug. 28, 2013) (finding statements that characterize the plaintiff as "hard to work with," and "can't be trusted," were non-actionable "subjective impression[s] of Plaintiff's credibility and job performance"); *see also Chief Aircraft Inc. v. Grill*, 288 Or. App. 729, 733 (2017) ("On the whole, a reasonable factfinder could not conclude that this statement [calling a merchant 'completely unreliable and unhelpful'] implies an assertion of objective fact. Therefore, defendant's posting on Twitter . . . is protected speech.").

The Oregon Court of Appeals recently weighed in on similar online statements about whether an individual accused of sexual misconduct actually engaged in the sexual misconduct. In *Campos v. Jensen*, 296 Or. App. 402 (2019), an individual ("Ferguson") was accused of sexual misconduct, and a friend of the alleged victim posted several online statements sympathetic to the victim and suggesting that Ferguson engaged in the alleged misconduct. *See id.* at 404 (describing that the three challenged statements included "we know this man is 100%

guilty, and needs to pay the price for his lack of character and his criminal behavior[,]" "it

happened, you can believe it.....I hope this creep gets what he deserves.....what he did was

traumatizing and just plain wrong.....He is a liar.....and a sexual predator....BEWARE.....!!!" and

"Yes, and we all know this guy did it too."). Ferguson filed defamation and invasion of privacy

claims against the speaker, and the trial court granted the speaker's anti-SLAPP motion to strike

based on its conclusion that the statements at issue were nonactionable statements of opinion. *Id.*

*at 403*.

    The Court of Appeals affirmed the trial court, rejecting Ferguson's argument that the

online statements implied assertions of objective facts. The Court addressed each statement and

"ultimately conclude[d] that each of the challenged statements, when viewed through the

*Neumann* lens, constitutes [the speaker]'s nonactionable opinion regarding Ferguson's character

and credibility." *Id.; see also id.* at 414-15 ("In sum, when each of the three challenged

statements is considered as a whole, within its respective context, each, like the review in

*Neumann*, gives the impression of a strongly held opinion or viewpoint and, as such, would not

allow a reasonable factfinder to find that any of the statements communicated an assertion of

objective fact."); *see also Larry v. Schmid*, No. 09-663-AC, 2011 WL 7163040, at *8 (D. Or.

Oct. 21, 2011) (holding that prosecutor's statement that he was "still convinced [the acquitted

defendant] is guilty of all the charges" is "clear that it is not an assertion of objective fact, but

rather an expression of opinion and, accordingly, cannot support a defamation claim"), *adopted*,

2012 WL 381244 (D. Or. Feb. 6, 2012).

    Having considered the broad context, the specific context and the content of the

statements, and whether the statements can be proven true or false, the Court finds that no

reasonable reader could conclude that the above statements implied assertions of objective fact.

*See Neumann*, 358 Or. at 722 ("Based on the foregoing factors, we conclude that a reasonable factfinder could not conclude that [the defendant's online] review implies an assertion of objective fact. Rather, his review is an expression of opinion on matters of public concern that is protected under the First Amendment.").

The Court finds that the specific statements Dossett challenges are either substantially true, based on his own pleadings, or are non-actionable statements of opinion. In addition, the Court finds that for the same reasons, none of the articles, when read as a whole, are defamatory *per se*. Therefore, Dossett has failed to state a claim for defamation and has failed to demonstrate a likelihood of success on the merits, and the Court grants Defendant's anti-SLAPP motions to strike Dossett's defamation claims, without prejudice.[11] *See Gardner*, 563 F.3d at 991 (noting that Oregon's anti-SLAPP statute "requires entry of a judgment of dismissal without prejudice"); *Todd*, 2020 WL 60199, at *21 ("After *Planned Parenthood*, courts have generally granted leave to amend after ruling on an anti-SLAPP motion based on legal challenges." (citing *Tensor Law P.C. v. Rubin*, No. 2:18-cv-01490-SVW-SK, 2019 WL 3249595, at *13 (C.D. Cal. Apr. 10, 2019); *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, No. 18-cv-07579-WHO, 2019 WL 1995768, at *3 (N.D. Cal. May 6, 2019); *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-cv-3059-BAS-AGS, 2019 WL 4747671, at *10 (S.D. Cal. Sept. 27, 2019))).

## IV.    MOTIONS TO DISMISS

Defendants also move to dismiss Dossett's claims for intentional interference with economic relations ("IIER") (asserted against all Defendants), and negligence (asserted against NCAI only), pursuant to FED. R. CIV. P. 12(b)(6).

---

[11] In light of the Court's holding that the challenged statements were not defamatory, the Court does not reach the question of whether Dossett is a limited purpose public figure.

A.      **Intentional Interference with Economic Relations**

Dossett alleges an IIER claim based on allegations that Defendants intentionally interfered with his professional relationships with NCAI and Lewis and Clark Law School by knowingly making false statements about him, which caused him to lose his jobs.[12] (Compl. ¶¶ 103-04.) However, Dossett acknowledges that his IIER claim rises and falls with the anti-SLAPP motions. *See* Pl.'s Opp'n at 36 ("Dossett agrees with the legal analysis that claims sufficiently similar to an included defamation claim are subject to the outcome of the related anti-SLAPP motion."); *see also* NCAI's Mot. at 32-34; HCN's Mot. at 14-15. The Court agrees with the parties that Dossett's IIER claim is derivative of his defamation claims, and therefore grants the motions to dismiss the IIER claim.

Even if Dossett's IIER claim is not derivative of his defamation claims, Dossett has failed adequately to plead facts in support of his conclusory allegation that it was Defendants' allegedly false statements that caused the termination of his employment at either NCAI or Lewis and Clark Law School. *See* *McGanty*, 321 Or. at 535 (outlining the elements of an IIER claim, including "a causal effect between the interference and damage to the economic relationship"); *Herrera v. C & M Victor Co.*, 265 Or. App. 689, 697 (2014) (finding that to plead causation, the plaintiff must allege facts "showing that the tortious acts were a substantial factor in bringing about the harm") (citations omitted). Dossett alleges that Defendants published allegedly false statements, and "in the same timeframe, Lewis and Clark Law School suspended [his] employment[.]" (Compl. ¶ 45.) Dossett does not plead any facts to establish that the articles were a substantial factor in either employer's decision to end his employment. *See* *Servs. Emps. Int'l*

---

[12] Dossett acknowledges that he cannot state an IIER claim against NCAI with respect to his employment contract with NCAI. The Court agrees. *See* *McGanty v. Staudenraus*, 321 Or. 532, 537 (1995) ("[A] party to a contract cannot be liable for interference with that contract.").

*v. Portland Habilitation Ctr., Inc.*, 216 Or. App. 492, 497-98 (2007) (holding that IIER causation cannot be based on speculation); *cf. Herrera*, 265 Or. App. at 699 (holding that "evidence that a defendant's false statements triggered an employer's investigation into an employee's conduct is not enough, by itself, to establish the defendant's liability for wages and benefits that the employee lost because the employer later fired the employee for different misconduct that was established by evidence other than the defendant's false statements"); *Plotkin*, 280 Or. App. at 826 (finding that evidence supported IIER causation where the defendant repeatedly relayed defamatory statements directly to the plaintiff's employer immediately prior to the plaintiff's termination).

Therefore, the Court grants NCAI and HCN's motions to dismiss, and dismisses Dossett's IIER claim without prejudice pursuant to FED. R. CIV. P. 12(b)(6).

### B.    Negligence

Dossett alleges that NCAI is liable for negligence for failing to keep the sexual harassment allegations confidential, and for other alleged failures in connection with its internal investigation.[13] (Compl. ¶ 99.) Dossett alleges that it "was foreseeable that NCAI's misconduct would result in serious, irreparable harm to Mr. Dossett's career and mental well-being." (Compl. ¶ 100.) NCAI moved to dismiss the negligence claim, on the ground that it owed no duty to Dossett in connection with its investigation, and the economic loss doctrine bars any recovery here. (NCAI's Mot. at 37.)

///

///

///

---

[13] The Court finds that Dossett's negligence allegations about NCAI's public statements are duplicative of his defamation claims against NCAI. (*See* Compl. ¶ 99(e).)

Oregon law is clear that absent a special relationship not present here,[14] a plaintiff cannot recover for "negligently causing a stranger's purely economic loss without injury to his person or property." *De Jaray v. Lattice Semiconductor Corp.*, No. 3:19-cv-0086-SI, 2019 WL 4580041, at *4 (D. Or. Sept. 20, 2019) (quoting *Hale v. Groce*, 304 Or. 281, 284 (1987)); *Jefcoat v. Foreman*, No. 1:15-cv-00456-CL, 2016 WL 3468964, at *5 (D. Or. Apr. 29, 2016) (dismissing employee's negligence claims against employer where the employee alleged reputational harm and holding that "[t]hese alleged damages are wholly divorced from any physical injury and thus cannot support a negligence claim"). Thus, Dossett cannot recover for economic losses based on NCAI's alleged negligence.

Similarly, absent a special relationship not present here, "courts have recognized claims for emotional distress caused by ordinary negligence . . . only if the distress is accompanied by physical impact." *See Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551 (2006); *see also Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180, 1204 (D. Or. 2007) (granting summary judgment for employer on employee's negligence claim because employee did not present any evidence of a physical injury, and noting that "[u]nder Oregon law, 'a fundamental prerequisite of negligence liability . . . is actual, present harm or injury'" and "[i]n the negligence context, 'harm' generally refers to physical injury" (quoting *Lowe*, 207 Or. App. at 544-45)).

---

[14] *See Conway v. Pac. Univ.*, 324 Or. 231, 243 (1996) (holding that "the relationship between [employee] and [employer] did not rise to the level of a special relationship such that the law imposed a duty in tort" and rejecting the employee's argument that an employee handbook "created a contractual obligation on the [employer's] part to further [the employee's] interests, giving rise to a duty in tort"); *see also McCarthy v. State Farm Fire & Cas. Co.*, No. CV-10-334-ST, 2010 WL 3938294, at *8 (D. Or. Oct. 5, 2010) ("An employment relationship, in and of itself, does not impose a special duty of care." (citing *Conway*, 324 Or. at 243)); *McFarlin v. Gormley*, No. CV-06-1594-HU, 2008 WL 410104, at *15 (D. Or. Feb. 12, 2008) ("As a matter of law, an employee-employer relationship is not one in which the employer has a 'duty' to pursue the interests of its employees." (citing *Conway*, 324 Or. at 243)).

PAGE 25 – OPINION AND ORDER

Dossett alleges no cognizable special relationship with NCAI nor any physical injury, and therefore he has failed to state a negligence claim against NCAI. Accordingly, the Court grants NCAI's motion to dismiss without prejudice Dossett's negligence claim pursuant to FED. R. CIV. P. 12(b)(6).

## V.    DOSSETT'S MOTION TO AMEND COMPLAINT

Dossett filed a motion for leave to amend his complaint to: (1) remove Noble Savage Media LLC as a defendant (which has already occurred); (2) add as defendants the co-authors of the Indianz.com articles; (3) allege that Indianz.com republished or referenced the articles or allegations at issue on subsequent dates; and (4) clarify that NCAI is also named in the defamation count related to the October 23, 2019 article. (ECF No. 53.) In light of the Court's opinion granting Defendants' anti-SLAPP motions to strike Dossett's defamation claims, the Court denies as moot the motion to amend the complaint.

## CONCLUSION

For the reasons set forth above, the Court GRANTS HCN's motion to strike and dismiss (ECF No. 30), GRANTS IN PART Ho-Chunk's motion to strike and dismiss (ECF No. 35), GRANTS Ho-Chunk's motion to dismiss (ECF No. 55), GRANTS NCAI's motion to strike and dismiss (ECF No. 41), and DENIES AS MOOT Dossett's motion for leave to amend the complaint (ECF No. 53). If Dossett is able to cure the pleading deficiencies identified herein consistent with his obligations under Federal Rule of Civil Procedure 11, he may file an amended complaint by July 28, 2020.

DATED this 14th day of July, 2020.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge